```
1              IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF FLORIDA
2           CASE NO. 09-81057-CV-MIDDLEBROOKS/JOHNSON
               (CASE NO. 06-80070-CR-MIDDLEBROOKS)
3

4   WINFRED LORENZO HUNT,

5                  Plaintiff,          Thursday, October 20, 2011
          vs.                          9:41 a.m.
6                                      Miami, Florida
    UNITED STATES OF AMERICA,
7
                   Defendant.          Pages 1 through 151
8

9

10     TRANSCRIPT OF PETITION FOR WRIT OF HABEAS CORPUS (2255)
            BEFORE THE HONORABLE LINNEA R. JOHNSON
11                UNITED STATES MAGISTRATE JUDGE

12

13

    APPEARANCES:
14  For the Plaintiff:      Henry Marines, Esq.
                            Henry E. Marines, PA
15                          8501 SW 124th Ave, Suite 204A
                            Miami, Florida  33183
16

17
    For the Defendant:      A. Marie Villafana, AUSA
18                          Office of U.S. Attorney
                            150 W. Flagler Street
19                          Miami, Florida 33132

20

21

22  Reported By:            Judith M. Wolff, CRR
                            Official United States Court Reporter
23                          400 N. Miami Avenue, Room 8N09
                            Miami, FL  33128
24                          (305)523-5294
                            judy_wolff@flsd.uscourts.gov
25
```

STENOGRAPHICALLY REPORTED, COMPUTER-AIDED TRANSCRIPT

```
1   (Court was called to order.)
2            THE COURT:  Thank you.  Have a seat.
3            United States of -- I'm sorry, this is Wilfredo Hunt
4   (sic) versus United States of America.
5            Can I have appearances for the record.
6            MS. VILLAFANA:  Morning, Your Honor.  Marie
7   Villafana, on behalf of the United States.
8            MR. MARINES:  Good morning, Your Honor.  Henry
9   Marines on behalf Mr. Hunt.
10            THE COURT:  Good morning.  And Mr. Hunt is here.
11            All right, who's going first, government or
12   petitioner?
13            MS. VILLAFANA:  It's his motion, Judge.
14            MR. MARINES:  It's our motion, Judge.  We can go
15   first.  We'd just like to invoke the rule before we begin,
16   Your Honor.
17            THE COURT:  Okay, the rule is invoked.
18            Go ahead.
19            MR. MARINES:  Your Honor, I would like to call the
20   first witness, Ms. Atkinson.  And before I get started, Judge,
21   I want to thank you for allowing us to reschedule this
22   hearing.
23            THE COURT:  Oh, yes.  I'm sorry you had those issues.
24   I had forgotten about it.  I wish you would have said
25   something sooner.
```

THURSDAY, OCTOBER 20th, 2011

```
 1              MR. MARINES:  But I do appreciate the Court allowing
 2    us to reschedule.
 3              THE COURT:  No problem.  Of course.
 4              All right, let's bring Ms. Atkinson back in.
 5              MS. VILLAFANA:  Is Mr. Hunt going to testify?
 6              MR. MARINES:  He is.
 7              MS. VILLAFANA:  Since the rule has been invoked,
 8    perhaps he should testify first.
 9              THE COURT:  I don't know that that applies to the
10    parties.  I don't know that it would make a lot of difference
11    one way or the other, really.
12              MS. VILLAFANA:  All right.
13              MR. MARINES:  And I just want to thank Ms. Atkinson
14    as well, for allowing us to reschedule the hearing.
15              THE COURT:  She's getting in better humor since she's
16    retiring.  Sort of like me.
17              THE WITNESS:  Kind of going around the courthouse.
18                        KAREN ATKINSON,
19       Having been first duly sworn, testified as follows:
20              THE COURT:  Step up here, please.
21              It's a question of which one of us is out the door
22    first.
23              MR. MARINES:  I'm sure it's not a race.
24                        DIRECT EXAMINATION
25    BY MR. MARINES:
```

THURSDAY, OCTOBER 20th, 2011

4

```
 1   Q.  Good morning, Ms. Atkinson.
 2   A.  Good morning, counsel.
 3   Q.  And once again, I would like to thank you on the record.
 4   A.  You're quite welcome.
 5   Q.  Ms. Atkinson, could you please state -- well, obviously,
 6   you stated your name.
 7           How long have you been employed with the U.S.
 8   Attorney's Office?
 9   A.  I've been an assistant U.S. attorney since 1976, and I was
10   with Justice prior to that.
11   Q.  Okay.  And what was the nature of your involvement with
12   the case of Mr. Lorenzo Hunt -- I mean, Winfred Lorenzo Hunt?
13   A.  I was the prosecutor.
14   Q.  Okay.  And were you also the prosecutor who tried the case
15   against Mr. Hunt?
16   A.  I was one of the prosecutors.
17   Q.  Okay.  Now, in the process of trying Mr. Hunt, you filed
18   an 851, is that correct?
19   A.  That is correct.
20   Q.  Okay.  And do you recall when that -- if and when that
21   initial 851 was filed?
22   A.  It was in September.  The year the trial was --
23           THE COURT:  Karen, can you stay closer to the
24   microphone, because I'm not picking it up.  Please.
25           THE WITNESS:  In September, around the 9th or the
```

THURSDAY, OCTOBER 20th, 2011

1  10th.  Somewhere in that vicinity.

2  BY MR. MARINES:

3  Q.  And do you recall specifically who the attorney of record

4  was at the time when the initial drug sentencing information

5  was filed?

6  A.  I think when we originally filed it, we thought Mr. Geesey

7  was still on.  But he had been off or been -- Mr. Hunt had

8  been arrested, I think in May or June, and Mr. Geesey came in

9  but he wasn't filing permit appearances, there was some

10  issues.  He got off the case and new counsel was appointed.

11          THE COURT:  What's the name of the lawyer?

12          THE WITNESS:  Geesey.

13          MR. MARINES:  Allen Geesey, G-E-E-S-E-Y.

14          THE COURT:  Okay.

15  BY MR. MARINES:

16  Q.  Now, do you recall the specific date, more or less, when

17  Mr. -- when the new counsel was appointed?

18  A.  We had over 30-some defendants.  I would -- it was

19  probably in September for Mr. Hunt.

20  Q.  And do you recall who the new counsel for Mr. Hunt was?

21  A.  Robert Gershman.

22  Q.  Okay.  Now, you indicated that there was an initial 851

23  filed in September, is that correct?

24  A.  Correct.

25  Q.  I'm going to show you -- I want to show you what's been

1  previously marked as Government's Exhibit Number 2.

2          MR. MARINES:  If I may I approach, Your Honor?

3          THE COURT:  Sure.  Go ahead.

4  BY MR. MARINES:

5  Q.  Do you recognize that document, Ms. Atkinson?

6  A.  I do.

7  Q.  And what do you recognize that to be?

8  A.  This is the 851 enhancement that was filed, the stamp date

9  for the West Palm Beach is September the 12th.

10 Q.  Okay.  And that stamp date would indicate the date it was

11 filed, correct?

12 A.  Correct.

13 Q.  Okay.  And do you know what -- how was that filed?  Was it

14 hand-filed, ECF?

15 A.  I don't know that they were doing ECF's then.  We were not

16 in our courthouse.  There was a hurricane, we were working out

17 of the forum building over at U.S. Palm.  So I don't know that

18 it was -- whether it was hand-carried over.  So I don't think

19 it was a ECF file.

20         THE COURT:  Hold on a second.  Sandy, I had the same

21 question at one point in time.  Was ECF operating September

22 12, 2011, do you know?

23         COURTROOM DEPUTY:  We started in October 2006.

24         THE COURT:  In October?

25         COURTROOM DEPUTY:  2006.

THURSDAY, OCTOBER 20th, 2011

1              THE COURT:  2006.  Okay.  And this notice was filed

2     when?

3              MR. MARINES:  September 12, Your Honor.

4              THE COURT:  Of 2000 -- when?

5              MR. MARINES:  2006, Your Honor, September 12.

6              THE COURT:  Okay.  So then necessarily, ECMF was not

7     operating when this was filed.

8              MR. MARINES:  That would be correct.  But there would

9     be a date stamp on it correlating with the date it was filed.

10             THE COURT:  Go ahead.

11    BY MR. MARINES:

12    Q.  Now, according to the 851, the date of filing was on

13    September 12, 2006, correct?

14    A.  That's correct.

15    Q.  Okay.  Do you know if -- did you personally file it?  Do

16    you know who filed that?

17    A.  It would be an employee of our office.  I have no idea.

18    Q.  Okay.  Now, according to that 851, does it -- would it

19    indicate there who in fact was served with that 851, as far as

20    who was given notice?  Was it the attorney of record?

21    A.  Allen Geesey.

22    Q.  Okay.  And is it your understanding that Allen Geesey was,

23    in fact, the attorney for Mr. Hunt on September 12, 2006?

24    A.  Must have been.  That's why he would have been served.

25    Q.  Okay.  All right.  So according to the docket it indicates

1   on September 5, 2006, Mr. Gershman was, in fact, appointed as

2   attorney of counsel for Mr. Hunt, is that...

3   A.   If the record -- if that's what the docket says, then

4   Mr. Geesey, if he would have been withdrawn, I would assume

5   the docket sheet would be correct.

6           THE COURT:  Let me ask a question at this point.

7           Do you know, Ms. Atkinson, why the prior counsel was

8   discharged?  That is, sometimes -- well, first of all, I don't

9   know if Geesey was appointed or retained.  It doesn't really

10  matter, but -- he was appointed?

11          Sometimes what happens is, a defendant writes a

12  letter to the Court saying, you know, I don't like my lawyer

13  for whatever reason.  The court puts it on the calendar, on

14  the duty calendar, and we go into the matter.

15          So my question is, do you have any independent

16  recollection of getting a copy of either a motion to withdraw

17  that was filed by Geesey, or a copy of any letter sent by the

18  defendant prior to this notice going out?

19          THE WITNESS:  I do not recall getting a notice from

20  the defendant.  But it was -- it seems to me that Mr. Geesey

21  was hired by Mr. Hunt, but that they either never came to the

22  financial terms or there was some other conflict that he had

23  to get off the case.

24          THE COURT:  Okay.

25          MR. MARINES:  Okay.

THURSDAY, OCTOBER 20th, 2011

1        THE COURT:  So, I guess what I'm trying to also

2   ascertain is, is it a fair statement that you had no actual

3   notice that Geesey was out of the case and Gershman was in,

4   other than the fact that something happened in court and it

5   was on a docket sheet?

6        THE WITNESS:  I don't remember if I would have known

7   that Mr. Gershman would have been the attorney of record, I

8   would have sent it to Mr. Gershman.  But I know Mr. Gershman

9   got this.

10       THE COURT:  Okay.  Go ahead.

11       MR. MARINES:  Okay.

12   Q.  But according to the 851 filing, the mailing, the notice

13   itself was sent to Mr. Geesey, is that correct?

14   A.  Correct.

15   Q.  Okay.  But the record would indicate that Mr. Gershman was

16   actually attorney of record on the 12th of September?

17   A.  If the record said, he would have been appointed seven

18   days prior.

19   Q.  Okay.  Now, since ECF was not in place at this point in

20   time, the only method of notice would have been to mail the

21   drug -- the 851 to his counsel, is that correct?

22   A.  Mail or hand-deliver.

23   Q.  Okay.  Do you recall if it was hand-delivered?

24   A.  I believe it says it was mailed.

25   Q.  Okay.  Now, when you file the initial 851, what was your

THURSDAY, OCTOBER 20th, 2011

1  intention in filing that 851?

2  A.  To enhance Mr. Hunt to life imprisonment.

3  Q.  Okay.  And as -- and how many convictions were you relying

4  upon in order to secure that life sentence, would the facts be

5  administered under the 851?

6  A.  Two.

7  Q.  Two convictions.  Looking at the 851 that you have in

8  front of you, which is the one stamped September 12, 2006, are

9  you, in fact, relying on two convictions in order to secure

10  the enhanced minimum mandatory of life?

11  A.  Yes.  A '95 conviction, 472.  And a '95 conviction, 471.

12  And then we notify him that he faces the maximum penalty of

13  life as a result of the filing of this information.

14  Q.  Okay.  Now, looking at page 2 of the 851 -- I'm sorry, I'm

15  battling a cold.

16         When looking at page 2, on top of page 2, does it

17  tell you that you're relying on two convictions or does it

18  tell you you're relying on one conviction?

19  A.  It says in the event the defendant establishes the first

20  one is not valid, that we would also rely on the second one.

21  Q.  Is it -- it clearly indicates on page two, it says in the

22  alternative, in the event that defendant successfully

23  establishes that the conviction was invalid, then you will

24  rely on the second conviction, is that right?  Is that

25  correct?

THURSDAY, OCTOBER 20th, 2011

1   A.   We would rely on the first conviction, and then the second

2   conviction.   If he challenged one and only had one --

3           THE COURT:   Counsel.

4           MR. MARINES:   I appreciate that.

5           THE WITNESS:   Then life would have been something

6   else.   But we rely on both, because we told him in the end

7   it's life imprisonment.

8   BY MR. MARINES:

9   Q.   However, that was your intention, correct?

10  A.   That's what it says.

11  Q.   Okay.

12  A.   If he is convicted on two of the counts, Counts One, Two

13  and some others, that he would face a statutory of life.

14  Q.   All right.   Now, when you -- okay.   Now looking at the

15  851, it says here -- I just want to clarify because the

16  extension is very important -- that it's your understanding

17  you were relying on two convictions and the two convictions

18  you're relying on, according to the 851, would have been

19  the -- initially the '95, 472 conviction, and the alternative,

20  the '95, 471 conviction, is that correct?

21  A.   We were relying on the 471 and 472.

22  Q.   Okay.   However, the way it's written, it would lead us to

23  believe that only one conviction is, in fact, being relied

24  upon.   Because it says "in the alternative," it's not relying

25  on both convictions.   Even though the body of the 851 seems to

THURSDAY, OCTOBER 20th, 2011

1  indicate --

2         THE COURT:  Why -- why is this an important question?

3  Because it's a -- the notice is either, as a legal matter,

4  sufficient, or it's not.  So why do I care what your thought

5  of it is -- I don't mean that disrespectfully.

6         MR. MARINES:  I understand.

7         THE COURT:  But I'm saying, why would I care what

8  anybody's view as to what it meant or what she thought it

9  meant?  I mean, the document speaks for itself --

10         MR. MARINES:  It does.

11         THE COURT:  And Gershman either got it, or didn't get

12  it.  And then what's going to be important is what Gershman

13  says he spoke -- he said to the defendant about it.  And -- or

14  didn't say, or whatever.

15         So I'm just saying, why is this line of questioning

16  even remotely relevant?

17         MR. MARINES:  Well, it is relevant, Your Honor,

18  because once we get to the second ECF filing, there is an ECF

19  eventually, and there is another 851 enhancement filed.

20         THE COURT:  Right.

21         MR. MARINES:  And if we establish -- we establish

22  that -- that one or either one of these 851s were invalidated,

23  then it would lead us back to the second 851.  And if we're

24  looking at the face and the body of that 851 initial

25  enhancement, then we have to take it in strict compliance.  We

```
 1   have to take it for what it's worth and see -- and break it
 2   down and determine whether or not the intentions of the
 3   government were, in fact, met.
 4          THE COURT:  I don't think that -- the law, as I
 5   understand it, is that in this Circuit, that they require
 6   strict compliance with the 851 notice.
 7          MR. MARINES:  Correct.
 8          THE COURT:  And so what I'm saying is, I don't think
 9   her intention or someone's interpretation of it is relevant.
10   Because the document speaks for itself.  It is what it is.
11   But, I mean, if I'm wrong --
12          MR. MARINES:  Your Honor, I understand your position
13   and I know that this is a strict compliance, notice
14   requirement, filing requirement --
15          THE COURT:  Right.
16          MR. MARINES:  That's what we're trying to cover here,
17   whether those criteria were met.
18          THE COURT:  Right.
19          MR. MARINES:  But I'm foreseeing that in the event
20   that --
21          THE COURT:  And it may be your argument is that one
22   is defective for this reason or not.  But I'm just saying --
23   and that's fine -- but I'm saying, is why what she intended by
24   it wouldn't, under the Eleventh Circuit interpretations of
25   851, wouldn't matter.  She could have the best intentions in
```

THURSDAY, OCTOBER 20th, 2011

1   the world.  If the notice is defective, it's defective.

2           MR. MARINES:  Correct.  I agree with that.

3           THE COURT:  Okay.  Next question.

4           MR. MARINES:  I agree with that.  Okay.

5   Q.  Now, to your understanding, you indicated earlier the 851

6   was, in fact, mailed to Mr. Geesey who was no longer record of

7   counsel.  Do you know if you mailed the subsequent copy to

8   Mr. Gershman?

9   A.  I did not mail him a subsequent copy, but I discussed it

10  with him.

11  Q.  Okay.  When you filed your initial 851, were the certified

12  convictions also submitted to Mr. Geesey?

13  A.  Yes.  The copies of the convictions are submitted to the

14  defense counsel, but not filed in the court file.

15  Q.  Okay.  Now, those copies would have gone -- they would

16  have been mailed to Mr. Geesey?

17  A.  Correct.

18  Q.  And he was no longer attorney of record, correct?

19  A.  If Mr. Gershman was appointed seven days prior, he would

20  not have been the attorney of record at that time.

21  Q.  Okay.  Now, is it your understanding that --

22           THE COURT:  Let me interpret you here.  Back up, a

23  couple questions back, she made the -- Ms. Atkinson, the

24  witness made a statement, "I did not mail the subsequent copy

25  to Gershman but I spoke to him about it."  My question is,

```
1    counsel, when?  Do you know?

2              THE WITNESS:  I spoke to him probably a week or so

3    after this was mailed, once I found out he was counsel.

4              I discussed with him if I needed to give him the

5    additional discovery or if he'd picked it all up from

6    Mr. Geesey.  We discussed plea agreement with Mr. Hunt.

7    Talked to Mr. Gershman that I filed the enhancements, Mr. Hunt

8    was facing life imprisonment.  I wanted to know if he would be

9    interested in pleading to a term of years.

10             THE COURT:  Okay.  So the -- your recollection is

11   that Gershman comes in the case maybe a week or ten days

12   around -- Gershman comes in the case about a week before you

13   had mailed the notice, but you weren't aware of it.  When you

14   became aware that Gershman was in the case, you spoke to him

15   about this 851 notice.

16             THE WITNESS:  Yes.  And about other discovery issues.

17             THE COURT:  So this would have been mid-September --

18   mid- to late-September, 2006.

19             THE WITNESS:  Correct.

20             THE COURT:  Okay.  Go ahead, counsel.

21             MR. MARINES:  Okay.

22             THE COURT:  Do you remember -- let me ask you.  You

23   said you spoke to Gershman about it.  Did you give him, at

24   that time, a copy of the 851 notice that you had mailed out?

25             THE WITNESS:  He didn't need one.  He said he had
```

THURSDAY, OCTOBER 20th, 2011

1  one.

2         THE COURT:  Okay.

3  BY MR. MARINES:

4  Q.  That was my follow-up question.  He was never actually

5  mailed a copy of the 851, correct?

6  A.  I did not send him an additional copy.

7  Q.  Okay.  Do you know if he also had a copy of the certified

8  -- of the convictions that were being relied upon for the

9  enhancement?

10 A.  Yes, he did.

11 Q.  Okay.  And that was based on your conversation with

12 Mr. Gershman?

13 A.  Yes, it was.

14 Q.  Okay.  Now, there came a time when you submitted a

15 subsequent 851, is that correct?

16 A.  Correct.

17 Q.  And do you recall when that took place?

18 A.  The morning of the trial.

19 Q.  And that was November 13 --

20 A.  November -- it was a Monday, so I think 13th is correct.

21         THE COURT:  What year?

22         MR. MARINES:  2006.

23         THE WITNESS:  2006, Your Honor.

24         THE COURT:  Okay.

25 BY MR. MARINES:

THURSDAY, OCTOBER 20th, 2011

1  Q.   Now, and do you recall how that notice was given?

2  A.   It was before the jury was picked.  Before the judge got

3  on the bench, Judge Middlebrooks.  We were trying the case in

4  Miami, in the central courtroom.  I went over to Mr. Gershman,

5  Mr. Hunt there, and Gary Kollin, who represented his -- I

6  think it's half-brother or step-brother, Mr. Allen, and told

7  them that if they wanted to plead to any kind of a term of

8  years, this was their last chance, because it was going to be

9  filed, the 851.  And once I had done that, I would not

10  withdraw it at all.

11         But this was their very last chance.

12  Q.   Now, the original --

13         THE COURT:  I'm a little confused.  You filed the

14  second notice, 851 notice, the morning of trial, but as I

15  recall, it actually doesn't get file stamped in the clerk's

16  office until later in the day.

17         THE WITNESS:  Correct, Your Honor.  What happened

18  was, I gave them an additional copy, told them this was your

19  last chance.  Judge Middlebrooks got on the bench.  The

20  defense attorneys -- I don't remember which one it was --

21  asked for additional time to go talk to their clients in

22  lock-up.  The judge asked the marshals to take the defendants

23  back.  The attorneys went back.  I don't remember if

24  Mr. Garcia, he was the third defendant, if he went back or

25  not, by I know Mr. Kollin and Mr. Gershman both went back into

THURSDAY, OCTOBER 20th, 2011

1  the lock-up.

2          They came back out in 10, 15 minutes, something like

3  that, and said no, they wanted to go to trial.

4          And I handed a copy of the 851 to the clerk in the

5  courtroom, and at that moment, they were ready to go and the

6  judge brought the jury in and we picked a jury.

7          THE COURT:  Now, is this -- is this a different

8  notice that -- you had prepared that prior to coming into

9  court that morning, or is this a duplicate of that first

10 notice that was filed in September?

11         THE WITNESS:  I had one that I said -- that I had

12 prepared that said hand-delivered, and that was the one I

13 handed to the defense attorneys that day.

14         THE COURT:  So is that different in content than the

15 first notice?

16         THE WITNESS:  It's the same information.

17         THE COURT:  Same information.

18         THE WITNESS:  What had happened was, we had

19 superseded the indictment.  I think we had taken someone out

20 of an indictment and taken people who had already pled out of

21 the indictment, because I think there were 40 or 50-some

22 counts at this point.  So because we had superseded just in an

23 abundance of caution and additional assurance, I was going to

24 file a second, which has the very same information, the very

25 same convictions to be relied upon.

THURSDAY, OCTOBER 20th, 2011

1           MS. VILLAFANA:  Your Honor, it might assist you if I

2    give you a copy of our exhibit.

3           THE COURT:  Okay.  I know I had looked at these

4    before, but it's been a little while since I have.  Okay.

5    BY MR. MARINES:

6    Q.  If we can go back to that 851, the initial 851, and look

7    at -- your intention was to inform Mr. Hunt of the -- of the

8    enhancement, correct?

9    A.  Correct.

10   Q.  Now in the body of the first initial 851 that was filed on

11   September 12, 2006, on the body, it says that it's hereby

12   notifying defendant Leonard Allen Jr. of the intention to

13   enhance, is that correct?

14   A.  Yes, in the body.  But the heading is for Mr. Hunt, and

15   the conviction provided to his counsel were Mr. Hunt.

16   Q.  Okay.  Now, who is Mr. Allen?

17   A.  He was a codefendant, he was the half-brother.  He had

18   numerous convictions.  He was also enhanced to life.

19   Q.  Okay.  So he was also involved in the same case, correct?

20   A.  Correct.  They were 20 -- cousins, nephews.

21   Q.  All right.  And so the notice as given here, would

22   indicate to someone that Mr. Allen was being put on notice of

23   the enhancements of 851?

24   A.  No, because the certificates were for Mr. Hunt.  And the

25   heading is not at all -- it's for Mr. Hunt.  And I discussed

1  it with Mr. Gershman, Mr. Hunt.  I had separate discussions

2  with Mr. Kollin as to Mr. Allen Jr.

3  Q.  And Mr. Kollin was, in fact, the lead defendant in both

4  cases, correct?

5  A.  Was the lead definitely.

6  Q.  So his name would appear on the caption of all the -- all

7  the filings, isn't that correct?

8  A.  No.

9  Q.  It wouldn't?

10  A.  No.

11  Q.  Okay.  Now, without the certified convictions, and reading

12  the ACL -- reading the enhancement alone, would someone

13  receiving this document believe that they were, in fact, being

14  put on notice of enhancement?

15       THE COURT:  Why is that relevant?  When she says --

16  who is "someone"?

17       MR. MARINES:  Well, Mr. Hunt.

18       THE COURT:  The question is what the defendant knows.

19  And again, I think that it's a matter of law as to whether or

20  not the notice is sufficient on its face.  But, I mean, if you

21  want to put your defendant on to say what he believed when he

22  read it or didn't read it, if he read it or didn't read it or

23  whatever, that's fine.  But the form of that question needs to

24  be cleaned up, I think.

25       So let me ask, the copies of the conviction records

THURSDAY, OCTOBER 20th, 2011

1  themselves, the underlying conviction record documents do not

2  get filed with the 851 notice, correct?

3       THE WITNESS:  Correct, Your Honor.

4       THE COURT:  Go ahead, counsel.

5       MR. MARINES:  Okay.  All right.

6  Q.  Now going back to the second 851.  You indicated that a

7  copy was furnished, provided to different defense attorneys on

8  the morning of trial, is that correct?

9  A.  Correct.

10 Q.  Now, that would be --

11      MR. MARINES:  May I approach, Your Honor?

12      THE COURT:  Sure.

13 BY MR. MARINES:

14 Q.  Ms. Atkinson, do you recognize that document?

15      THE COURT:  This is Petitioner's Exhibit what?

16      MR. MARINES:  Three, Your Honor.

17      THE COURT:  And what is it?

18      MR. MARINES:  It is the -- the secondary 851 that was

19 filed ECF on November 13, 2006, Your Honor.

20      MS. VILLAFANA:  I think it's Government's Exhibit 3.

21      MR. MARINES:  Government's Exhibit 3.

22      THE COURT:  You have it listed as yours, as 3?

23      MR. MARINES:  It's already been pre-labeled, Your

24 Honor, so I want to use the labels given by the government.

25      THE COURT:  So it's going to be called Government's

THURSDAY, OCTOBER 20th, 2011

```
 1   Exhibit 2?
 2           MS. VILLAFANA:  3.
 3           MR. MARINES:  Well, it's the second document.  It's
 4   already been pre-labeled 3, but for purposes of identification
 5   if you want to --
 6           THE COURT:  Well, I just don't want any confusion in
 7   the record.  It's -- let's use the government's exhibit list.
 8           MR. MARINES:  Plaintiff's 2 -- I'm sorry, Your Honor.
 9           THE COURT:  I have an exhibit list that the
10   government just gave me, and they have a Government Exhibit 2,
11   which is the September 12th notice.
12           MR. MARINES:  Correct, Your Honor.  That was the
13   first document introduced.
14           THE COURT:  Okay.  And what document are you showing
15   her now?  That's Government's Exhibit 3?
16           MR. MARINES:  I'm sorry, Your Honor.  You're right.
17   I showed her Number 3, which is --
18           THE COURT:  Okay.  Can I admit it into evidence, all
19   of these exhibits on the Government's Exhibit list?  Do you
20   have any objection to that?  They're all court records.
21           MR. MARINES:  I have no objection.
22           THE COURT:  Admit all the government exhibits.
23           I'd just like the record, if we can, to use those
24   exhibit numbers, and if you have any additional exhibits that
25   you want admitted and they're admissible, of course I'm going
```

THURSDAY, OCTOBER 20th, 2011

```
 1   to admit them.  But I just don't want confusion in the record
 2   as to which exhibit we're talking about.
 3            MR. MARINES:  Understood, Your Honor.
 4            THE COURT:  Go ahead.
 5   BY MR. MARINES:
 6   Q.  Do you recognize Government's Exhibit 3?
 7   A.  This is the one from the docket sheet that was filed and
 8   it's signed by Ellen Cohen.  C-O-H-E-N.
 9   Q.  And that's actually the file copy, the copy of what was
10   filed?
11   A.  This is what's in the court file.  There were two
12   different versions of Exhibit 3.  One, which was in the court
13   file, and another one which I handed to the defense attorneys,
14   which says it was hand-delivered.
15            I handed one of those two to the clerk of the court,
16   Judge Middlebrooks' clerk, to be filed in open court.  And
17   said the defendants were both enhanced to life.  And then
18   called the jury in.
19   Q.  Now, is that -- is that a duplicate of what was initially
20   filed on September 12, 2006?
21   A.  It relies on 471, and 472.
22   Q.  Convictions?
23   A.  Correct.  The two state convictions from '95.  And -- I
24   believe it is.
25   Q.  Is it also indicated in the body of the document -- does
```

THURSDAY, OCTOBER 20th, 2011

1  it list also the name of Mr. Leonard Allen?

2  A.  No, this one lists Mr. Hunt.

3  Q.  Okay.  So it's not identical?

4  A.  No.  The name Allen was corrected and Mr. Hunt's name was

5  put in.

6  Q.  All right.

7           THE COURT:  I'm lost.  There's, on the criminal

8  docket sheet, docket entry 715, which is notice of drug

9  sentencing information as to defendant Hunt, filed November

10 13.

11          MR. MARINES:  Correct.

12          THE COURT:  And when you were in court that morning,

13 before jury selection, you go up to Gershman and you hand him

14 this -- I don't understand the two versions.  One's docketed,

15 one's not?

16          THE WITNESS:  I have found another one in my file

17 which I believe Mr. Gershman has in his file.  It has the same

18 information.  It just says "hand-delivered in court."

19          THE COURT:  Okay.  So they're identical except one

20 says "hand-delivered" and one says "mailed."

21          THE WITNESS:  It's the same two convictions and say

22 "for life."

23          THE COURT:  And they both have Hunt's name on the

24 body?

25          THE WITNESS:  I don't recall if the one that says --

1  they all have Mr. Hunt's name in the heading.

2          THE COURT:  Right.  Because he's the lead defendant.

3          THE WITNESS:  No.  But for Mr. Allen, when I filed on

4  him, it's not United States versus Hunt, it's United States

5  versus Allen.

6          THE COURT:  Oh, okay.

7          THE WITNESS:  If I enhanced Mr. Potts, which I did

8  enhance him, I think for one, it was United States versus

9  Potts because that is particular to that particular defendant.

10 Not -- if I did a discovery response for the whole group, I

11 would head it "Hunt et al."  But as to particular defendants,

12 I list that particular defendant.

13         THE COURT:  So you give Gershman one in court that

14 says USA v Hunt?

15         THE WITNESS:  Correct.

16         THE COURT:  And the body of it -- where is that

17 document now?  Do we have a copy of it?

18         MS. VILLAFANA:  Exhibit 4, Your Honor.

19         THE COURT:  That's Exhibit 4.  Okay.

20         And so Exhibit 3 is the one that was -- that says

21 "mailed."

22         THE WITNESS:  It says "mailed."  And that is the one

23 that's also in the court file as docket entry 715.

24         THE COURT:  Does Government's Exhibit 4 get filed in

25 the court file?

THURSDAY, OCTOBER 20th, 2011

1          THE WITNESS:  I did not see it on the docket sheet.

2     But I would have handed it to the clerk in open court.

3          THE COURT:  Okay.  Go ahead.

4     BY MR. MARINES:

5     Q.  So it's your testimony that document Number 3, and

6     document Number 4 are identical?

7     A.  I mean, it's different typing.  One is mailed.  One says

8     hand-delivered.  I think it -- it call -- it relies on the

9     same two convictions and it gives the same kind of notice.

10    Q.  Okay.  Is the body of --

11         MR. MARINES:  I know we're going into content now,

12    Judge, and I just notice, but it's important to state that

13    they do differ, and that the body of both 3 and 4 are

14    different and that different information is relied upon.

15    Regardless of what the intent was.  So if I could approach and

16    show Ms. Atkinson Exhibit 4?

17         THE COURT:  Sure.  I mean, clearly what the document

18    says is relevant.  What she intended I'm not sure is.

19         MR. MARINES:  Correct.  All right.

20    Q.  Is that -- do you recognize Exhibit Number 4?

21    A.  I do.

22    Q.  It's already in evidence.  And is that, in fact, a copy

23    that was -- who was that submitted to?

24    A.  I believe I handed this to Mr. Gershman, and I believe I

25    handed it to the clerk of the court.

THURSDAY, OCTOBER 20th, 2011

1   Q.   Does the service -- does the service page indicate to you

2   who that would have been handed to?

3   A.   Mr. Gershman.

4   Q.   Mr. Gershman.   Okay.   I'm looking at Exhibit Number 3,

5   with the service list on that indicates you --

6   A.   That has Mr. Geesey's name on it.

7   Q.   And he, in fact, was not the attorney of record on

8   November 13, 2006, correct?

9   A.   Correct.   Ms. Cohen was in our West Palm Beach office and

10  I was in Miami.

11  Q.   According to the service notice, however, it indicates you

12  served Mr. Geesey, is that right?

13  A.   That's what the notice says on Exhibit 3.

14  Q.   Okay.   So Exhibit 3 and Exhibit 4 lists two different

15  attorneys as being served with that notice, is that correct?

16  A.   That is correct.   And they both list the same two

17  convictions, the 471 and 472.

18          THE COURT:   So Exhibit 4 is handed to Gershman in

19  court, and it reflects personal service on the document itself

20  to the right attorney, correct?

21          THE WITNESS:   Correct, Your Honor.

22  BY MR. MARINES:

23  Q.   However, Exhibit 4 was never -- was never made part of the

24  record, correct?

25  A.   After I handed it to the court personnel, I do not know

1  what happened to it.  It was not in the file, not in the court
2  file.
3  Q.  Now, --
4       MR. MARINES:  Your Honor, I don't know if you want to
5  go into the contents of what's in 3 and 4, that they differ.
6  I know this is a notice requirement, but obviously the
7  information and not just the typing, the information relied
8  upon are completely different.
9       Looking at Exhibit Number 3, it says -- it goes into,
10 in addition to Counts 1 and 24, as -- we are relying upon
11 convictions, which is 471 and 472, that's two different
12 convictions.
13      When you look at --
14      THE COURT:  Hold on.  Let me --
15      MR. MARINES:  Exhibit 3, Your Honor.
16      THE COURT:  Exhibit Number 3.
17      MR. MARINES:  When you look at the body of that, it
18 appears to rely on --
19      THE COURT:  What page of this exhibit?  One, two?
20      MR. MARINES:  Number two, Your Honor.  Top of page 2.
21      THE COURT:  Top of page 2 of Government Exhibit 3
22 says, in addition for Counts 1 through -- and 24, government
23 intends to rely at sentencing upon case Number 950471.
24      MR. MARINES:  That's in addition to 472.  So now,
25 you've added 471, and this notice is different than Exhibit

1    Number 1, or Government's Exhibit 1, in that that one only

2    says, "in alternative to."  And that's why I want to get to

3    that eventually because I know this is a notice requirement.

4    But I think it's pertinent to our hearing, not going into what

5    the intent was but what actually was filed and whether or not

6    that, in fact, can enhance Mr. Hunt to a life sentence.

7                THE COURT:  Okay.

8                MR. MARINES:  All right.

9                THE COURT:  And Number 4.

10               MR. MARINES:  I guess the Court can take judicial

11   notice that the documents aren't, in fact, identical.  If you

12   look at Exhibits Number 3 and 4, they're not identical

13   contents included within the two documents, other than the

14   fact -- additionally that Exhibit Number 3 notices Mr. Geesey

15   is no longer attorney of record.

16               THE COURT:  They both refer to 471 and 472.

17               MR. MARINES:  They do, Your Honor.  They do mention

18   both of those.  But when you look at Exhibit --

19               THE COURT:  They're worded slightly different.

20               MR. MARINES:  Well, the wording is important, Judge,

21   because one is adding -- one's "in addition to," which is a

22   necessary requirement of the 851 enhancement of life, and the

23   other enhancement is "in the alternative," which leads us to

24   believe that --

25               THE COURT:  Which one is "in the alternative," then,

1   the first one, Exhibit 3?

2           MR. MARINES:  Exhibit 3, Your Honor.

3           Well, Exhibit 3 differs -- well, all three

4   enhancements differ, Judge.  Because if you look at Exhibit

5   Number 1, that was actually filed in court, and you look at

6   Exhibit Number 2 -- well, let's look at Exhibit -- if you look

7   at Exhibit Number 1 and 2, they're identical because those are

8   -- those are identical copies.

9           One was given to Mr. Geesey, was served upon him, and

10  the other one is the one that was served in the court.  So

11  Exhibit 1 and 2 are identical.

12          Looking at Exhibit 3 and 4 -- 2, 3 and 4, they're all

13  three completely different documents.  So which is pertaining

14  to the second 851?  And, in fact, those three documents differ

15  in what they're trying to accomplish -- not what they're

16  trying to accomplish, but what they actually, in fact, do

17  list.

18          THE COURT:  Okay.

19          MR. MARINES:  Because Exhibit 1 leads a conviction in

20  the alternative.  And 851, Number 2, lists it, "in addition

21  to."

22          THE COURT:  Okay.

23          MR. MARINES:  I hope that helps clarify.

24  Q.  Now, Ms. Atkinson, if, in fact, there was only one

25  conviction being relied upon, would that, in fact, enhance Mr.

THURSDAY, OCTOBER 20th, 2011

1    -- would that enhance Mr. Hunt to a life sentence?

2    A.  He was facing life with one enhancement.  Not mandatory, I

3    don't believe.  I'd have to go back and look.  He had so many

4    different amounts, it was over 50 grams of crack.  There was

5    also over five kilos of coke, I think, involved.

6              With his leadership role, he was a 42, career

7    offender, level 6.  And I think his guidelines were 360 to

8    life, without any enhancements.

9    Q.  So I guess the better question would be, would he have

10   been facing statutory life sentence if in fact only one prior

11   conviction was being relied upon?

12   A.  I'd have to review the 851 to see.

13   Q.  Okay.  All right.  So based on -- I just want to clarify

14   your testimony now.  That based on one conviction being relied

15   upon alone, do you believe that that, in fact, would have

16   placed statutory maximum on Mr. Hunt for life versus?

17   A.  50 grams was 10 to 40 --

18   Q.  Well, I think we're going -- when we start talking about

19   the amount of grams, we're talking about guidelines and we're

20   talking about statutory?

21   A.  We're talking about statutory min/man.  Trying to figure

22   out where he was.  I think we needed -- I think we needed the

23   two to give the judge no discretion on those particular

24   counts, to give him only life.

25             The others, the guidelines were 360 to life.

THURSDAY, OCTOBER 20th, 2011

1    Q.  360 to life.  Exactly.  Fine.

2          THE COURT:  So two convictions would be necessary to

3    give him the minimum mandatory life.

4    BY MR. MARINES:

5    Q.  Correct.  And one conviction, do you know what one

6    conviction alone, without the --

7    A.  If he was facing a ten-year count, it would have enhanced

8    him to 20 year min/man, again to life.

9    Q.  But based on the transaction in the case itself, he was

10   looking at somewhere between 360 to life?

11   A.  Correct.

12   Q.  Okay.  Now, just to clarify, Exhibit Number 3 -- I'll get

13   this back to you.

14          MR. MARINES:  May I, Your Honor?

15          THE COURT:  Yeah, sure.

16   BY MR. MARINES:

17   Q.  There is a date stamp on it, correct?

18   A.  There is.  The 13th.

19   Q.  And is there -- there's also a time stamp on that?

20   A.  It says one-something.

21   Q.  Do you recall at one-something on November 13 of 2006,

22   whether the jury had, in fact, already been sworn?

23   A.  I think we broke for lunch somewhere around 1:00, 12:30.

24          THE COURT:  My copy is not -- it's not legible.

25   Government's Exhibit 3 is filed of record, meaning in the

THURSDAY, OCTOBER 20th, 2011

1   clerk's office they put the stamp on it, November 13 at what

2   time, counsel?

3          MR. MARINES:  It would have been at 1:24, I believe.

4          THE COURT:  1:24 p.m., and that's after --

5          MR. MARINES:  1:36, I'm sorry.

6          THE COURT:  I'm sorry, 1:36?

7          MR. MARINES:  Yes.  And my understanding, that the

8   jury was sworn in at 12:25.  So it would have been one hour

9   afterwards.

10         THE COURT:  Right.

11         MR. MARINES:  Okay.

12  Q.  So I just want to clarify with the filing, is it your

13  understanding that filing the 851 notice, that notice -- that

14  the notice requirement is completed when its served or when

15  it's filed?

16  A.  It's when it's filed.  But I'd have to research that to be

17  sure.

18  Q.  Okay.

19  A.  And I don't even know where this was filed.  I don't know

20  that it was filed in Miami.  I don't know that it was filed in

21  West Palm Beach.  Because it's not a West Palm stamp.

22  Q.  Okay.  Well, there isn't any indication in the docket that

23  would lead us to believe that it was filed at any time before

24  the date stamp, is that correct?

25  A.  Correct.

THURSDAY, OCTOBER 20th, 2011

1   Q.   And according to the docket entry, it would appear that

2   the jury was sworn in that morning, of November 13, 2006?

3   A.   I handed a notice of enhancement to the defense attorney

4   and to the court before we started picking the jury.

5   Q.   Okay.

6   A.   In addition to the one that I had already filed.

7   Q.   Well, 851 requires the actual filing of the 851, so is it

8   your testimony that handing it over to the clerk was

9   sufficient for filing purposes?

10   A.   Yes.

11   Q.   Okay.  But there's no record indicating that it was, in

12   fact, handed over to the clerk until it was filed, which is

13   1:36?

14   A.   But the clerk stays with the judge while the jury is being

15   picked.  So I don't know what happened.  All I know is, I gave

16   it to the defense attorney.  I gave a copy to the court.

17   Q.   Okay.  My question is, there wouldn't be any other

18   indication as to when that document was filed, other than that

19   time stamp that's on that document?

20   A.   That would have been when it got to the clerk's office,

21   not when it was handed in open court.

22          THE COURT:  When you're saying "that document,"

23   counsel, you're referring to Government's Exhibit 3?

24          MR. MARINES:  Government's Exhibit 3, Your Honor,

25   which was filed November 13, 2006, at approximately 1:36 in

THURSDAY, OCTOBER 20th, 2011

1  the afternoon.

2  Q.  My question is, is simply that there is no other

3  indicator, other than time stamp, as to when it was filed --

4  is it your understanding that when the stamp -- date stamp

5  copy is the official filing of that document?

6  A.  No.  That's when it hits the clerk's office.

7  Q.  Okay.  So it's your understanding that merely handing is

8  sufficient for filing, despite the fact that there's no other

9  indicator establishing time frame, is that right?

10         MS. VILLAFANA:  Objection, asked and answered.

11         THE COURT:  Sustained.

12  BY MR. MARINES:

13  Q.  Now, you indicated that you filed the second 851 in an

14  abundance of caution, is that right?

15  A.  Correct.

16  Q.  Okay, so you would have been relying on the same

17  information from the first 851 to the second 851?

18  A.  The same conviction.

19  Q.  Okay.  So is it your understanding that the second 851 was

20  a duplicate of the first 851?

21  A.  It contained the same information.

22  Q.  Okay.  But it wasn't identical, is that correct?

23  A.  It was not worded identical.  It was -- it listed the two

24  prior dope convictions in the state of Florida the government

25  was relying on if Mr. Hunt was convicted on certain counts to

THURSDAY, OCTOBER 20th, 2011

1  subject him to mandatory life imprisonment.

2  Q.  Okay.  Was it -- was the second filing considered an

3  amendment to the first one or just a successive filing of the

4  first one?

5  A.  Just a successive filing.

6  Q.  Okay.

7          MR. MARINES:  One second, Your Honor.

8          Okay.  I have nothing further, Your Honor.

9          THE COURT:  Thank you.

10          MR. MARINES:  Thank you.

11          THE WITNESS:  You're welcome.

12          MS. VILLAFANA:  Your Honor, rather than recall

13  Ms. Atkinson, I'll just run through --

14          THE COURT:  That's fine with me.  You don't have any

15  objection to that, do you?

16          MR. MARINES:  I do not.

17          THE COURT:  Okay.

18                         CROSS-EXAMINATION

19  BY MS. VILLAFANA:

20  Q.  Morning, Ms. Atkinson.

21  A.  Good morning.

22  Q.  As we've discussed, or as you've already testified, you

23  were the lead prosecutor of Mr. Hunt, correct?

24  A.  I was.

25  Q.  And during your prosecution of Mr. Hunt, did you engage in

THURSDAY, OCTOBER 20th, 2011

1  plea negotiations with him?

2  A.  I did.

3  Q.  And with respect to that, did you attempt to allow him to

4  plead to something less than mandatory life, up until the very

5  start of trial?

6  A.  Yes, I did.  Plead to a term of years, rather than

7  mandatory life.

8  Q.  All right.  And it was in that context that all of this

9  discussion regarding the 851 enhancement occurred, correct?

10 A.  Correct.

11 Q.  All right.  So let's go through the 851 enhancements that

12 were filed.  And if we could start with Government Exhibit 1.

13 Can you tell the Court what Government's Exhibit 1 was?

14 A.  Yes, this was the first drug enhancement that was filed in

15 September, on the 12th.  Mailed to Mr. Geesey.

16 Q.  And this is the one that was filed with the court,

17 correct?

18 A.  Filed with the court.

19 Q.  All right.  So there's no -- the actual conviction is the

20 one attached?

21 A.  That is true.

22 Q.  And the caption reads what?

23 A.  United States of America, plaintiff, versus Winfred Hunt,

24 AKA "Big Dred" and AKA "Fat Boy."

25 Q.  And that is the petitioner here, is it?

THURSDAY, OCTOBER 20th, 2011

1    A.   Yes.

2    Q.   Now, in the first paragraph, it mentions Leonard Allen

3    Jr., correct?

4    A.   It does.

5    Q.   But that is an error?

6    A.   That is a typographical error with a type-over, and we

7    were doing one on Mr. Allen as well and the clerk just didn't

8    correct it, and I didn't notice it.

9    Q.   All right.  But the case numbers that are here,

10   95-00472CF, and on page 2, 95-00471, who are the defendants in

11   those cases?

12   A.   That is Mr. Hunt.

13   Q.   All right.  And the charges that are listed in the counts

14   in the last paragraph, are those all counts in which the

15   petitioner Winfred Hunt was named?

16   A.   Yes, they are.

17   Q.   And so the enhancement is notifying Winfred Hunt of his

18   enhanced sentences?

19   A.   It is.  He was named in counts where Mr. Allen was not

20   named.

21   Q.   All right.  And what is Government Exhibit 2?

22        THE COURT:  Hold on a second.  Let me look at this.

23   So these -- I'm looking at Government Exhibit Number 1, the

24   convictions referred to at 95, case number 00471 and 472, Palm

25   Beach County, 15th Judicial Circuit, conviction entered on

THURSDAY, OCTOBER 20th, 2011

1  December 22, 1995, blah, blah, blah, that's this defendant?

2           MS. VILLAFANA:  Yes.

3           THE COURT:  Okay.

4  BY MS. VILLAFANA:

5  Q.  So what's the difference between Government Exhibit 1 and

6  Government Exhibit 2?

7  A.  Government Exhibit 2 would be what was sent to counsel.

8  That would be the same document on the September 12th stamp.

9  Q.  Sure --

10          THE COURT:  When you say "counsel," you mean

11 Gershman?

12          THE WITNESS:  No, that was sent by mail on

13 Mr. Geesey.  And then I discussed it with Mr. Gershman.  And

14 that difference is, it has the 471 and 472, which has Lorenzo

15 Hunt, also known as Wilfred Hunt, on one of them.

16          And the other one is Wilfred Hunt, also known as

17 Lorenzo Hunt.  And those are for sale of cocaine in Palm Beach

18 County.

19 BY MS. VILLAFANA:

20 Q.  So that actually has the certified judgment and

21 convictions attached to it?

22 A.  It does have the certified judgment and conviction

23 attached to it.

24 Q.  And again, it names the petitioner who is Winfred Hunt?

25 A.  He's the only defendant named on those judgments.

THURSDAY, OCTOBER 20th, 2011

1    Q.   Okay.  And it has his fingerprints and all of that

2    information?

3    A.   It does.

4    Q.   Okay.  So to be clear, the only error that is in these

5    drug sentencing informations, 851 enhancements, is the

6    appearance of the words "Leonard Allen Jr." in that first

7    sentence?

8    A.   Correct.

9           THE COURT:  That's in Exhibit 1.

10          MS. VILLAFANA:  And in Exhibit 2, because they're

11   identical.

12          THE COURT:  Oh, okay.

13          MS. VILLAFANA:  All right.

14   Q.   And that is a clerical error?

15   A.   It is.

16   Q.   All right.  Then can you explain, you did a little bit

17   with counsel for Mr. Hunt, but explain to the Court the

18   difference between Exhibit 3 and Exhibit 4?

19   A.   Exhibit 3 and Exhibit 4, Exhibit 3 is the one that was

20   actually, is in the court file, that was signed by Ms. Cohen

21   on my behalf.  Our office -- I was assigned and I am assigned

22   to the West Palm Beach office and the case was being tried

23   down in Miami at the time since our courthouse was closed.  At

24   some point someone asked her to sign this for me and she did.

25          I had another copy that I handed out in open court to

THURSDAY, OCTOBER 20th, 2011

1  the defense attorney.  This particular with Mr. Hunt, that I

2  handed to Mr. Gershman because it says hand-delivered in open

3  court because this was his last chance.

4          I wasn't certain -- I hadn't, because of time

5  constraints at the time, done all the research necessary to

6  make sure, I just wanted to make sure that the enhancement was

7  there and was good.  So I decided to file a second one.

8  Q.  All right.  Because between the time of the first one and

9  the time of the second one, what had you gotten with respect

10 --

11 A.  We had superseded the indictment.  Some people had pled.

12 We had dropped them out.  There was one person that was

13 inappropriately, as I recall, indicted in this case, so we had

14 to redact.  And we might have dropped a count or two.  I think

15 -- we just changed things around just slightly.  The main

16 counts were all the same but people had pled and were

17 testifying.  To make it easier for the jury, we dropped

18 counts.

19 Q.  All right.  So to be safe, you wanted to file another one,

20 kind of a belt-and-suspenders approach?

21 A.  Correct.

22 Q.  Okay.  And that morning, before you handed this to defense

23 counsel, what did you do?

24 A.  Before I handed it to defense counsel?

25 Q.  What did you do with respect to plea negotiations?

1   A.   Oh, I talked to them.  I asked them if they were -- that

2   was the last chance.  We had discussions all along and I said,

3   you know, this is it.  If -- this is their last chance to

4   plead to anything less than mandatory life.  There were three

5   defendants going to trial.  Two were enhanced to mandatory

6   life.  So this is your last chance.  And they wanted time to

7   go back and talk to their clients.

8          Mr. Gershman in particular, because that's who's

9   here, Mr. Hunt.  And the court gave them that opportunity,

10  after I handed them the extra paperwork, the additional

11  paperwork, the same paperwork reflecting they were going to

12  get life in prison if they rolled the dice and were found

13  guilty by a jury.

14  Q.  And so, Judge Middlebrooks came out into the courtroom,

15  they asked for additional time, and what happened at that

16  point?

17  A.  He said fine.  He left.  He asked the marshals to take the

18  defendants back so that counsel could talk to them.

19          I don't remember if they went -- I think they might

20  have gone to that door to the right of the central courtroom

21  in the old building.  But they -- one of them might have gone

22  around.  But they did go back.  They were gone for ten

23  minutes.  Maybe 15.  Not more than that.  Because we had a

24  jury waiting to be picked and it's Judge Middlebrooks.

25          So when they came back out, they said nope.  I needed

THURSDAY, OCTOBER 20th, 2011

1    to prove my case.  So they were not taking any offers.

2    Q.  And then what did you do with Government Exhibit 4?

3    A.  I handed it to the clerk.

4    Q.  All right.

5    A.  And I said I'm filing -- they are enhanced to life.  And

6    fine, call the jury.

7    Q.  Okay.  And you handed Government Exhibit 4 to the clerk in

8    the courtroom?

9    A.  In the courtroom.

10   Q.  Okay.  Now, with respect to Government Exhibit 3, I know

11   that you testified that you were in Miami where the trial was

12   going on, and Ms. Cohen was in West Palm Beach.  Had you asked

13   someone in West Palm Beach to also make a filing with the

14   court?

15   A.  I believe I had.

16   Q.  Okay.  So that was happening in West Palm Beach?

17   A.  That was happening in West Palm while I was in Miami.

18        THE COURT:  I'm a little confused -- it's easy at

19   this point in my life, I guess -- but why are 3 and 4 not

20   identical?  And I understand what's happening in the sense

21   that we had, for purposes of the record, we had hurricanes

22   come through and it closed the West Palm courthouse for a

23   couple of years because of water intrusion.

24        So the prosecutors were running all over the place,

25   trying cases, because the courthouse in West Palm is closed.

THURSDAY, OCTOBER 20th, 2011

1  So if I've got this straight, Exhibit 3, that's actually

2  docketed in the court file at --

3        MS. VILLAFANA:   715.

4        THE COURT:   Exhibit 3 is docket entry what?

5        MS. VILLAFANA:   715.

6        THE COURT:   715 in the criminal case.  That gets

7  signed off by Ellen Cohen up here.  But in the meantime, AUSA

8  Atkinson is in Miami, having the conversation with Gershman

9  about, you know, your client's got to make the decision now or

10  he's looking at a mandatory life.  And she gives him Exhibit

11  4, right?  Is that correct?

12        THE WITNESS:   That is correct, Your Honor.

13        THE COURT:   How come Ellen Cohen -- or do you know,

14  how two different documents get prepared in your office, one

15  gets filed by AUSA Cohen up here, while you're working with

16  Exhibit 4 down in West Palm (sic).  Do you have any idea how

17  that happened?

18        THE WITNESS:   I don't, other than I had no secretary.

19  She had gone out on sick leave, and so there were three or

20  four different secretaries doing it.  And if they could not

21  access my computer when I asked them to do this, they probably

22  pulled off an old one and just changed --

23        THE COURT:   I got you.

24        THE WITNESS:   And then they had her sign it, and

25  getting it filed for me because I didn't -- not being very

1  computer literate, I didn't have my computer with me and they

2  could have accessed it up here.

3       THE COURT:  Okay.  I'm sorry, go ahead.

4       MS. VILLAFANA:  Of course.

5  Q.  Now, after the trial, the defendant was convicted?

6  A.  He was.

7  Q.  And the case proceeded to sentencing, correct?

8  A.  It did.

9  Q.  And the presentence investigation report was prepared,

10  correct?

11  A.  It was.

12  Q.  What did the presentence investigation report reflect with

13  respect to the sentences?

14  A.  It reflected -- well, the mandatory life as to some of the

15  counts, and up to 360 on other counts.  30 years, not more

16  than 30 years on Counts -- I don't know, six or seven of the

17  different counts.  Not less than ten years on one of the

18  counts, which was, I think just a small distribution.

19  Q.  And at sentencing, was there any objection filed regarding

20  the mandatory life sentence?

21  A.  No, there was not.  And the convictions were not

22  contested.

23  Q.  Okay.  And did Mr. Hunt file an appeal?

24  A.  He did.

25  Q.  And did he appeal both his conviction and his sentence?

THURSDAY, OCTOBER 20th, 2011

1   A.  He appealed his conviction.  Did he appeal -- he didn't

2   appeal the life.

3   Q.  If you could take a look at page 44 of Government Exhibit

4   9?

5   A.  Oh, he did.  Not for the enhancement, but he did because

6   it was based on criminal history, where it wasn't submitted to

7   the jury or pled in the indictment.  Prior convictions.  We

8   pled basic amounts for the min/man, but he did object, both he

9   and Mr. Allen objected because it wasn't -- it was kind of

10  like an ore tenus objection.  We didn't plead it in the

11  conspiracy that he was a prior convicted felon of, you know,

12  two different serious narcotics charges which would lead to

13  life.  And the jury didn't find that.  So he did raise that

14  issue on appeal.

15  Q.  And were the convictions and sentences affirmed on appeal?

16  A.  They were affirmed on appeal.

17  Q.  Now Mr. Gershman represented Mr. Hunt during the trial and

18  the sentencing, correct?

19  A.  He did.

20  Q.  But did Mr. Hunt request and receive different counsel for

21  appeal?

22  A.  He did.

23  Q.  And there's a different attorney who's representing him

24  for the 2255, correct?

25  A.  Correct.  There were two attorneys that were representing

THURSDAY, OCTOBER 20th, 2011

```
 1   Mr. Allen and Mr. Hunt.  Mr. Contini, C-O-N-T-I-N-I, and
 2   Mr. Trocino, T-R-O-C-I-N-O.
 3            MR. MARINES:  Your Honor, I have a general objection,
 4   Your Honor.  We're going into areas beyond the notice
 5   requirement of 851, whether something was brought up on appeal
 6   or not.  Is beyond what we're here to discuss.
 7            THE COURT:  Is this going to his assertion, he, the
 8   petitioner, that he didn't get this notice, didn't have any
 9   conversation with Gershman?
10            MS. VILLAFANA:  Correct.
11            THE COURT:  So it's anticipatory impeachment, if you
12   will?
13            MS. VILLAFANA:  Correct.
14            THE COURT:  Overruled.
15            MR. MARINES:  Thank you.
16            MS. VILLAFANA:  And those are all my questions.
17            THE COURT:  I'm sorry, what?
18            MS. VILLAFANA:  Those are all my questions, Your
19   Honor.
20            THE COURT:  Okay.  Do you have any redirect of the
21   government witness, counsel?
22            MR. MARINES:  I have one brief question, Your Honor.
23            THE COURT:  Okay.
24                            REDIRECT EXAMINATION
25   BY MR. MARINES:
```

THURSDAY, OCTOBER 20th, 2011

1   Q.   Ms. Atkinson, you indicated that you had hand-delivered

2   the second 851 on the date, the morning of jury selection, is

3   that correct?

4   A.   Correct.

5   Q.   Do you have any minutes reflecting that -- of your

6   submission of 851 on the record?

7   A.   No.

8            MR. MARINES:   Nothing further, Your Honor.

9            THE COURT:   Thank you.

10           The witness is excused.   Thank you very much.

11           THE WITNESS:   Thank you, Your Honor.

12           THE COURT:   Petitioner's witness number two.

13           MR. MARINES:   Your Honor, petitioner calls

14   Mr. Gershman.

15           THE COURT:   Okay.

16           Can I take, like three or four minutes first?

17           Okay, thank you.

18       (Court recessed at 10:44 a.m.)

19       (Proceedings continued as follows at 10:47 a.m.)

20           THE COURT:   Okay.   Thank you.

21           MR. MARINES:   Mr. Gershman, Your Honor.

22                    ROBERT GERSHMAN,

23     Having been first duly sworn, testified as follows:

24           MR. MARINES:   One housecleaning matter, Your Honor.

25   I know Ms. Atkinson is still here, I don't know if we may need

THURSDAY, OCTOBER 20th, 2011

```
1    to recall her in any rebuttal, in case something's completely
2    different from what Mr. Gershman may say.
3              THE COURT:  Okay.
4              MR. MARINES:  Thank you, Your Honor.
5              THE COURT:  I'm not sure she doesn't qualify as a
6    government agent for purposes of the rule but I don't want to
7    litigate this one in the Eleventh Circuit.
8              MR. MARINES:  May I, Your Honor?
9              THE COURT:  Yes, sir.
10                        DIRECT EXAMINATION
11   BY MR. MARINES:
12   Q.  Sir, could you please state your name for the record.
13   A.  Robert Gershman.  G-E-R-S-H-M-A-N.
14   Q.  And now how -- what was your involvement with the case of
15   Winfred Hunt?
16   A.  Sorry?
17   Q.  Your involvement with Mr. Winfred Hunt?
18   A.  I was appointed, Judge Middlebrooks.  I think it was
19   September 1.  And the trial, I think was November 13.
20   Q.  Okay.  And you were appointed as a -- correct?
21   A.  Yes.
22   Q.  And how many years have you been practicing law?
23   A.  1991.  Assistant state attorney in Palm Beach County; and
24   1996, left and began a private practice.
25   Q.  And what steps were taken in preparation for today's
```

THURSDAY, OCTOBER 20th, 2011

1  hearing?

2  A.  Reviewed some paperwork.  Reviewed PACER.  I spoke with

3  the government.  I spoke with Mr. Kollin, codefendant

4  attorney.

5  Q.  Okay.  And did you review any other documents in

6  preparation for today's hearing?

7  A.  My case file.  My documents.  The PACER account.

8  Q.  Okay.  You indicated you were appointed more or less on

9  September 1 of 2006?

10  A.  I think so.

11  Q.  Okay.  There's a docket entry indicating that the notice

12  of appearance was September 5, 2006?

13  A.  I think that when I looked, I think that the -- the -- I'm

14  not sure exactly what the form is called, but the appointment

15  generated by the court was September 1.  And I think maybe

16  something was filed afterwards.  But when I look back, I have

17  September 1.

18  Q.  Now when you were initially appointed back in September,

19  either the 1st or the 5th, to your knowledge, was an

20  enhancement filed against Mr. Hunt at that time?

21  A.  I learned later that there was.

22  Q.  Okay.  And when was that?

23  A.  When I got the file from the prior attorney, Allen Geesey.

24  I went to Mr. Geesey's office, I think it was September 16, to

25  pick up whatever Mr. Geesey had.  Met with Mr. Geesey.

THURSDAY, OCTOBER 20th, 2011

1  Discussed the issues with him.  And he provided me his case

2  file.

3  Q.  Okay.  And in that case file, was there an 851 filing in

4  there?

5  A.  Yes.

6  Q.  Okay.  And subsequent to you --

7          THE COURT:  Hold on a second.  In that case file,

8  there was a notice of enhancement?

9          THE WITNESS:  There was.  There was -- I think it was

10 stamped in two days before I picked up the file.  I think my

11 appointment with Mr. Geesey was September 16, if I remember.

12 And the filing might have been September 14.  Could be off on

13 that.  But I think it was two days later that I picked up the

14 file.  And with the enhancement was the judgment and paperwork

15 accompanying the prior convictions.

16         MR. MARINES:  Okay.  Your Honor, with the Court's

17 permission, may I show Mr. Gershman Exhibit Number 2?

18         THE COURT:  Yes.

19         MR. MARINES:  Thank you.

20         THE COURT:  And let me ask you a question -- unless

21 you need to look at those documents first.

22         THE WITNESS:  No, Judge.

23         THE COURT:  Okay.  When you say they were stamped in

24 Geesey's file, is that Geesey's own internal stamp?

25         THE WITNESS:  This is the same stamp that was just

THURSDAY, OCTOBER 20th, 2011

1  handed to me for the September 12, that I was discussing.

2          THE COURT:  Okay.

3          THE WITNESS:  I don't think Mr. Geesey had a, sort of

4  "office received" type stamp.  It was just a clerk's stamp.

5          THE COURT:  Okay.

6          THE WITNESS:  It looks like.  So what I was

7  discussing is the same stamp that counsel just showed me, of

8  September 12, from the -- Clarence Maddox, clerk of court.

9          THE COURT:  Okay.  So it was file stamped in his

10 file, September 12?

11         THE WITNESS:  Yes.  And I think I was at Mr. Geesey's

12 office September 14 to pick up his paperwork.

13         THE COURT:  And in there, was the notice of

14 enhancement and copies of the underlying convictions?

15         THE WITNESS:  That's what I have, yes.

16         THE COURT:  Okay.  Go ahead, sir.

17 BY MR. MARINES:

18 Q.  Counsel, now within your notes, while preparing for this

19 -- within your file, while preparing for this hearing, did you

20 have any notes that you relied upon in order to help refresh

21 your recollection?

22 A.  I'm sure.

23 Q.  Okay.  Now, did any of your notation indicate to you when

24 you met with Mr. Hunt -- let's just say, did you meet with

25 Mr. Hunt?

THURSDAY, OCTOBER 20th, 2011

1   A.   I met with Mr. Hunt.

2   Q.   Okay.  Do you recall when you met with Mr. Hunt?

3   A.   I don't recall all the times I met with him.  I think the

4   first time was the -- was the day that I first appeared in

5   court, which might have been that September 5 date.  Unsure,

6   exactly.

7   Q.   Okay.  Now, on that September 5 date when you first met

8   Mr. Hunt, did you discuss any enhancement at that point?

9   A.   I don't remember that.

10  Q.   Okay.  Subsequent to the September 1st or 5th meeting with

11  Mr. Hunt, did you meet with him again?

12  A.   Yes.

13  Q.   And do you know where?

14  A.   My first and longest meeting was FDC Miami.  I -- the

15  exact date, I could look in the bag that I left behind you for

16  the exact date.  But I don't remember offhand exactly --

17  excuse me, the exact date.

18          MR. MARINES:  Your Honor, with the Court's

19  permission, if he could --

20          THE COURT:  Sure.  Go ahead.  Why don't you give it

21  to him up there, to make it easier for him.

22          MR. MARINES:  Okay.

23          THE WITNESS:  September 5 is my first meeting with

24  the defendant, which I think occurred in Fort Pierce.  And

25  then my next, FDC Miami, 13th of September.

THURSDAY, OCTOBER 20th, 2011

1  BY MR. MARINES:

2  Q.  September 13?

3  A.  Yes.

4  Q.  Now on the 13th of September, did you go over any

5  enhancements with Mr. Hunt?

6  A.  I would answer that, sort of as a general "yes," but

7  specific, I don't remember.  But in general, I think I would

8  have discussed my knowledge.  But I couldn't swear that -- for

9  sure on that day I did or not.

10  Q.  Now, you said September what, I'm sorry?

11  A.  The FDC meeting was the 13th of September.

12  Q.  13th.  Okay.  Now, did you already have availed yourself

13  of Mr. Hunt's file?

14  A.  No, it was next day I was with Mr. Geesey.  So all I had

15  was the PACER information at that point.

16  Q.  Okay.

17  A.  You know, come to think of it, I'm not sure PACER was in

18  place then.  I say it now as if it was, but I'm not sure when

19  PACER began.

20  Q.  Okay.  All right.  So what documents, if any, -- do you

21  recall, do you have any notation as to what documents, if any,

22  you relied upon through your first conversation, full

23  conversation with Mr. Hunt on September 13, 2011 (sic)?

24  A.  At that point I had the affidavit applications regarding

25  the wiretaps from January 27, '06; March 7, 06; April 18, '06.

THURSDAY, OCTOBER 20th, 2011

1  The orders requiring wire taps from January 27, '06; March 7,

2  '06; April 18, '06.

3          And I had the indictment, the superseding indictment,

4  the second superseding indictment, the third superseding

5  indictment.

6  Q.  You had that all on September 13?

7  A.  No.  Those things I had -- I'm sorry, I didn't know you

8  were going by dates.  So far what I read to you, I received

9  beginning September 5.

10  Q.  Okay.

11  A.  On to September 6.

12          On September 9th, I had some discovery, including

13  CD's, photos, regarding a certain cocaine deal from April 26,

14  2006.  A CD containing items of seized evidence.  Eleven CDs

15  of various searches, lists of items, inventories, videos,

16  pictures, recordings of the defendant and a codefendant named

17  Jerito in a police car.  Some car rental records, and law

18  enforcement reports.

19          I had a -- the drug sentencing information for

20  codefendants Davis and Potts.  I had some supplemental

21  discovery regarding a notebook.  Driver vehicle information

22  database.  Crime lab analysis report.  And the pictures, as I

23  mentioned before.

24          So those were the materials I had before I saw

25  Mr. Hunt on the 13th of September.

THURSDAY, OCTOBER 20th, 2011

1  Q.   Okay.  And you didn't list one of the many items as an 851

2  for Mr. Hunt?

3  A.   I don't have that listed as one of the items.

4  Q.   Okay.  So on your first meeting on September the 13th of

5  2006, did you have any notes indicating what were the

6  discussions with Mr. Hunt?

7  A.   Just to go back, because I'm looking at those notes you

8  asked me, September 1 was a courtesy call from Judge Hopkins'

9  JA telling me I was appointed.  And then September 5 was the

10 arraignment in Fort Pierce.

11 Q.   So is it fair to say that on September 13, 2006, there

12 wasn't any mention of any enhancement by yourself and

13 Mr. Hunt?

14 A.   Let me look at those.  Give me one second just to review.

15 My notes from the 13th, as far as history goes, reflect the

16 following -- and this is just a paragraph out of my notes --

17 "defendant was born on January 11, 1974.  All of his priors

18 are in Palm Beach County.  He's been to prison twice.  Has a

19 long criminal history, estimates a half a dozen felonies and

20 ten misdemeanors."

21          Went over with him the conversation I had with

22 Ms. Atkinson about -- so, yes.  So again, I'll just review

23 this as my verbatim notes.

24          "Said the offer for the defendant is 30 years, and

25 after convictions, with enhancements, Ms. Atkinson will ask

THURSDAY, OCTOBER 20th, 2011

1  for life.  I told the defendant during our meeting at FDC the

2  plea offer.  He does not want it.  He doesn't want to plea.

3  Doesn't even want to think about pleading.  Just wants to

4  fight it."

5          THE COURT:  Justs wants what?

6          THE WITNESS:  To fight it.

7          THE COURT:  And this is the September 13th meeting?

8          THE WITNESS:  September 13, '06 meeting at FDC.

9          THE COURT:  And so you discussed with him at that

10  time --

11          THE WITNESS:  Yes.

12          THE COURT:  An enhancement that would have the

13  mandatory life?

14          THE WITNESS:  Yes, that's what my notes reflect.

15  BY MR. MARINES:

16  Q.  Now, you were discussing the possibility of enhancement,

17  correct?  You didn't have an 851 with you, correct?

18  A.  I didn't have an 851 with me.  So I'm assuming, if it's

19  appropriate to assume that, it's based on my conversation with

20  Ms. Atkinson.

21  Q.  So your discussion was based on the intent, the

22  possibility that an 851 would be filed?

23  A.  I would say that's fair.

24  Q.  And, all right.  Now, you indicated that on September 16,

25  you picked up the file from Mr. Geesey, is that correct?

THURSDAY, OCTOBER 20th, 2011

1   A.   Yes.

2   Q.   All right.   And did you speak to Mr. Hunt after receiving

3   the case file from Mr. Geesey -- what was your next meeting

4   with Mr. Hunt?

5   A.   My next meeting, September 20th at FDC.

6   Q.   Okay.

7           THE COURT:   What happens on the 20th?

8           THE WITNESS:   The question I thought was, when is my

9   next meeting after receiving the file from Mr. Geesey.   And my

10  next meeting was September 20.

11          THE COURT:   Okay.

12          THE WITNESS:   For two hours at FDC.

13  BY MR. MARINES:

14  Q.   And at that time -- does your notes reflect the

15  enhancement or any conversations regarding enhancement were

16  discussed with Mr. Hunt?

17  A.   Not reflected in my notes.

18  Q.   Okay.   Does your notes reflect whether or not you had the

19  851 notice that was -- that had been filed at that point?

20  A.   My notes wouldn't reflect it.   I mean, I know I had it,

21  but I couldn't tell you if I physically had it in the building

22  with me at the time.

23  Q.   So your notes do not reflect whether or not you actually

24  physically showed the 851 to Mr. Hunt, correct?

25  A.   That's a correct statement.

THURSDAY, OCTOBER 20th, 2011

```
1              THE COURT:  Let me ask you a question.  You keep
2   detailed notes of your progress as you're acquiring
3   information in your conversations with your clients as part of
4   your ordinary course of business as an attorney?  Is that
5   correct?
6              THE WITNESS:  Yes, ma'am.  At that time I used a
7   Dictaphone, would dictate it and it would go on blue paper
8   for, sort of my memo section of my case file.
9              THE COURT:  Okay.
10             THE WITNESS:  I try and do it every time.  Honestly,
11  there are times when I, for whatever reason, I don't literally
12  do it.  But I try to do it for, whether it be telephone calls
13  or issues.
14             THE COURT:  Okay.  Go ahead.
15             MR. MARINES:  Thank you, Your Honor.
16  Q.  Now, subsequent to -- did you actually review the 851 that
17  was filed by Ms. Atkinson?
18  A.  Yes.
19  Q.  And that's listed as document entry 524?
20  A.  Yes.  That's Exhibit Number 2 you handed me.
21  Q.  Okay.  In Exhibit Number 2, did you realize any mistakes
22  that were incorporated within that -- that enhancement?
23  A.  I'm -- no.
24  Q.  What did you believe after reviewing the 851, that
25  Mr. Hunt was being subjected to if convicted?
```

THURSDAY, OCTOBER 20th, 2011

1   A.  His exposure was life.

2   Q.  And when you say "exposure was life," is that a statutory

3   minimum of life?

4   A.  I'd have to review.  I thought it was a mandatory life

5   sentence should he be convicted.

6   Q.  Right.  Correct.  Okay.

7   A.  So just to go back to your last question, at the time, I

8   did not know of any mistake when I was preparing for this

9   hearing and looked at it, I saw that there was a codefendant

10  included in the body of Mr. Hunt's information.

11  Q.  But you didn't realize that until today?

12  A.  I think yesterday.

13  Q.  Okay.  Oh.  In your preparation for today's --

14  A.  Yes.

15  Q.  All right.  Now, upon initially reviewing it, without, you

16  know, determining that there was a codefendant listed in the

17  body of the enhancement, what was -- you had indicated that

18  your belief was that the statutory minimum would have been a

19  life sentence, correct?

20  A.  Yes, sir.

21  Q.  And did you discuss that fact with Mr. Hunt?

22  A.  Yes, sir.

23  Q.  And do you know when you discussed that fact with

24  Mr. Hunt?

25  A.  From memory, no.

THURSDAY, OCTOBER 20th, 2011

1  Q.   Okay.   Do you have any notations that would help you

2  refresh your recollection?

3  A.   I think I spoke with him about that on October 4.   There

4  was a Fort Pierce hearing.

5           THE COURT:   That's in your notes?

6           THE WITNESS:   I'm looking.   Please, one second.

7           It's not in my notes.   I do have -- so that -- no,

8  it's not in my notes, Judge.

9           THE COURT:   But you have an independent recollection

10  of discussing this 851 business with the defendant on October

11  4?

12           THE WITNESS:   I have an independent recollection that

13  once that became known to me formally, I discussed it with

14  him, in trying to have him plea, because -- literally every

15  time I spoke with him, by telephone or in person.   But I don't

16  have it written in my notes every time.   But I know a part of

17  every conversation I had with him was -- because trial was

18  continued just because of my appointment, until November.   So

19  roughly 60 days or so.

20           And I -- my opinion to him was I thought he should

21  plea based on the facts and the exposure.   So I'm not sure if

22  I persuade him or give him my opinion about it, was done when

23  I spoke with him each and every time.

24           COURT REPORTER:   I'm so sorry, to interrupt.   Your

25  last sentence...   Judge, I apologize.

THURSDAY, OCTOBER 20th, 2011

1          THE WITNESS:  Last sentence was, I tried to persuade

2   him.

3   BY MR. MARINES:

4   Q.  Do your notes reflect whether or not you presented

5   Mr. Hunt with the 851 file on September 12, 2006?

6   A.  No.

7   Q.  They do not reflect it?

8   A.  Correct.

9   Q.  Do you --

10          THE COURT:  I have a question, if I can.

11          MR. MARINES:  Yes.

12          THE COURT:  You said a few minutes ago that it was

13   only recently when you became aware that the 851 notice, that

14   you saw, had the name Allen in it, in the body of it, as

15   opposed to Hunt, but the caption says Hunt.  This is Exhibit

16   2, right?

17          MR. MARINES:  Correct, Your Honor.

18          THE COURT:  Okay.  So at the time that you were

19   discussing this 851 issue with the defendant, you had copies

20   of the judgments in your file, correct?

21          THE WITNESS:  Yes, ma'am.  Those were Mr. Hunt's

22   judgments.

23          THE COURT:  Hunt's judgment.  They said "Hunt" on

24   them.

25          THE WITNESS:  Yes, I had those with me, and they were

1  all on it, there were judgments, clerk of court paperwork.

2  There was one PC that I had, they were all applicable to

3  Mr. Hunt.

4          THE COURT:  Okay.  Did you show him those, do you

5  know?

6          THE WITNESS:  I do know.  I went over them with him.

7  BY MR. MARINES:

8  Q.  When you say "go over," was it over the phone or in

9  person?

10 A.  No, that was -- no, showing him the papers would have been

11 in person, live.

12 Q.  So your testimony is, at some point you would have

13 presented these documents to Mr. Hunt?

14 A.  Yes.

15         THE COURT:  And that was before trial, before jury

16 selection.

17         THE WITNESS:  Yes, yes.

18         THE COURT:  Well before.  Sometime in September,

19 October.

20         THE WITNESS:  Yes.

21         THE COURT:  Okay.

22         MR. MARINES:  About a month before.

23 Q.  It would have been about a month before, roughly?

24 A.  Approximately.

25 Q.  Okay.  But your notes don't indicate exactly if -- they

THURSDAY, OCTOBER 20th, 2011

1  don't -- they don't specify whether or not the document was

2  actually presented to Mr. Hunt?

3  A.   Let me look.  So the paperwork, October 24, '06, I went

4  over the paperwork with him.

5  Q.   Does it indicate what paperwork?

6  A.   It was the -- it was the enhancement paperwork.  My notes

7  reflect -- again, this is just -- sentence is taken out of a

8  couple of pages of notes.  He doesn't think life is

9  appropriate.   In fact, he says he is guilty but his punishment

10  should be in the ballpark of ten years, paren, 7 to 12.

11  Q.   Okay.  Now, I'm going to ask you to view Exhibit Number --

12  Government Exhibit 2, which is the initial 851 filing.  And

13  you indicated earlier that you noticed recently that -- you

14  notified, in the body, the defendant Leonard Allen Jr.?

15  A.   Yes, sir.

16  Q.   Okay.  Upon reviewing that now, do you think that that was

17  giving Mr. Hunt sufficient notice that he was being enhanced?

18  A.   You want my opinion on that?

19  Q.   Yes.

20  A.   Yes.

21  Q.   Okay.  Now, looking at the body of the 851, do you -- what

22  -- I want you to review it first before you answer, because I

23  want you to look at it and determine, based on your review of

24  this document, how many convictions are being relied upon by

25  the government at this time, at the time when the 851 is

1  filed.  What was your understanding?

2         MS. VILLAFANA:  Objection.  Relevance.

3         THE COURT:  First of all, would you clarify, when

4  you're talking about "this document," are you talking about

5  Government Exhibit 2?  That notice?

6         MR. MARINES:  Yes, Your Honor.  He's reviewing

7  Government Exhibit 2, the September 13, 2006 filing.  And in

8  the body there was an error, Mr. Allen, and I'm asking him to

9  review that and look at the convictions to see what

10  information, if any, he gave to Mr. Hunt --

11        THE COURT:  Okay, I'm going to overrule the

12  objection.

13        MR. MARINES:  Thank you, Your Honor.

14        THE WITNESS:  This one has two case numbers.  471 and

15  472.

16 BY MR. MARINES:

17 Q.  I understand it has two case numbers.

18 A.  Okay.  Sorry, I misunderstood what you were asking there.

19 Q.  No, no.  It's a -- it's a question that -- looking at, I

20 know there are two convictions listed.

21 A.  Yes.

22 Q.  But reading the body of paragraph number two, and then

23 paragraph number three on page 2, of that same exhibit, do you

24 believe the government -- what -- reading that now, what do

25 you think the government -- how many convictions was the

1  government relying on with this enhancement?

2          MS. VILLAFANA:  Objection, relevance.

3          THE COURT:  No, it goes to what he told the defendant

4  his defense is -- as I understand it, the defendant is going

5  to say he never had any of these conversations.  Go ahead.

6          THE WITNESS:  The enhancement addresses those two

7  case numbers.

8  BY MR. MARINES:

9  Q.  I understand that.

10  A.  That's what it says.

11  Q.  Looking at, top of page 2 of that exhibit, the first

12  sentence --

13  A.  It's --

14  Q.  Indicates in the alternative.

15  A.  Yes.

16          MS. VILLAFANA:  Objection, asked and answered at this

17  point.

18          THE COURT:  Overruled.

19          THE WITNESS:  Yes.

20  BY MR. MARINES:

21  Q.  Is it your understanding that, although two case numbers

22  are listed, when it indicates in the alternative, that they

23  are relying on both convictions?

24  A.  I'm not sure what you're asking me.

25  Q.  I'm asking you to look at document -- document, exhibit

1   entry 524, Exhibit 2.

2   A.  I have that in front of me.

3   Q.  Indicated in the body it says here, on the second

4   paragraph, the defendants are hereby notified the United

5   States intends to rely on sentencing upon the following

6   conviction -- singular -- of a following drug offense to seek

7   an enhanced penalty.  And then they list case number 95472,

8   which is Palm Beach County, 15th Judicial Circuit.  Okay.

9          Formal conviction was entered in, December 22, 1995.

10  A copy of the judgment and conviction attached to defense copy

11  of his pleading.

12          Ends there.

13          Is that one conviction or two convictions?

14          MS. VILLAFANA:  Objection, leading.

15          THE COURT:  Overruled.

16          THE WITNESS:  472 is, I thought one count sale of

17  cocaine.

18  BY MR. MARINES:

19  Q.  Okay.  Now, the enhancement as of that point is dealing

20  with the -- only the 472 conviction, right, in '95?

21  A.  That's what the front page says.

22  Q.  Okay.  Now, page 2 of that same exhibit indicates in the

23  alternative, that the defendant successfully establishes above

24  that if the conviction was invalid, they will rely on the

25  alternative conviction of 471?

1  A.  I think is one, also, count of sale.

2  Q.  Correct.  Now, as listed here, would that lead you to

3  believe that they're relying on one conviction and the

4  alternative, the second conviction of 471, or do you believe

5  that it was, in fact, incorporating both convictions, although

6  it says here "in the alternative"?

7  A.  I thought either or both could apply.

8  Q.  But looking at that time now, what are you thinking?

9  A.  Again, if was he was my client now, I would tell him that

10  both would be applicable against him.

11          THE COURT:  I'm sorry, what?

12          THE WITNESS:  If I'm reading this now, again, I would

13  -- they're both sales of cocaine, I would advise them that

14  they're both -- could be used against him.  Notwithstanding it

15  says in the alternative.  They're two sales.

16  BY MR. MARINES:

17  Q.  Well, two different issues.  Whether they're both applied

18  to him and whether they're both -- be utilized to enhance him

19  as to a life sentence, they're two different issues.  They do

20  apply to him because they're part of his criminal history.

21          Now, my question is, do you believe, reading the 851

22  notice as written, that that, in fact, was listing two

23  convictions that were being relied upon simultaneously, or

24  were they relying on one -- I'll just leave it at that.

25  A.  I thought they would use both.

THURSDAY, OCTOBER 20th, 2011

1   Q.   Okay.   Again, I need to clarify.   I know they can use

2   both.

3              MS. VILLAFANA:   Objection, asked and answered.

4              THE COURT:   Let me ask you this.   What did you convey

5   to the defendant regarding whether or not there was a

6   sufficient basis to enhance him in terms of his prior criminal

7   record?

8              THE WITNESS:   I conveyed to him the exhibit.   I have

9   a few more documents supporting it, but basically the exhibit

10  in conjunction with the supporting documents, to say that

11  these prior convictions would be used against him at a

12  sentencing hearing to enhance his sentence to life.

13             THE COURT:   So you showed him the exhibits.   When you

14  say "the exhibits" you mean the judgment and the 851 notice,

15  Government 2?

16             THE WITNESS:   Yes.   But I had some more from

17  Mr. Geesey, that his first attorney had given me some

18  additional paperwork besides the judgments.   But basically,

19  the supporting documents for those two crimes.

20             THE COURT:   When you say "he," Geesey had other

21  documents, he had arrest reports and stuff from the other

22  cases?

23             THE WITNESS:   He had judgments, fingerprints, clerk

24  of court commitments.   There was some other criminal history

25  that Mr. Geesey provided me, above and beyond the two case

1  numbers that were mentioned.  And a probable cause affidavit,

2  Delray Beach Police Department.  A face sheet, property

3  report.

4          MR. MARINES:  Okay.

5          THE COURT:  So the defendant never disputed that he

6  had those underlying convictions.  So for purposes of you

7  challenging them for sentencing purposes in any way, is that

8  correct?

9          THE WITNESS:  Correct.  Correct statement.

10          THE COURT:  So he well knew he had a number of felony

11  convictions, including the ones -- the two that were cited in

12  the notice, correct?

13          THE WITNESS:  Yes, we discussed that.

14          THE COURT:  Were you misled in any way by this

15  language in here that says in the alternative, thinking that

16  there was not a sufficient basis to enhance?

17          THE WITNESS:  No.  I -- again, as always candid with

18  the Court, I didn't think twice about it.  Obviously I didn't

19  see Mr. Allen's name in there.  But it was --

20          THE COURT:  Based on the totality of what you had,

21  the notice and the accompanying judgments.

22          THE WITNESS:  It wasn't an issue.  That's why I

23  continually gave him my opinion that I thought it was best for

24  him to plea.  One of the reasons, at least.

25          THE COURT:  Okay.

THURSDAY, OCTOBER 20th, 2011

```
 1   BY MR. MARINES:

 2   Q.   In preparation for your testimony today, you provided the

 3   government an affidavit?

 4   A.   Yes, sir.

 5   Q.   Okay.

 6            MR. MARINES:  May I, Your Honor?

 7            THE COURT:  Yes.

 8            MR. MARINES:  Thank you.

 9            THE WITNESS:  This is my affidavit, which is Exhibit

10   11.

11   BY MR. MARINES:

12   Q.   Now, you indicated there that you discussed with Mr. Hunt

13   the government's intention to enhance him, is that correct?

14   A.   Yes, sir.

15   Q.   And that you're stating now that you, in fact, did go over

16   those -- the actual 851 with Mr. Hunt?

17   A.   Yes.

18   Q.   Okay.

19            THE COURT:  Who drafted that affidavit?

20            THE WITNESS:  I did.

21   BY MR. MARINES:

22   Q.   Again, the -- in your affidavit, you indicated that what

23   you had discussed with Mr. Hunt was the initial 851, which is

24   docket entry 524?

25   A.   That's what paragraph number 3 says, yes, sir.
```

THURSDAY, OCTOBER 20th, 2011

1  Q.  All right.

2  A.  I didn't get the other one until trial time.

3  Q.  All right.  Let's talk about that one.  The secondary 851.

4  Did you believe that was a duplicate of the first 851 that was

5  filed?

6  A.  I'm not sure I put them side by side to compare, to see if

7  they were exact duplicates.  The certificate was different.  I

8  noticed that, of course, because it was the trial day,

9  November 13.

10  Q.  Okay.

11  A.  So I couldn't tell you exact, exact duplicate or not.

12  Q.  And when did you receive the -- that -- you said trial

13  date.  Do you know if you recall what time?

14  A.  Let me look.  I think it was 9:00 a.m. in -- this

15  courthouse was closed, so Judge Middlebrooks was in Miami at

16  that time.

17  Q.  And do you recall if, at that time, the jury had, in fact,

18  been sworn in yet?

19  A.  I think that was the -- at the time, the 9:00 a.m. when

20  trial began, so that would have been the first day of trial,

21  so jury would not have been sworn in, is my memory.

22  Q.  All right.  Do you recall going over that 851 with

23  Mr. Hunt?

24  A.  Yes --

25          THE COURT:  Let me back up.  If I understand the law

THURSDAY, OCTOBER 20th, 2011

1   in the Eleventh Circuit, it's not when the jury is sworn, but

2   when jury selection begins.

3          MR. MARINES:  Correct.

4          THE COURT:  So my question is, do you recall if you

5   got the second 851 notice before the jury selection began?

6          THE WITNESS:  I do.  And it was before the jury panel

7   walked into the room for jury selection.

8          THE COURT:  Before they even entered the room.

9          THE WITNESS:  Yes.

10          THE COURT:  Okay.

11   BY MR. MARINES:

12   Q.  And did you get an opportunity to speak to Mr. Hunt about

13   that?

14   A.  Yes.

15   Q.  All right.  Now, did you show Mr. Hunt the second 851?

16   A.  Yes.

17   Q.  And did that include the prior convictions?  Did that

18   second 851 have a prior conviction?

19   A.  I'm not sure if they -- I don't know if they were

20   literally included as attachments or not, other than what --

21   the same case numbers in the body.

22   Q.  The actual case, the actual convictions, were they also

23   included as exhibits?

24   A.  I don't remember.  It's not included in my packet, the

25   stapled pages are simply the information.  It doesn't look

THURSDAY, OCTOBER 20th, 2011

 1  like I took a staple out and restapled it.  So that's the best

 2  I can answer you on that.

 3        THE COURT:  Did you recognize those case numbers as

 4  being the same ones that you'd seen before?

 5        THE WITNESS:  Yes.  And I had those in -- I had all

 6  my boxes.  I had everything with me.  It's just, I thought you

 7  asked me if literally it's provided with the information or

 8  not.  I don't remember that.

 9  BY MR. MARINES:

10  Q.  I'm going to show you Government Exhibit 3, see if you

11  recognize that?

12  A.  Yes, sir.

13  Q.  What do you recognize that to be?

14  A.  I recognize this one to be the -- I think you called it

15  subsequent or second information received that -- I said was

16  received before the jury walked in.

17  Q.  And now does that help you -- help you recollect when, in

18  fact, that 851 was filed?

19  A.  Time frame-wise?

20  Q.  Yes.

21  A.  I don't know when it was filed.  I mean, I can read the

22  top and see what the notation says, but --

23  Q.  What does it say?

24  A.  It was Mr. Hunt's case number on it, document number 715,

25  entered on FLSD docket 11/15/2006, page one of three.  It has

1  a -- looks like a -- below that, a copy of a machine-type

2  stamped in.  I cannot read all the words.  It looks like the

3  second line, looks like 2006, November 13.  Looks like a p.m.

4          If you're asking me to read it, I would say p.m.,

5  1:34.

6  Q.  Fair enough.  Now, do you recall if at that time, the jury

7  panel had been sworn in at that point?

8  A.  I don't remember.  At 1:34?

9  Q.  Yes.  In the afternoon.

10  A.  I wouldn't be able to swear to that.

11  Q.  Okay.

12          THE COURT:  Is that the one that's signed by Ellen

13  Cohen?

14          THE WITNESS:  This is signed for -- signed by

15  somebody for -- I can't -- I don't recognize the signature.

16          MR. MARINES:  Yes, Your Honor.

17          THE COURT:  But it's signed for Karen Atkinson?

18          THE WITNESS:  Yes.

19          THE COURT:  Okay.

20  BY MR. MARINES:

21  Q.  Now, looking at the service jurat in the back, does it

22  indicate to you who was -- where was that -- what was that

23  enhancement -- who was it sent to?

24  A.  Prior counsel, Mr. Geesey.

25  Q.  At that point you were counsel, correct?

1  A.  Yes, sir.

2  Q.  All right.  Is that the copy you received in court?

3  A.  I actually -- the copy that I received in court does not

4  include the -- what I was trying to read, that machine clerk

5  stamp.

6  Q.  Other than the fact that it's not date stamped, is it an

7  identical copy of what you received, in your opinion?

8          In fact, did you ever remember -- the document

9  presented to you as Exhibit Number 3, do you ever recall

10  seeing that document?

11  A.  I have a copy -- yes.  I do have a copy of it.

12  Q.  And do you have -- and you also said the copy was handed

13  to you in court, without the date stamp?  Yes?

14  A.  I have a copy that -- yeah.  The answer is yes.  But it --

15  it -- it is what I have in my hands.  It is not an exact

16  replica of that.

17  Q.  That was my question.

18  A.  Sorry.

19  Q.  That's fine.  I have to be a little more clear.

20          Now, was it your understanding that the second 851

21  was being done out of an abundance of caution?

22  A.  I -- I'm sorry, I don't know.

23  Q.  I'll strike that.  Did you compare the first 851 with the

24  second 851?

25  A.  Similar to what I said before.  I would say yes, but I'm

THURSDAY, OCTOBER 20th, 2011

1    not sure if I put them next to each other, to go word for

2    word.

3    Q.  All right.  Now, looking at that second 851 that was filed

4    on the day of trial, November 13, 2006, does it incorporate

5    within the body of that the defendant's -- Mr. Hunt's name?

6    A.  Exhibit 3 does.

7    Q.  Okay.  And that differs from Exhibit Number 2, correct?

8    A.  With Mr. Allen's, yes, sir.

9    Q.  Okay.  That one has -- that differs from Exhibit Number 2

10   that we have defendant Allen's name on it, correct?

11          And he said yes.

12          Now looking at that Exhibit Number 3, and reading the

13   body of Exhibit Number 3, does it indicate to you -- what does

14   that indicate to you as far as the convictions that are being

15   listed there?

16   A.  Indicates the same thing that I sort of answered last

17   time.  It has the alternative language in it and the case

18   numbers that we had talked about before that.

19   Q.  Does it also have language "in addition to"?

20   A.  I think it has -- I don't have the other exhibit.  Maybe

21   the last paragraph is added or there's an additional paragraph

22   or something.

23          Could you ask me that again, please, sir.

24          MS. VILLAFANA:  I'm sorry, which exhibit?

25          MR. MARINES:  This is Exhibit Number 3 that has -- I

THURSDAY, OCTOBER 20th, 2011

1  want to point out that Exhibit 2 and 3 are different, and that

2  Exhibit Number 3 has specific information -- adding the second

3  conviction, where the Number 2 does not.

4         THE WITNESS:  Exhibit 3, on the second page, first

5  line, has language that is "in addition."  The words say "in

6  addition."

7  BY MR. MARINES:

8  Q.  And that language is not incorporated in document 2,

9  correct?

10  A.  I don't see the words "in addition."

11  Q.  All right.  Now --

12         THE COURT:  It uses the language "in the

13  alternative," is that correct?

14         MR. MARINES:  They both use the language "in the

15  alternative."  But Exhibit Number 3 includes the language "in

16  addition to the first conviction, also going to rely on the

17  second conviction."

18         And in the alternative, they rely on either

19  conviction if one is to be consolidated.

20         THE WITNESS:  That's what it says.

21  BY MR. MARINES:

22  Q.  Is that a correct assessment?

23  A.  That's correct, yes, sir.

24  Q.  Now, if, in fact, they were -- but your advice to Mr. Hunt

25  was that he was facing life based on the enhancements as they

THURSDAY, OCTOBER 20th, 2011

1  were -- let's go to Exhibit Number 2.

2  A.  Yes, sir.

3  Q.  And also as to Exhibit Number 3, he was also looking at

4  life?

5  A.  Yes, sir.

6  Q.  And looking at the language in Exhibit Number 3 is a

7  little more clearer, that two convictions are being relied

8  upon in order to enhance to a life sentence, correct?

9          MS. VILLAFANA:  Objection, leading.

10          THE COURT:  Overruled.

11          THE WITNESS:  Well, I think my best answer to that

12  is, when I first got the paperwork, went over it with

13  Mr. Geesey, went over it with the defendant, it was clear to

14  me he qualified.  Notwithstanding any "in the alternative"

15  type language in the document, to me.  That's the way I took

16  it and that's the way I proceeded.

17  BY MR. MARINES:

18  Q.  Okay.  So I think we're differing from qualifying to what

19  was actually filed, because the issue is not whether he

20  qualifies, we know he would qualify, the issue is whether the

21  enhancement, as filed, your advice to Mr. Hunt was that he, in

22  fact, was looking at a statutory life?

23  A.  Just so we're clear.

24  Q.  Yes.

25  A.  My understanding, when I got the case, just speaking to

THURSDAY, OCTOBER 20th, 2011

1   Mr. Geesey alone, without even speaking to Ms. Atkinson, was,

2   he qualified for life.  From that, and my review of the

3   papers, I thought he was going to get life.  And proceeded

4   from that standpoint.

5          THE COURT:  And you made that clear to him.

6          THE WITNESS:  Yes, sir -- yes, ma'am, excuse me.

7   BY MR. MARINES:

8   Q.  And according to your notes, you discussed that with him

9   on October 24?

10  A.  If that was the date I said.  I went over it on various

11  times, but that was -- that was one of them.

12  Q.  And did you, at any point, read verbatim to Mr. Hunt the

13  initial 851 enhancement filed September 12, 2006?

14  A.  Yes.

15  Q.  And also, did you include the name of Leonard Allen at the

16  time that you read it to him?

17  A.  I must have.

18  Q.  And do you know who Mr. Leonard Allen Jr. is?

19  A.  I think he was the gentlemen -- there was three defendants

20  that ended up in trial.  I think Mr. Allen was the gentleman

21  sitting next to me, represented by Mr. Kollin.  I could be

22  wrong on -- we've been mixing and matching defendants because

23  there were a lot to begin with.  But I thought he was one that

24  proceeded to trial with me, but I haven't looked and

25  researched that issue.

THURSDAY, OCTOBER 20th, 2011

1  Q.  To be fair, it's your understanding he was one of the

2  codefendants along with Mr. Hunt?

3  A.  Yes.

4  Q.  All right.  Now, at the PSI, did you object to any of the

5  convictions as presented by the -- at sentencing, did you

6  object to any of the convictions as presented in the PSI?

7  A.  Looks like on page 2 I did.

8  Q.  Of the sentencing?

9  A.  I'm looking, just at my copy of my uploaded -- and again

10  -- so it was uploaded at the time, on page 2.

11  Q.  What did you object to specifically?

12  A.  Page 17, paragraph 54, the defendant objects to his career

13  offender classification.

14  Q.  Okay.  And that was at sentencing?

15  A.  Oh, you asked me if it was in the PSI and it was --

16  Q.  Right, you objected -- okay.

17  A.  I don't have a transcript.  And I haven't looked at a

18  transcript of the actual sentencing hearing.  So what I'm

19  reading from -- again, I thought you asked me about my

20  response to this presentence report.  And there's a section on

21  page 2, part B, the defendant's criminal history, that has a

22  three-part objection and response to it.  That's what I was

23  referring to.

24  Q.  So you objected to the PSI?

25  A.  I filed an objection, yes, sir.

THURSDAY, OCTOBER 20th, 2011

1  Q.  And what was the grounds for your objection?

2  A.  Part A was the offense conduct.  The first part was asking

3  the Court to rely upon its memory of the facts brought out at

4  trial, not that which were contained in the PSI, for

5  paragraphs 6 through 20, pages 8 through 12.

6        Next was an objection to the defendant's four-level

7  role assessment increase under 3B1.1.

8        And then in that section, finally I argued that the

9  adjusted level should be 38, not 42.

10       My next section of objections was Part B, the

11 defendant's criminal history, which began with page 17,

12 paragraph 52, which I read to you before, regarding his career

13 offender classification.

14       I reiterated again, on page 17, paragraph 56, that

15 the offense level should be 38, not 42.  And then paragraph C,

16 pursuant to some case law, including *Almendarez-Torres*,

17 talking about the jury findings, preventing the Court from

18 sentencing to -- sentencing him to an increased punishment

19 because it was not specifically found by the jury.

20       And then after that was some personal offender

21 characteristics, Part C, and then a section about sentencing

22 options, Part B.

23 Q.  Now, at the sentencing, did you make any objections as to

24 the enhancement of 851?

25 A.  I haven't read the transcript and I wouldn't be able to

THURSDAY, OCTOBER 20th, 2011

1  swear to the specific words I used.

2  Q.  Do you have an independent recollection of objecting, at

3  any point, to the enhancements of 851?

4  A.  I don't think under oath I could say if I maybe adopted

5  the PSI, asked the judge to, you know, remember the PSI --

6          THE COURT:  Do you want to review the PSI, I have it

7  here -- I mean, the sentencing hearing.  Do you want him to

8  review it, or not?

9          MR. MARINES:  Yes, Your Honor.  I think we're

10  wrapping it up soon after that.

11          THE COURT:  It's in the government's exhibits.

12          THE WITNESS:  I had a chance to review the sentencing

13  transcript portion for Mr. Hunt, and it appears that I adopted

14  the written objections to the presentence investigation

15  report.

16  BY MR. MARINES:

17  Q.  So the answer was, there was no objections by you as far

18  as the enhancement of 851, correct?

19  A.  Correct.

20          MR. MARINES:  One second, Judge.  Last few questions.

21  Q.  Now, just to clarify, you indicated in the PSI you

22  objected to the criminal history, correct?

23  A.  Page 2 through 3 was about objections to the criminal

24  history.

25  Q.  However, your understanding at the point in time was

1  that -- what was the exposure to Mr. Hunt after trial?

2  A.  I'm sorry?

3  Q.  Your understanding of Mr. Hunt's exposure now, at this

4  point, at sentencing -- well, what do you believe his exposure

5  to be?

6  A.  Life.

7        THE COURT:  When you say -- you're talking mandatory

8  life.

9        THE WITNESS:  Yes.

10  BY MR. MARINES:

11  Q.  So regardless of his criminal history, he was still doing

12  life, based on the statutory requirement of 851?

13  A.  Yes.  Although, meaning yes, that's what I thought.

14  Q.  Okay.  So the objections to the conviction would have not

15  meted out any result if, statutorily, you believed he was

16  looking at life, correct?

17  A.  Well, I thought that the Almendez -- mispronouncing,

18  *Almendarez-Torres* case, as I think I stated in the sentencing

19  transcript, was an issue that needed to be addressed, or if it

20  was overturned in the future, retroactive, whatever, may

21  apply.  Then a mandatory life maybe would not apply to him

22  down the road.

23  Q.  Well, a mandatory doesn't address the statutory findings

24  of 851 enhancement.  It addressed his criminal history?

25  A.  Right.  I didn't mean to mix those two.  I thought you

THURSDAY, OCTOBER 20th, 2011

1  meant what I wrote in my PSR objections.

2  Q.  I just wanted to clarify what your understanding was, that

3  he was going to receive life based on the enhancement?

4  A.  Correct statement.

5  Q.  In fact, if the government had only -- all right.

6       To your recollection, on the day of trial, did -- do

7  you recall if you were handed the -- you said you do recall

8  that you were handed the second 851, correct?

9  A.  Yes, sir.

10 Q.  Do you recall if any mention of that was placed on the

11 record regarding your notice of the 851?

12 A.  I had -- I had thought that it was -- just straight

13 memory, I don't have notes about it -- I thought it was

14 discussed sort of as a -- an issue between judge -- between

15 judge on the bench and Ms. Atkinson at the podium.

16 Q.  There's no -- you haven't reviewed any minutes or anything

17 reflecting that that 851 was, in fact, served on the court

18 that morning?

19 A.  I haven't seen anything to support that.

20 Q.  Okay.

21      MR. MARINES:  Nothing further, Your Honor.

22      THE COURT:  When you spoke to the defendant in

23 advance of the morning -- of jury selection, is it fair to say

24 that you made it abundantly clear to him he faced a mandatory

25 life?

1          THE WITNESS:  Yes.  And my memory is that Judge

2   Middlebrooks gave us a few moments, I remember speaking with

3   the defendant in private, behind -- in that room, you go

4   through a, sort of corner door and you're in a holding area

5   where the marshals have the inmates.

6          THE COURT:  Yes.

7          THE WITNESS:  And then when we came back, it was

8   continued conversation between the defendant and I, and more

9   in the whisper, sort of with client while other people are in

10   the room type conversation.

11          THE COURT:  And he was in denial, is that a fair

12   statement, that he was going to get life?

13          THE WITNESS:  Yes.

14          THE COURT:  You encouraged him to take a plea to a

15   set number, as opposed to the mandatory life?

16          THE WITNESS:  Yes.

17          THE COURT:  And what was his response, generally,

18   when you had those discussions with him?

19          THE WITNESS:  Generally, he was passionate that he

20   did not want to take a plea.

21          THE COURT:  Go ahead, government.

22                      CROSS-EXAMINATION

23          MS. VILLAFANA:  Thank you.

24   Q.  Mr. Gershman, let me start where you ended with counsel

25   for Mr. Hunt.

THURSDAY, OCTOBER 20th, 2011

1        You were asked about whether there was any reflection

2   in the minutes about Ms. Atkinson handing the 851 to the

3   Court.  Although there's no reflection in the minutes, what is

4   your recollection regarding Ms. Atkinson providing a copy of

5   the 851 to the Court?

6   A.  My recollection was, on the morning of the trial or jury

7   selection, before it happened, Ms. Atkinson was the

8   prosecutor, along with Ms. McClanch, and Ms. Atkinson stood at

9   the podium when Judge Middlebrooks asked a general sort of, is

10  there any issues we need to deal with before we begin.

11       Ms. Atkinson had the paperwork in her hand, said so

12  out loud.  I am -- if I'm looking at the judge, sort of where

13  you're seated, to the right of the podium, with -- in the

14  first seat, Mr. Hunt is to my right, was provided the

15  paperwork.  Asked for time, judge took a break, although maybe

16  he physically was there, but the judge took a break, and the

17  marshals escorted us into the holding cell or holding pen

18  area.  And then went over it with him in private.  And then

19  when that conversation was over, we were communicating as best

20  we could in the room.

21  Q.  And when you returned to the courtroom, do you recall

22  Ms. Atkinson handing a copy of it to the Court or to the

23  courtroom deputy, either before or after the break?

24  A.  I thought she handed it, -- I think -- I remember handing

25  it to the person that would sit in front of the judge.  I'm

THURSDAY, OCTOBER 20th, 2011

1   not sure who the assistant was at the time.  But I thought it

2   was handed to somebody other than the judge, in order to pass

3   it to the judge.

4   Q.  Okay.  Thank you.

5          Now, you mentioned that the copy that you received in

6   court that day was not the same as Government Exhibit 3.  Let

7   me show you what's been marked as Government Exhibit 4.

8          Is Government Exhibit 4 a copy of what you received

9   in court the day of the trial?

10  A.  Yes.

11  Q.  And is that the document that you went over with Mr. Hunt

12  before the start of trial on November 13, 2006?

13  A.  Yes, ma'am.

14  Q.  All right.  And that document contains his name both in

15  the caption as well as in the body of the document?

16  A.  Yes, with aliases.

17  Q.  With aliases, the correct aliases?

18  A.  That's what he was referred to as, yes.

19  Q.  And it also refers to the two convictions that are the

20  correct convictions, in other words, crimes that he was

21  convicted of in cases that he was charged in?

22  A.  Yes, ma'am.

23  Q.  All right.  And that is the document that you recall

24  Ms. Atkinson handing to the person sitting in front of the

25  judge in court that day?

THURSDAY, OCTOBER 20th, 2011

1   A.   Yes.

2   Q.   At the time of the sentencing or prior to sentencing, did

3   you review the PSI with Mr. Hunt?

4   A.   Yes.

5   Q.   And the PSI noted that the defendant was facing mandatory

6   life, correct, on certain of the counts?

7   A.   Yes.

8   Q.   Did he express any surprise about that?

9   A.   No, ma'am.

10  Q.   And if I could show you a copy of the PSI, which is marked

11  as Government Exhibit 5, and refer you to paragraph 3 of

12  Government Exhibit 5.  Does that note that an 851 enhancement

13  was filed?

14  A.   Yes.

15  Q.   And did either you or Mr. Hunt express any objection to

16  that paragraph?

17  A.   No.  I went over it with the defendant before.  I don't

18  think I included that in the response.

19  Q.   Okay.  And you did discuss your objections to the PSI with

20  Mr. Hunt before filing?

21  A.   Yes, ma'am.

22  Q.   All right.  Did Mr. Hunt speak at the sentencing?

23  A.   I don't remember.  I remember he conducted the forfeiture

24  trial himself.  But I wouldn't be able to swear as to whether

25  after the forfeiture trial he again testified to Judge

THURSDAY, OCTOBER 20th, 2011

1  Middlebrooks.  I don't remember that.

2  Q.  Okay.  But in preparation for the sentencing hearing, you

3  don't remember him expressing any surprise that he was facing

4  mandatory life?

5  A.  Correct.

6        THE COURT:  Do you want to see his remarks at the

7  sentencing hearing?  Do you want him to look at that,

8  government, or not?

9        MS. VILLAFANA:  No, I think that since we have the

10  sentencing transcript, I can ask Mr. Hunt about that.

11        THE COURT:  Okay.

12  BY MS. VILLAFANA:

13  Q.  And also, post-sentencing, did Mr. Hunt ask for new

14  counsel?

15  A.  I thought that he hired -- he and a codefendant together,

16  hired private counsel together for purposes of appeal.  I

17  don't remember their names.

18  Q.  All right.  Let me show you what's been admitted as

19  Government Exhibit 8.  Do you recall preparing Government

20  Exhibit 8?

21  A.  Yes, I do.

22  Q.  And does that refresh your recollection as to whether

23  Mr. Hunt requested new counsel for appeal?

24  A.  Well, for sure he expressed it to me immediately upon

25  conviction.  So that's why I filed this, hopefully within the

THURSDAY, OCTOBER 20th, 2011

1   appropriate time frame.  And then there was, I think two

2   private attorneys that took -- that came onboard for Mr. Hunt.

3   Q.   Okay.  And could I just ask you to read aloud the second

4   sentence of -- the second and third sentences of paragraph

5   number 2?

6   A.   "The defendant wishes to prosecute his appeal on numerous

7   grounds, including undersigned trial counsel's

8   ineffectiveness.  The defendant has specifically advised

9   undersigned that he wishes to ask the Appellate Court to grant

10  him a new trial based upon undersign's prejudicially deficient

11  performance."

12  Q.   Okay.  Thank you very much.

13           Also, in your dealings with Mr. Hunt, were you able

14  to determine whether or not he is able to read the English

15  language?

16  A.   Yes.

17  Q.   All right.  And so the documents, for example, the

18  judgment and convictions for the two state court convictions

19  that you showed to him, he would be able to read those?

20  A.   That was -- yes, that was my understanding.

21  Q.   Okay.  Thank you.  So even though the first 851

22  enhancement may have mentioned Mr. Allen's name in the body of

23  the document, the judgment and convictions that were attached

24  thereto and that were in your file, he -- Mr. Hunt read and

25  seen that they referred to him?

THURSDAY, OCTOBER 20th, 2011

```
 1   A.  Yes, ma'am.
 2            MS. VILLAFANA:  No further questions.
 3            Thank you very much, Mr. Gershman.
 4            THE COURT:  Okay.  Are you done with the witness?
 5            MR. MARINES:  I am, Your Honor.
 6            THE COURT:  Okay, Mr. Gershman, thank you very much,
 7   sir.
 8            Petitioner rests, or are you calling a witness?
 9            MR. MARINES:  I'll call Mr. Hunt, Your Honor.
10            THE COURT:  Okay.  Let's go.
11                          WINFRED HUNT,
12      having been first duly sworn, testified as follows:
13                       DIRECT EXAMINATION
14   BY MR. MARINES:
15   Q.  Mr. Hunt, I'm going to -- do you know why you're here?
16   A.  Yes, sir.
17   Q.  Okay.  And you know why you're here?
18   A.  Yes, sir.
19   Q.  Do you know why you're here?
20   A.  In the courtroom?
21   Q.  Yes, today?
22   A.  Yes, sir.
23   Q.  You're trying to vacate your sentence?
24   A.  Yes, sir.
25   Q.  All right.  In regards to the case that you were convicted
```

THURSDAY, OCTOBER 20th, 2011

1   of, do you remember who your initial attorney was?

2   A.  Robert Gershman.

3   Q.  Your first attorney?

4   A.  My first attorney was Allen Geesey.

5   Q.  Okay.  Did there come a time when Mr. Geesey was no longer

6   your attorney?

7   A.  Yes, sir.

8   Q.  All right.  And did you and Mr. Geesey ever discuss the

9   government's intention to enhance you?

10  A.  No, sir.

11  Q.  Do you know what that is, enhancement?

12  A.  Now I know, since it's been filed on my 2255.

13  Q.  Okay.  And what -- do you understand that based on that

14  851, you were given a life sentence?

15  A.  Yes, sir.

16  Q.  Okay.  Prior -- did you and Mr. Geesey ever discuss the

17  fact that the government intended to filed that enhancement on

18  your case?

19  A.  No, sir.

20  Q.  Okay.  Now --

21          THE COURT:  No, you don't remember or no, you had no

22  discussion about it?

23          THE WITNESS:  We had no discussion.

24  BY MR. MARINES:

25  Q.  That was with Mr. Geesey, correct?

THURSDAY, OCTOBER 20th, 2011

1    A.   Yes, sir.

2    Q.   Now, you indicated that Mr. Gershman was also your

3    attorney?

4    A.   Yes, sir.

5    Q.   And he was your trial attorney?

6    A.   Yes, sir.

7    Q.   All right.  Now, did you and Mr. -- do you recall when

8    Mr. Gershman came into your case?

9    A.   He was only on there for 60 days.  I think it was

10   September, September -- sometime in September, when I was at

11   Fort Pierce.

12   Q.   Okay.  And that's in 2006, correct?

13   A.   Yes, sir.

14   Q.   All right.  And he was your trial attorney, correct?

15   A.   Yes, sir.

16   Q.   All right.  Now, do you remember Mr. Gershman meeting --

17   meeting Mr. Gershman?

18   A.   Like, two times.  A couple times.

19   Q.   You say -- you met him a couple of times?  Is that from

20   the moment he was appointed to the day of trial, is that the

21   period you're discussing?

22   A.   I met him at -- in Fort Pierce, when the court appointed

23   him as my counsel.  Then I met him two times after that, at

24   FDC Miami.

25   Q.   Okay.  Now, when he went -- when you met him at FDC Miami,

THURSDAY, OCTOBER 20th, 2011

1   do you remember him discussing the possibility of a plea

2   agreement?

3   A.  He was -- he was talking about -- he was talking about a

4   plea for -- at FDC Miami.  He was talking about a plea for 30

5   years, I think.

6   Q.  Okay.  Did you -- did he discuss the fact that the state

7   -- that the government intended to enhance your sentence?

8   A.  I don't recall that.  I don't recall that one.

9   Q.  Do you remember whether or not he showed you a document

10  that -- a document indicating that they were going to rely on

11  your prior convictions in order to enhance your sentence?

12  A.  He told -- I was talking to him about it, he said a jury

13  would be allowed to see my prior conviction or know about my

14  prior conviction.

15  Q.  That the jury would be allowed --

16  A.  That they would bring my prior convictions towards the

17  jury.

18  Q.  Was that the nature of the conversation in regards to your

19  criminal history?

20  A.  Yes, sir.

21  Q.  Okay.  Did he show you a document of the government's

22  intention to enhance your sentence if you were convicted at

23  trial?

24  A.  No, sir.

25          MR. MARINES:  May I, Your Honor?

THURSDAY, OCTOBER 20th, 2011

1  Q.  Okay.  I just provided you with Government Exhibit Number

2  1.  Do you recall ever seeing that document before you went to

3  trial?

4  A.  No, sir.

5  Q.  Okay.  Do you recall discussing the contents of that

6  document with Mr. Gershman?

7  A.  No, sir.

8  Q.  Looking at that document, do you ever recall seeing that

9  document at any point in time?

10  A.  When I -- when I was reading my 2255, that's when I

11  noticed this document.

12  Q.  Okay.  So when I presented it to you, is that correct?

13  A.  Yes, sir.

14  Q.  Okay.  Prior to my presentation to you of this -- of the

15  22 -- I'm sorry, of the 851, had you ever seen it before going

16  to trial?

17  A.  No, sir.

18  Q.  That document?

19  A.  I never seen this document.

20  Q.  In the body of that document, does -- does your name

21  appear on the caption of that document?

22  A.  On the bottom of --

23  Q.  The caption, the heading?

24  A.  Yes, sir.

25  Q.  Okay.  And that is you, Winfred Hunt, correct?

THURSDAY, OCTOBER 20th, 2011

1  A.  Yes, sir.

2  Q.  All right.  And in the body of the document, it says

3  Leonard Allen.  Do you know who that is?

4  A.  Yes.  That's my brother.

5  Q.  Okay.  Now, do you know who was the attorney for your

6  brother?

7  A.  It was Kollins (phonetic), I think.  Kollins.

8  Q.  Kollins.  Now, there's also -- I'm going to show you

9  Exhibit Number 2, and see -- you recognize that document?

10 Also incorporated within Exhibit Number 2 are certified

11 convictions, do you see that?

12 A.  Yes, sir.

13 Q.  Had you seen that, at any point, prior to going to trial?

14 A.  No, sir.

15 Q.  Did Mr. Gershman ever discuss those convictions with you

16 in relations to the government's intention to enhance your

17 sentence?

18 A.  No, sir.

19 Q.  Did he discuss -- okay.  Did he discuss your convictions

20 other than -- I'm sorry.  Strike that.

21       Did he discuss how your prior criminal history would

22 be utilized if in fact you were convicted in regard to the

23 sentencing guidelines?

24 A.  He just told me the jury would be allowed to see my

25 priors, that I had prior drug charges.

THURSDAY, OCTOBER 20th, 2011

1  Q.  Okay.  But did he physically go over those convictions to

2  determine those were, in fact, your convictions?

3  A.  He didn't go over no convictions.  He just said the jury

4  is going to be allowed to see your prior convictions of drug

5  charges.  They would be introduced.

6  Q.  But you realize you had prior convictions, correct?

7  A.  Yes, sir.

8  Q.  Okay.  And your understanding was that those convictions

9  would only be -- would come out if, in fact, you were to

10  testify?

11  A.  Yes, sir.

12  Q.  Okay.  But there was, just to correct the record, were

13  there any discussions with you, if you were convicted, what

14  would happen?

15  A.  I would receive the maximum penalty.

16  Q.  What would be the maximum penalty?

17  A.  Life.

18  Q.  Okay.  Now, do you know how many meetings you had with

19  Mr. Gershman?

20  A.  He was only on my -- in September, he was on my case for

21  60 days.  I started trial November 13.  He was only on for 60

22  days.  About two times.

23  Q.  Okay.  And do you recall where you met him in those two

24  times?

25  A.  Besides the courtroom?

THURSDAY, OCTOBER 20th, 2011

1   Q.   Besides the courtroom?

2   A.   Two times in FDC Miami.

3   Q.   All right.  Now, when he went to see you at FDC Miami, did

4   he bring documents in order for you to see?

5   A.   He brought some -- some -- the white lines and stuff like

6   that.  The wiretaps and CDs.

7   Q.   The CDs?

8   A.   Yes.

9   Q.   And what was the nature of those CDs?

10  A.   Phone conversations.

11  Q.   Now, on the day of trial, November 13, 2006, do you recall

12  if there was any further discussion regarding the government's

13  intention to enhance you if you're convicted at trial?

14  A.   No, I don't recall.  Just said you was going to face the

15  maximum penalty.

16  Q.   Okay.  So did you believe that if you were convicted, what

17  did you believe was -- based on your conversation with

18  Mr. Gershman, what do you believe would happen, what was the

19  range of possibilities that would happen if you were

20  convicted?

21  A.   He just told me you will face a maximum penalty of 30

22  years if I go to trial, something like that --

23  Q.   Is it your belief you were looking at a window from 30

24  years to life?

25  A.   I believe --

THURSDAY, OCTOBER 20th, 2011

1        MS. VILLAFANA:  Objection, leading.

2        THE COURT:  What's the objection?

3        MS. VILLAFANA:  Leading.

4        THE COURT:  I'll allow you to cross-examine on it.

5  BY MR. MARINES:

6  Q.  Again, on the day of trial, do you recall going over any

7  documentations regarding the government's intention to enhance

8  you, an 851?

9  A.  No, I don't remember that.  I don't remember an 851.

10  Q.  Okay.  I'm going to show you -- I'm going to show you

11  Government Exhibit Number 4.  Do you remember seeing that

12  document before you proceeded to trial?

13  A.  No, sir.

14  Q.  Okay.  Did you see that document at any point before or

15  during trial?

16  A.  I ain't know nothing about this document until I see it on

17  my 2255.

18  Q.  Okay.  Now, you remember that -- you keep repeating that

19  you don't remember seeing that until you filed your 2255, is

20  that correct?

21  A.  I never read that document until it was brought to my

22  attention.  I didn't know what an 851 enhancement was until it

23  was on my -- I read it on my 2255.

24  Q.  All right.  Now, on the date of sentencing, do you recall

25  if -- do you recall making a statement to the Court?

THURSDAY, OCTOBER 20th, 2011

1  A.   Date of sentencing, I told him -- I don't see where I

2  could get a life sentence.

3  Q.   So you didn't believe it was possible for you to get life

4  at the time of sentencing?

5  A.   No, sir.

6  Q.   You believed -- you believed that the Court could not

7  sentence you to life at that point?

8  A.   Yes, sir.   I had -- I told the Court that I don't see no

9  way I could get a life sentence for no drug charges.

10  Q.   Okay.   Now, was it your understanding at that point that

11  the -- what was your understanding at that point and what

12  would be the maximum penalty you would receive?

13  A.   About 30 years.

14  Q.   All right.   And that was based on your conversation with

15  Mr. Gershman?

16  A.   Yes, sir.

17  Q.   Okay.   All right.   I'm trying to show you your affidavit

18  that you presented to the Court.   One second.

19           THE COURT:   Exhibit 12?

20           MR. MARINES:   Exhibit 5.

21           THE COURT:   In the government's packet.

22           MR. MARINES:   I think it's Exhibit Number 12, Your

23  Honor.   That's Mr. Hunt's sworn affidavit.

24           THE COURT:   Right.

25  BY MR. MARINES:

1  Q.  Do you remember giving a sworn affidavit in regards to the

2  preparation of your 2255?

3  A.  Yes, sir.

4  Q.  Okay.  Now, you indicated here that you were never advised

5  by Mr. Gershman that the government intended to enhance your

6  sentence if convicted at trial, was that your understanding?

7  A.  Yes, sir.

8  Q.  Okay.  Now, after you reviewed the -- did you get a chance

9  to review Exhibit Number 1, which was the initial drug

10 enhancement which includes your brother's name on it?

11 A.  I didn't see none of the enhancement until you all brought

12 it to my attention.

13 Q.  Okay.  After looking at it, do you think that you were

14 being enhanced, after reviewing this document, do you think

15 that enhancement was for you, or who do you believe it was

16 for?

17 A.  By reading it, I thought it was for my brother.

18 Q.  Okay.  Now, it has a couple of convictions listed here.

19 Do you know if those convictions were your convictions by

20 looking at the docket numbers?

21 A.  Not right off.  Not right off.  I didn't know it was my

22 conviction.

23 Q.  And you testified earlier that you did not, in fact, see

24 the certified convictions, is that right?

25 A.  No, I did not see them.

THURSDAY, OCTOBER 20th, 2011

```
1    Q.  All right.
2             MR. MARINES:  I have nothing further, Your Honor.
3             THE COURT:  Cross.
4                         CROSS-EXAMINATION
5    BY MS. VILLAFANA:
6    Q.  Morning, Mr. Hunt.
7    A.  How are you doing?
8    Q.  Mr. Hunt, you testified at your trial, correct?
9    A.  Yes, ma'am.
10   Q.  Before the jury, right?
11   A.  Yes, ma'am.
12   Q.  And you denied that you were dealing crack cocaine,
13   correct?
14   A.  I don't remember denying it.  I don't think I ever denied
15   it, and -- and the only thing I just denied, probably quantity
16   of.  I never denied dealing drugs.  I just denied what the
17   government presented to at the trial.
18   Q.  Didn't you say that you were dealing marijuana instead of
19   crack?
20   A.  That was on particular issues in the case.
21   Q.  And the same thing with --
22   A.  That was on conspiracy, I think for kilos.
23   Q.  And you also denied being the head of an organization,
24   correct?
25   A.  Yes, ma'am.
```

THURSDAY, OCTOBER 20th, 2011

1  Q.  Okay.  And the jury convicted you anyway, of all counts,

2  correct?

3  A.  The jury did not convict me of being head of an

4  organization.

5  Q.  But -- no, but they convicted you of all the counts,

6  correct?

7  A.  They convicted me of distributing crack cocaine.

8  Q.  And powder cocaine?

9  A.  And powder cocaine.

10  Q.  And conspiracy to distribute crack cocaine and powder

11  cocaine.  And Judge Middlebrooks --

12        MR. MARINES:  Your Honor --

13        THE COURT:  Hold on.  She hasn't finished the

14  question, but --

15        MR. MARINES:  Well, the line of questioning goes to

16  his trial testimony, and what we're trying to establish here

17  is notice, whether notice was properly given or filed.

18        MS. VILLAFANA:  Goes to credibility.

19        THE COURT:  His credibility is at issue.  Overruled.

20        MR. MARINES:  No problem, Judge.

21  BY MS. VILLAFANA:

22  Q.  And Judge Middlebrooks overruled your objection to the PSI

23  regarding whether or not you were the head of the

24  organization, correct?

25  A.  At trial -- I mean, at the sentencing?

THURSDAY, OCTOBER 20th, 2011

```
1   Q.  Yes.

2   A.  Yes.

3   Q.  Okay.  So he decided that you weren't very credible at

4   trial?

5   A.  (No response.)

6   Q.  I'll move on.

7          Now, you said that you never received the 851

8   enhancement until your attorney, on the 2255, showed it to

9   you?

10  A.  Yes, ma'am.

11  Q.  Either of them?

12  A.  Never seen it until I read it on -- they raised the issue

13  on the 2255.

14  Q.  Okay.  And then the other thing that was a little

15  confusing today is that first you said that when you first met

16  with Mr. Gershman, he talked about a plea for 30 years,

17  correct?

18  A.  Yes, ma'am.

19  Q.  And he told you that if you didn't take the plea for 30

20  years, you would be facing life?

21  A.  He told me I'd be facing the maximum.

22  Q.  No, you testified first that he told you you would be

23  facing life?

24  A.  I thought it would be a life sentence.

25  Q.  And then later, at the end of your testimony, you said
```

1  that at trial, you thought you'd be facing 30 years.  So why

2  would you plead to 30 years if you were only going to be

3  facing 30 years?

4  A.  Variety of counts.  If someone would like -- you would

5  face 30 years in this one.  Some of them, like, you would face

6  a life sentence for this one.

7  Q.  Okay.  So you knew that you would be facing life?

8  A.  Yes, ma'am.

9  Q.  Okay.  So, at sentencing, you weren't surprised that you

10 were facing a life sentence?  You didn't think you should be

11 facing a life sentence, but you weren't surprised you were

12 facing a life sentence?

13 A.  It goes back to the counts.  Something I had -- probably

14 in the 40 counts, and I wasn't convicted of all the counts.

15 All of them was different grounds on different counts.

16 Q.  Well, you were convicted of Counts 1, 2, 3, 4, 7, 8, 9,

17 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 22, 23, 24, 25,

18 26, 27, 28, 29, 30 through 34.

19        So that was all the counts that you were charged

20 with?

21 A.  Yes, ma'am.  But I didn't know all the counts carried a

22 life sentence.

23 Q.  But some of them did, you knew?

24 A.  I know they carried a maximum time.

25 Q.  Okay.  And it's your testimony here today that you don't

THURSDAY, OCTOBER 20th, 2011

1  recall, on the morning of trial, your attorney taking time to

2  meet with you to discuss a possibility of pleading without

3  facing mandatory life?

4  A.  No, ma'am.

5  Q.  All right.  You don't remember that at all?

6  A.  I don't remember no discussion.

7  Q.  All right.

8        THE COURT:  Do you remember the judge letting you go

9  into a room off to the side with your attorney before the jury

10  was brought in?  Do you remember that, or no?

11        THE WITNESS:  He had a recess for -- a recess for

12  picking the jury.

13        No, ma'am, I don't.

14        THE COURT:  You don't remember that?

15  BY MS. VILLAFANA:

16  Q.  That never happened?

17  A.  I don't remember that.

18  Q.  All right.  And you asked for new counsel prior to appeal,

19  correct?

20  A.  I asked for -- I asked for new counsel when Mr. Gershman

21  was representing me, but he said it was too late to get to

22  know my case.

23  Q.  But you had a different lawyer represent you on appeal?

24  A.  Yes, ma'am.

25  Q.  All right.  And you talked to that new attorney prior to

THURSDAY, OCTOBER 20th, 2011

1  the appeal, correct?

2  A.  Yes, ma'am.

3  Q.  All right.  And did you receive a copy of your appeal

4  brief?

5  A.  Yes, ma'am.

6  Q.  All right.  And you also addressed the Court at

7  sentencing, right?

8  A.  Yes, ma'am.

9  Q.  Okay.  And it is your statement here today that you never

10  saw the 851 enhancement either -- at them, before Mr. Marines

11  showed it to you?

12  A.  When I first saw the 851 was in -- when I was reading my

13  2255 form today.

14  Q.  And it's your testimony here today that Mr. Gershman never

15  discussed them with you?

16  A.  Mr. Gershman never discussed that with me.

17          MS. VILLAFANA:  All right.  I have nothing further,

18  Your Honor.

19          THE COURT:  Anything else from --

20          MR. MARINES:  No, Your Honor.

21          THE COURT:  Okay.  The witness is excused.

22          MS. VILLAFANA:  Your Honor, we have one additional

23  witness.

24          THE COURT:  Does the petitioner rest?

25          MR. MARINES:  Yes, Your Honor.

THURSDAY, OCTOBER 20th, 2011

```
 1            THE COURT:  Government.

 2            MR. MARINES:  We would call Gary Kollins.

 3            THE COURT:  Okay.

 4            Come up, Mr. Kollins.  Thank you for being here this

 5   morning.

 6                      GARY KOLLIN,

 7      having been first duly sworn, testified as follows:

 8   BY MS. VILLAFANA:

 9   Q.  Good afternoon, Mr. Kollins.

10   A.  Good afternoon.

11   Q.  Please state and spell your name for the record?

12   A.  My name is Gary Kollin.  K-O-L-L-I-N.

13   Q.  Were you an attorney of record in case number 09-81057?

14   A.  I don't know the case number.  I was in the case United

15   States versus Mr. Hunt.  And Leonard Allen.

16   Q.  And who did you represent?

17   A.  I represented Leonard Allen.  It was before Judge

18   Middlebrooks.  The trial was in Miami, in the central

19   courtroom, in November 2006, I think it was.

20   Q.  All right.  And did you and Mr. Allen proceed to trial on

21   November 13 of 2006?

22   A.  We proceeded to trial.  I know it was in November.  I've

23   looked at some documents that refresh my recollection that it

24   was November 13.  But I don't have a present memory of the

25   exact date.
```

THURSDAY, OCTOBER 20th, 2011

1  Q.  Okay.  And did you proceed to trial along with Mr. Hunt?

2  A.  Yes.  And there was a third defendant represented by Ruben

3  Garcia, who's name I don't remember also.

4  Q.  Okay.  Now, prior to proceeding to trial, had AUSA Karen

5  Atkinson filed an 851 enhancement for your client, Leonard

6  Allen?

7  A.  I'll have to object.  My client is not the defendant here.

8  He has not waived his attorney-client privilege by any matter

9  and you're asking me to tell you my recollection, personal

10  recollections as to different events.

11        I think it would be similar to asking me if I spoke

12  to a witness and would be the work-product privilege.

13        THE COURT:  Okay.  She's not asking you what

14  discussion you had with Allen.  She's asked, the question on

15  the floor, is if you know if Karen Atkinson had filed an

16  enhancement as it relatives to which person?

17        MS. VILLAFANA:  Leonard Allen.

18        THE COURT:  To his client.  I'm going to overrule

19  your objection.

20        THE WITNESS:  Okay.  May I have a continuing

21  objection?

22        THE COURT:  Yes, sir.

23        THE WITNESS:  Thank you.

24        Yes, I know she filed an enhancement prior to the

25  commencement of trial.  And there was one also filed upon the

THURSDAY, OCTOBER 20th, 2011

1  -- before the jury selection began.

2  BY MS. VILLAFANA:

3  Q.  Okay.  And then I'm going to ask you about that.  The

4  morning of jury selection.  On November 13, 2006, prior to the

5  start of jury selection, what happened in the courtroom?

6  A.  Well, I remember that both Mr. Hunt and Mr. Allen were

7  there.  They were sitting at counsel table.  Mr. Gershman

8  represented -- and the other defendant was there, also.

9  Mr. Gershman represented Mr. Hunt.

10        At some time period, Karen Atkinson, who's outside,

11  who previously testified in this proceeding, presented to

12  Mr. Gershman and I -- I don't remember exactly where it was --

13  but it was in front of the bar and behind the tables, a 851

14  enhancement notice to us.  And she basically said this is the

15  last time, last chance for them to plea without a double

16  enhancement.

17        She wasn't going to reduce the first enhancement, but

18  she wasn't going to seek the life mandatory penalty with a

19  double enhancement.

20        Do you want me to continue?

21  Q.  Yes, go ahead.

22  A.  We both, Mr. Gershman and I, proceeded to our clients, and

23  I believe Judge Middlebrooks was already on the bench, and he

24  asked if we needed some more time, we weren't on the record.

25        And my recollection is, both Mr. Hunt and Mr. Allen

THURSDAY, OCTOBER 20th, 2011

1  were taken back to the holding area behind the central

2  courtroom, and both Mr. Gershman and I went back there to talk

3  to our respective clients.

4  Q.  Okay.  And I won't ask you what happened inside those

5  rooms.  But when you returned to the courtroom, what do you

6  recall happening?

7  A.  I know Mr. Gershman told Ms. Atkinson because of the

8  events, that his client wanted to proceed to trial.  And I

9  know I told her that my client is going to go to trial.  He

10  doesn't want to take any plea.

11  Q.  And do you recall Ms. Atkinson handing copies of the 851

12  enhancements to the courtroom deputy or courtroom staff?

13  A.  No.

14  Q.  Okay.  And after that, did trial proceed?

15  A.  Yes, sir -- yes.

16       MS. VILLAFANA:  And I have no further questions for

17  Mr. Kollin.

18       THE COURT:  When you say "trial proceeded," up until

19  this point in time, before you and your respective clients and

20  Mr. Gershman and the defendant went to this side room, was the

21  jury present before any of this?

22       THE WITNESS:  No, there was no --

23       THE COURT:  They hadn't been questioned?

24       THE WITNESS:  Trial had not commenced in any way

25  until after this was resolved, and the jury was definitely not

THURSDAY, OCTOBER 20th, 2011

1  in the room.  Because Judge Middlebrooks would have never let,

2  as far as -- I would not believe that Judge Middlebrooks would

3  have let us leave the courtroom with our clients, especially

4  since they were going to have to be escorted by the marshals.

5          THE COURT:  Right.  In chains.

6          THE WITNESS:  I don't remember.  I don't remember

7  where they -- whether they were wearing leg chains or not.

8          THE COURT:  Okay.  But it's fair to say that this

9  conversation and this event took place before any jurors were

10 questioned for purposes of jury selection.

11         THE WITNESS:  It's not fair to say.  It absolutely

12 occurred that way.

13         THE COURT:  Okay.  Thank you.

14 BY MS. VILLAFANA:

15 Q.  And Mr. Kollin, just to clarify, is it that you just don't

16 recall whether or not the documents were handed to the

17 courtroom deputy?

18 A.  Oh, I don't recall one way or the other.

19 Q.  Okay.

20 A.  There's something in my mind, I believe it occurred.

21 Q.  But you can't -- you just can't say for certain?

22 A.  Well, I know that if they were -- I can answer it this

23 way.  If they weren't given, and that was my recollection,

24 that it didn't occur, I would have made an objection at the

25 time of sentencing about that.  And I believe I had a present

THURSDAY, OCTOBER 20th, 2011

1  memory at that time that it did occur.  And that's why I

2  didn't make that objection.

3  Q.  Okay.  Thank you very much.  I appreciate that.

4         THE COURT:  Yes, sir.

5         MR. MARINES:  Very brief, Your Honor.

6                      CROSS-EXAMINATION

7  BY MR. MARINES:

8  Q.  Mr. Kollins --

9  A.  Kollin, no "s."

10 Q.  Kollin, I apologize.

11        Now, you testified earlier that there was discussion

12 with Ms. Atkinson regarding a double enhancement?

13 A.  Very brief discussion.

14 Q.  Okay.  Now, was that because the initial 851 only had one

15 conviction they were relying on, versus the two necessary to

16 get the last enhancement?

17 A.  I have seen it earlier, and I saw that Mr. Hunt had both.

18 I saw it earlier today.  But I think Ms. Atkinson -- the way I

19 recalled it, Ms. Atkinson made the statement that it would be

20 one enhancement for the purposes of a plea.

21 Q.  Okay.  One enhancement would lead to what?

22 A.  Mandatory -- I think it was 20 years.

23 Q.  Okay.  And two would mean?

24 A.  Life.

25 Q.  Would have been life.  All right.

1          MR. MARINES:  That's it.  Nothing further, Your

2    Honor.

3          THE COURT:  Thank you.  Thank you very much, sir.

4    Sorry to keep you here all this morning.

5          THE WITNESS:  Am I free to leave?

6          THE COURT:  Yes, sir.

7          THE WITNESS:  Thank you, Your Honor.

8          THE COURT:  Until next time.

9          Okay.  Does the government rest?

10         MS. VILLAFANA:  Yes, Your Honor.

11         THE COURT:  Petitioner rest?

12         MR. MARINES:  We do, Your Honor.

13         THE COURT:  Okay.  Anything else?

14         MS. VILLAFANA:  Unless you want to hear my argument.

15         THE COURT:  I don't require it but I'm not going to

16    foreclose it.  It's your day here, whoever wants to say

17    something.

18         MR. MARINES:  Do they want to go first?

19         THE COURT:  It's your burden, it's your motion.

20         MR. MARINES:  Okay, we'll go first, Judge.

21         The power of closing the argument at the end is, I

22    know doesn't always sway -- it doesn't have as much strength

23    with the Court as it does with the jury.

24         But nevertheless --

25         THE COURT:  No, I've been taking extensive notes.

1        MR. MARINES:  That's great.  I know you have been and

2    we have all been intently listening to all the testimony

3    presented today.

4        And Your Honor, with the Court's permission, we're

5    here on a 2255 filed by Mr. Hunt, regarding the strict

6    compliance of 851, and his motion to vacate sentence based on

7    the fact that the 851 was not strictly complied with.

8        Your Honor, the Court is aware of the standard 851,

9    that no person can stand convicted of an offense under this

10   part, shall be sentenced to increased punishment by reason of

11   one or more prior convictions unless before trial or before

12   entry of the plea of guilty the United States files

13   information with the Court.

14       And it's important to stress information from the

15   trial for information with the Court, and that's what's

16   stressed in the obligations of the strict compliance of 851.

17       Now, when we look at the 851s that were filed, Your

18   Honor, there were two -- two mentioned today, which is Exhibit

19   Number 1 and Exhibit Number 3, I believe that were actually

20   filed.  Exhibit Number 2, which is -- which had the documents

21   that were presented to counsel, but were not, in fact, filed,

22   which had the certified convictions.

23       Now looking at the Exhibit Number 1, it is clearly

24   indicated there were specific errors in that and I think those

25   errors are detrimental to the strict compliance of -- strict

THURSDAY, OCTOBER 20th, 2011

```
 1   compliance requirement of 851 statute.  Specifically, the name
 2   of Mr. Leonard, Leonard Allen was incorporated within that
 3   information and the certified convictions did not follow that
 4   until some prior time.
 5        Based on the information that's provided, that's one
 6   error which I believe doesn't adequately notify Mr. Hunt that
 7   he's in fact being enhanced by the government.
 8        Secondly, the governmental testimony was that the
 9   motions -- the notice went to the prior counsel which is not,
10   in fact, the counsel that Mr. Hunt had at the time of -- right
11   before trial and during trial.  And that's also a crucial
12   error in the strict compliance of 851.
13        As testified by Ms. Atkinson and also testified by
14   Mr. Gershman, the enhancements went to his prior counsel,
15   Mr. Geesey.  Not only was the -- Government Exhibits 1
16   indicate that, Government's Exhibit 2 indicates that and
17   Government Exhibit Number 3 also indicating that the notice
18   was given to Mr. Geesey who was not, in fact, attorney of
19   record.
20        There was discussion as to whether or not -- whether
21   or not -- whether or not Mr. Hunt was even shown any of the
22   documentation requiring his enhancements, specifically his
23   conviction and the actual drug enforcement information that
24   was filed on September 12, 2006.
25        Now, we know for a fact that ECF existed at the time
```

1    and if it did, either way, Ms. Atkinson had not filed the

2    certificate convictions with the court in order to verify that

3    prior counsel did, in fact, receive it.  We have prior

4    counsel's testimony that he received it, so we'll have to take

5    him at his word.

6         But looking at the 851 as it is submitted, as it was

7    submitted back on September 12, 2006, he relies on one

8    conviction and the information -- the documents in the Court's

9    -- been entered into evidence as Exhibit 1, and the Court can

10   review that document and establish whether or not the correct

11   amount of convictions are listed properly in order to properly

12   notify Mr. Hunt that he was, in fact, being enhanced to, not a

13   20-year minimum mandatory, but a life minimum mandatory or

14   statutory.

15        And also, the nature of the 851 filing is to allow

16   the defendant to properly address at sentencing whether those

17   convictions are actually him.  Since we don't -- you know,

18   since he wasn't actually shown that, we don't know if he had

19   the opportunity to do that.

20        And also, the most important requirement is of

21   filing.  Now, there's no doubt that first -- the first 851 was

22   timely filed --

23        THE COURT:  Is there any case law that says --

24        MR. MARINES:  Yes, there is, Judge.

25        THE COURT:  Filing for 851 purposes means that it has

THURSDAY, OCTOBER 20th, 2011

```
1   to be file stamped in the clerk's office?

2            MR. MARINES:  It does, Judge.  I have the case of --

3            THE COURT:  We have the case.

4            MR. MARINES:  United States versus James Jovan

5   Ladson, Judge.

6            THE COURT:  Give me a citation on that.

7            MR. MARINES:  The citation is 643 Federal 3, 1335,

8   Your Honor.

9            THE COURT:  F.3rd, what?

10           MR. MARINES:  1335.

11           THE COURT:  Is that cited in your brief?

12           MR. MARINES:  It wasn't cited in my brief, Your

13   Honor, because -- it wasn't.

14           THE COURT:  Let me see it.

15           MS. VILLAFANA:  I have a copy.

16           This is all supplemental.

17           THE COURT:  These are all supplemental cases?

18           MS. VILLAFANA:  Yes, they are, Your Honor.

19           THE COURT:  All right.  The government is giving me a

20   packet of supplemental cases.  Have you seen them?

21           MS. VILLAFANA:  I'm giving him a copy.

22           THE COURT:  You're giving him a copy now.  Ladson?  I

23   think I read Ladson.  Didn't we read Ladson before?  Yeah.  Is

24   this the Eileen O'Connor case?

25           MS. VILLAFANA:  It's a Judge Middlebrooks case.
```

THURSDAY, OCTOBER 20th, 2011

```
 1          THE COURT:  Right.  There's one where Eileen O'Connor
 2   made the statement about...  Anyway.
 3          MR. MARINES:  Well, it's a similar situation, Judge,
 4   where the government hands the --
 5          THE COURT:  Right.
 6          MR. MARINES:  Hands it to the court and that's not
 7   considered filing.  And the strict compliance of 851 requires
 8   actual filing.  And what we have here, the date stamp copy, is
 9   the official record that was -- that must be upheld to.  And a
10   notice, the requirement is two-fold.  One, first that it be
11   filed, and second, that it be handed to the defendant or his
12   counsel.
13          In this case, we're, you know, the wrong counsel was
14   handed the document.  And it was -- and well, we're talking in
15   regards to the first, Your Honor, or the second?  Because the
16   second one was the one that was not -- our argument is that it
17   wasn't properly filed and it was filed after the jury was in
18   fact -- was sworn in.
19          THE COURT:  Right.
20          MR. MARINES:  On the day of trial.  And there's not
21   an argument whether or not, according to Mr. Gershman's
22   argument, is that his testimony is that he would receive the
23   enhancement prior to trial.  And that's not the issue.
24          The issue here is, strict compliance with 851
25   requires actual filing.  And the only notification that we
```

1  have, there aren't any minutes, there's no other information

2  other than the stamped copy there, that indicates when, in

3  fact, it was filed.  Which is after the jury is sworn.

4      So taking that at its face value, or we could safely

5  assume that it wasn't filed until November 13, 2006, at 1:34

6  p.m.

7      Having said that, that second successive filing of

8  the 851 was specifically addressing two convictions.  And it

9  does that in tandem, Your Honor.  It requires -- it notices

10  the defendant -- it would have noticed the defendant, as far

11  as untimely, that they were relying on two convictions, both

12  '95 convictions, which are 471 and 472.  And the alternative

13  one versus the other.

14      The initial filing that was filed was only listing

15  the first conviction and as testified by Mr. Kollins, the

16  conversation before trial was whether or not there would be a

17  double -- I think he called it a double enhancement, meaning

18  that the second conviction would be in play which would

19  automatically trigger the statutory minimum of life.

20      So considering that that was his recollection as to

21  the intentions the government was willing to -- the plea the

22  government was willing to enter into at the time of -- before

23  the actual jury selection, that is a better indication of

24  where and the differences between why two different 851s were,

25  in fact, filed.

THURSDAY, OCTOBER 20th, 2011

1        And if that's correct, Your Honor, then, therefore

2   the statutory minimum that Mr. Hunt would be looking at is not

3   a life sentence, but in fact a 20 min/man statutorily.

4   However, I know based on the charges, it would have been, you

5   know, a 30 year min/man.  So he would be looking anywhere from

6   30 years to life, not starting at life.

7        And when taking Mr. Hunt's testimony as to what he

8   believed would happen, he also believed that 30 years was

9   within the realm of what he could get.  He talked about the

10  fact that he was looking at a max term, as he called it, max

11  term of life.  But again, that's max term of life.  Meaning

12  the ultimate again, not what he would inevitably get

13  regardless, because of the filing of 851.

14       The case presented also another case that's

15  presented, the Court may have that as well, is the case of

16  *Weaver*.  And that, of course, deals with the defendant knowing

17  whether he had a prior conviction or not.  I know Mr. Gershman

18  went through with him indicating whether or not he was

19  eligible for life or whether that would qualify him for life.

20  And there's no question that based on the criminal history

21  that those were the possibilities of which he could be

22  sentenced.

23       But that's a big -- that's a leap from indicating

24  that those convictions can be utilized in order to give him a

25  life sentence and that they were utilized in a sufficient

1  fashion in an 851 filing, or to mandate that life be such

2  totally given to him.

3      I think that's a big jump.  And if, in fact,

4  reviewing the first 851 that was filed, which is Exhibit

5  Number 1, looking at those -- looking at that filing, if, in

6  fact, it's correct, we have to take it as face value which

7  would indicate that only one conviction was being utilized at

8  that time.  Not two.  Regardless of what the intention of the

9  government was, regardless of the intention or the

10  understanding that Mr. Gershman had at the time, the way

11  listed, the way filed, that 851 would only enhance him for a

12  20 min/man mandatory because in the alternative they would use

13  the second conviction, which is the '95 471 conviction.

14      So I think that's detrimental and very crucial to his

15  case and to his application, under 2255, on the *Strickland*

16  two-prong, whether or not the -- whether or not he was -- it

17  was -- the effect of the -- of not highlighting the 851 and

18  not objecting to it in the first instance, with relying on the

19  wrong defendant.

20      Or, in the second instance -- well, the first, it's

21  not only relying on the wrong defendant but also allowing a

22  life sentence when only one conviction could be utilized in

23  order to enhance him, failure to object to that is crucial.

24      And secondly, on the second 851 that was filed at the

25  time of -- that was submitted at the time of trial and not

1    filed until after the jury had been sworn in, that there was

2    -- there was an error for counsel not to have objected at the

3    PSI or at the sentencing, to indicate that that was improperly

4    filed.

5            And the case law is clear that its filing, and the

6    filing itself, is when it's stamped, not when handed to the

7    Court as *Ladson* clearly indicates.

8            THE COURT:  Hold on a second.  Do you want me to take

9    -- I should have probably taken a break sooner for you.  Do

10   you want me to take 10 minutes before you take the closing

11   arguments?

12           COURT REPORTER:  No, I'm fine, Judge.

13           THE COURT:  You're sure?  Okay.

14           COURT REPORTER:  It depends on how long the closing

15   arguments will be.  But that's --

16           THE COURT:  I apologize to the court reporter, I'm

17   used to working off the tape recorder.  So unless I'm in a

18   civil trial, I forget that the court reporter is not a

19   machine.

20           Ladson is different because of the factual scenario

21   in there.

22           MR. MARINES:  Yes, Judge.

23           THE COURT:  Go ahead.

24           MR. MARINES:  Well, again, the indication would be

25   based on Ms. Atkinson's testimony, whether or not she believed

THURSDAY, OCTOBER 20th, 2011

1    the actual -- when the actual filing needed to take place.

2    Whether it, you know, whether handing it to the Court was

3    sufficient, and I think that's what *Ladson* addresses, that it

4    wouldn't be sufficient.  The actual filing with the clerk's

5    office is what needed to be done.  Her recollection was that

6    it was handed, of course Mr. Gershman didn't have an

7    independent recollection of that, nor did Mr. Kollin, who's

8    also present and testified before the Court.

9         Mr. Hunt had no recollection of it either.  And just

10   regardless of the testimony of Mr. Hunt, just look at all the

11   factors regarding the 851s and all the errors that were within

12   it, that seems to go contrary to the strict compliance and the

13   strict requirements under 851.  And also indicates that --

14   it's not -- it's not a situation where it's a harmless error,

15   Your Honor.  This would be a crucial error to Mr. Hunt in that

16   it would apply a life sentence versus 30-year sentence.

17        And obviously looking at the trial transcript and

18   looking at the sentencing transcript, you know, Judge

19   Middlebrooks looked at the enhancement and decided, based on

20   the enhancement, there was no other option.  There was no need

21   to go into criminal history or those other factors, you know,

22   whether or not he was, you know, he -- the leader or anything

23   like that, because he was bound by statutory requirements to

24   give him a life sentence.

25        So in summation, Judge, I think that was a crucial

THURSDAY, OCTOBER 20th, 2011

1   error.  I think that in light of all the evidence and the

2   mishappens with all the 851 requirements, that Mr. Hunt was

3   not properly placed on notice.  His prior counsel was placed

4   on notice.  And we're looking at the initial 851.  It clearly

5   indicates that Mr. Allen, which is a codefendant, which one

6   could reasonably argue that he, being another member of his --

7   conspiracy member of this case, that the enhancement was

8   towards him.

9        Now underscoring the fact that counsel indicated that

10  he talked to Mr. Hunt about it, Mr. Hunt doesn't have a

11  recollection of that conversation.  And even his actions at

12  the time of sentencing would reflect that he was surprised

13  that in fact life sentence was being issued to him.  So it

14  seems -- one would seem to think that based on all the

15  misfilings with 851, the confusion with all that, that one

16  would look at that 851 and think he was not being placed on

17  notice considering that the body of the language of that 851

18  enhancement had -- the initial 851 enhancement had Mr. Allen's

19  brother on it -- Mr. Hunt's brother on it, Allen, and not

20  Mr. Hunt.  And that, in fact, was corrected on the second and

21  third, the one that was submitted by the government.

22       And they, in fact, indicated that it was done as --

23  out of an abundance of caution and that, you know, that when

24  they filed the 851, it was not an amendment, which they're

25  allowed to do before sentencing.  This is way beyond that now.

THURSDAY, OCTOBER 20th, 2011

1        So considering all the crucial errors that were

2   placed on that, I think it only leads to the proper

3   conclusion, that the 851 -- the initial 851 was not proper

4   notice, and the second 851 was untimely in that it wasn't

5   filed with the Court, and should be, and wasn't filed, at

6   least with the Court, before the jury was selected.  And the

7   record would indicate and the docket would indicate that this

8   docket entry 715 wasn't filed until 1:34, sometime after the

9   jury was, in fact, sworn, which invalidates the filing on the

10  851.

11            THE COURT:  Okay.

12            MR. MARINES:  Thank you, Your Honor.

13            THE COURT:  All right.  Government?

14            MS. VILLAFANA:  Thank you, Your Honor.

15        First, let me just say that *Ladson* does not say that

16  filing requires filing with the clerk's office.  It does not

17  say that.

18            THE COURT:  Right.

19            MS. VILLAFANA:  And there are cases, unfortunately

20  they're not in this packet, that do say that handing to the

21  courtroom deputy is sufficient, and I will find it and I will

22  send it to you.

23            THE COURT:  Okay.

24            MS. VILLAFANA:  I gave you a copy of *Ladson* because

25  it is new.  It was decided after the briefing in this case.

THURSDAY, OCTOBER 20th, 2011

1          THE COURT:  Yeah, we had read *Ladson*.  Thanks to my

2    ace law clerk.  Go ahead.

3          MS. VILLAFANA:  Okay.  And *Ladson* is important for

4    the reason -- because it addresses the issue of cause and

5    prejudice.  There is -- you know, the Eleventh Circuit has a

6    decision out there that says that the 851 enhancement is

7    jurisdictional.  It is the only circuit that says that it's

8    jurisdictional.  And in *Ladson*, in a footnote, they say oops,

9    we may have been wrong about that because there is a

10   subsequent Supreme Court cases that call that into question.

11   And so the -- some of the cases that I've given you are from

12   the other circuits where they say the Eleventh Circuit is the

13   only circuit that says it's jurisdictional and we think

14   they're wrong.

15         So to preserve the issue in case this goes up on

16   appeal, and something tells me that it will, I want to address

17   the issue of procedural bar.

18         Mr. Hunt had the ability to raise this issue at trial

19   court level, as well as on direct appeal.  He addressed the

20   judge at sentencing.  And he, if you read the sentencing

21   transcript, which was admitted as an exhibit, he does not

22   express any surprise about having been enhanced mandatory

23   life.

24         THE COURT:  He's just in denial, because he didn't

25   kill anybody, he doesn't think he's entitled to a life

1    sentence.

2          MS. VILLAFANA:  Right.  He doesn't think that life

3    should apply to drug sentencing.  And he doesn't think that he

4    is somebody who should be sentenced to life.

5          THE COURT:  Right.

6          MS. VILLAFANA:  If you read his PSI, which also was

7    marked as an exhibit, you will notice that he has been

8    involved in several shootings.  And one shooting, I think he

9    got something like 24 days or something like that.  So he also

10   was just shocked by the sudden transition from state court

11   sentences to federal court sentences.

12         The only issue that is raised in this 2255 is whether

13   his trial counsel, Robert Gershman, rendered ineffective

14   assistance by failing to object to the 851 enhancement prior

15   to or at the time of sentence.

16         There's no allegation of ineffective assistance by

17   appellate counsel and that allegation cannot be raised at this

18   time because we're well beyond the one-year statute of

19   limitations for the 2255.

20         So there must be -- there must be some allegation

21   that there was cause and prejudice with respect to

22   Mr. Gershman.  And this has to be a higher hurdle than would

23   exist on direct appeal.

24         It's never ineffective --

25         THE COURT:  Has this procedural bar issue been

THURSDAY, OCTOBER 20th, 2011

1  briefed?  I don't recall that.

2          MR. MARINES:  It hasn't, Judge.

3          MS. VILLAFANA:  I mean, there's the issue of cause

4  and prejudice.  And what they just say is, it's -- the cause

5  is ineffective assistance of counsel.  And so --

6          THE COURT:  I thought -- I thought he raised in the

7  paperwork and on appeal.

8          MS. VILLAFANA:  No.  I mean, I read it through.  And

9  all I see is ineffective assistance of counsel, trial counsel.

10          THE COURT:  Of course, it's interesting that in

11  February, he wants to get rid of the trier lawyer, claiming

12  ineffective assistance of counsel, but on what basis when he

13  claims that he didn't know about these 851 notices until way

14  much later, but --

15          MS. VILLAFANA:  Right.

16          THE COURT:  Maybe he had something else in mind, I

17  don't know.

18          MS. VILLAFANA:  And that's one of the reasons why I

19  marked that.  Because he clearly could have raised this on his

20  direct appeal and he did not do so.

21          So all the facts relevant to the alleged

22  ineffectiveness, as we know now --

23          THE COURT:  So when he doesn't raise it on direct

24  appeal, then I have to do a cause and prejudice analysis?

25          MS. VILLAFANA:  Right.  He asked for new counsel for

1  appeal, so he could have raised it on direct appeal, and he

2  has not shown his cause for the failure to do so.

3       Now again, under *Harris*, it says that -- under

4  current Eleventh Circuit case law, it says we don't need to --

5  he doesn't need to show cause and prejudice.  But because of

6  the footnote in *Ladson*, we're preserving this issue.

7       THE COURT:  Okay.

8       MS. VILLAFANA:  The other thing is that he can't show

9  the requisite prejudice because there is a reason -- the

10  prejudice requires a reasonable probability that but for

11  counsel's errors, the results of the proceedings would have

12  been different.  He was sentenced to life.  Mandatory life.

13  But if you look at what he received for all of the other

14  counts, Judge Middlebrooks gave him the statutory maximum for

15  every single count.

16       His guidelines, notwithstanding the 851 enhancement,

17  were 360 to life.  Judge Middlebrooks gave him life

18  imprisonment on every count that he could, and gave him 30

19  years imprisonment, which was the statutory maximum on all of

20  the other counts where he couldn't give him life.

21       Judge Middlebrooks was aware of all the defendant's

22  shootings, which are mentioned in the PSI, as well as all of

23  his other convictions.  His domestic violence incident that

24  did not result in convictions, and all of his violent criminal

25  history.

THURSDAY, OCTOBER 20th, 2011

1        There is no showing that Judge Middlebrooks would

2   have given him less than life.

3        Now let's talk about the merits.  First of all,

4   Mr. Hunt's testimony and Mr. Hunt's affidavit should be

5   completely disregarded, just as the jury did with his

6   testimony at trial.  He has shown no signs of credibility.

7   The idea that he never saw the 851, that Mr. Gershman never

8   discussed with him the 851 is completely incredible.

9        So then we're left with the testimony of

10  Ms. Atkinson, Mr. Gershman and Mr. Kollin.  All of them say

11  that -- well, Ms. Atkinson and Mr. Gershman both say that the

12  851 enhancement was served on Mr. Geesey, but Mr. Gershman

13  received it when he received the entire file.  That the prior

14  convictions, which were the prior convictions of Mr. Hunt, not

15  Mr. Allen, were attached to the first 851.  So all that you

16  have in the first 851 notice is a clerical error.  Rule 851 --

17  or excuse me, the statute says that clerical mistakes in the

18  information may be amended at any time prior to the

19  pronouncement of sentence.

20       So that clerical error is sort of irrelevant.  It was

21  corrected by the second 851 enhancement.

22       So then we have the second 851 enhancement.  And you

23  have the testimony from three people who say that the morning

24  of trial, prior to the jury being -- even entering the

25  courtroom, there was -- Judge Middlebrooks on the bench and

1 the defense counsel asking for a last opportunity to meet with

2 their clients to discuss a possible plea before the new 851

3 enhancement, the reinforced 851 enhancement is filed.  They go

4 out of the courtroom.  They meet with their clients and their

5 clients decide to roll the dice and take a chance at trial.

6         They come back in, and the 851 is filed with the

7 clerk.  That testimony is disputed only by Mr. Hunt, and

8 Mr. Hunt's testimony has been deemed incredible by a jury and

9 by Judge Middlebrooks in the past, and I think, as you saw his

10 demeanor here in court today, should be deemed incredible

11 again.

12         And so, on the merits, there is no basis for a

13 finding of ineffective assistance because the -- it's never --

14 effective assistance is still -- a frivolous claim.  This

15 would have been frivolous.

16         THE COURT:  Okay.  Thank you.

17         Anything else from the petitioner?

18         MR. MARINES:  No, Your Honor.

19         THE COURT:  Okay.  Thank you all.  I'll issue a

20 report and recommendation as soon as I can.  I know this was

21 sitting a little while.  Thank you.

22     (Proceedings were adjourned at 12:57 p.m.)

23                    INDEX TO WITNESSES

24 NAME                        D      C      RD      RC

25 Karen Atkinson............  4     36     48

THURSDAY, OCTOBER 20th, 2011

```
 1   Robert Gershman............  49    86

 2   Winfred Hunt...............  92   103

 3   Gary Kollin................ 109   114

 4

 5                  INDEX TO TRANSCRIPT           PAGE

 6   Closinb by Mr. Marines...........................  115

 7   Closing by Ms. Villafana.........................  127

 8

 9                          * * *

10        I certify that the foregoing is a correct transcript

11   from the record of proceedings in the above matter.

12

13   Date:  Wednesday, January 11th, 2012

14

15        s/ JUDITH M. WOLFF, CERTIFIED REALTIME REPORTER
          Signature of Court Reporter
16

17

18

19

20

21

22

23

24

25
```

THURSDAY, OCTOBER 20th, 2011

**.** [1] 54/25 54/25 55/1 55/2 55/2 57/8
64/3
**'95** [8] 10/11 10/11 11/19 11/20 23/23
67/20 121/12 123/13

**0**

**00471** [2] 38/10 38/24
**00472CF** [1] 38/10
**06** [1] 54/25
**06-80070-CR-MIDDLEBROOKS** [1] 1/2
**09-81057** [1] 109/13
**09-81057-CV-MIDDLEBROOKS/JOHNSON** [1]
1/2

**1**

**10** [4] 18/2 31/17 106/17 124/10
**103** [1] 134/2
**109** [1] 134/3
**10:44** [1] 48/18
**10:47** [1] 48/19
**10th** [1] 5/1
**11** [3] 56/17 71/10 106/17
**11/15/2006** [1] 74/25
**114** [1] 134/3
**115** [1] 134/6
**11th** [1] 134/13
**12** [20] 6/22 7/3 7/5 7/13 7/23 10/8
19/11 23/20 52/1 52/8 52/10 62/5
64/10 80/13 82/5 101/19 101/22
106/17 117/24 118/7
**124th** [1] 1/15
**127** [1] 134/7
**12:25** [1] 33/8
**12:30** [1] 32/23
**12:57** [1] 133/22
**12th** [5] 6/9 9/16 22/11 37/15 39/8
**13** [26] 16/19 21/19 24/10 27/8 32/21
33/1 34/2 34/25 49/19 54/2 54/23 55/6
56/11 57/8 65/7 72/9 75/3 77/4 88/12
98/21 99/11 106/17 109/21 109/24
111/4 121/5
**1335** [2] 119/7 119/10
**13th** [10] 16/20 32/18 53/25 54/4 54/11
54/12 55/25 56/4 56/15 57/7
**14** [3] 51/12 52/12 106/17
**15** [3] 18/2 42/23 106/17
**150** [1] 1/18
**151** [1] 1/7
**15th** [2] 38/25 67/8
**16** [4] 50/24 51/11 57/24 106/17
**17** [4] 81/12 82/11 82/14 106/17
**18** [3] 54/25 55/2 106/17
**19** [1] 106/17
**1974** [1] 56/17
**1976** [1] 4/9
**1991** [1] 49/23
**1995** [2] 39/1 67/9
**1996** [1] 49/24
**1:00** [1] 32/23
**1:24** [2] 33/3 33/4
**1:34** [4] 75/5 75/8 121/5 127/8
**1:36** [4] 33/5 33/6 34/13 34/25
**1st** [2] 50/19 53/10

**2**

**20** [9] 1/5 19/20 32/8 58/10 82/5
106/17 114/22 122/3 123/12
**20-year** [1] 118/13
**2000** [1] 7/4
**2006** [38] 6/23 6/25 7/1 7/5 7/13 7/23
8/1 10/8 15/18 16/22 16/23 19/11
21/19 23/20 27/8 32/21 34/2 34/25
50/9 50/12 55/14 56/5 56/11 62/5 65/7

74/25 75/3 77/4 80/13 88/12 94/12
99/11 109/19 109/21 111/11 117/24
118/7 121/5
**2011** [3] 1/5 6/22 54/23
**2012** [1] 134/13
**204A** [1] 1/15
**20th** [2] 58/5 58/7
**22** [4] 39/1 67/9 96/15 106/17
**2255** [15] 1/10 46/24 93/12 96/10
100/17 100/19 100/23 102/15 103/5
105/13 108/13 116/5 123/15 129/12
129/19
**23** [1] 106/17
**24** [5] 28/10 28/22 64/3 80/9 106/17
129/9
**25** [1] 106/17
**26** [2] 55/13 106/18
**27** [3] 54/25 55/1 106/18
**28** [1] 106/18
**29** [1] 106/18

**3**

**30** [18] 45/15 45/16 56/24 95/4 99/21
99/23 101/13 105/16 105/19 106/1
106/2 106/3 106/5 106/18 122/5 122/6
122/8 131/18
**30-some** [1] 5/18
**30-year** [1] 125/16
**305** [1] 1/24
**33128** [1] 1/23
**33132** [1] 1/19
**33183** [1] 1/15
**34** [1] 106/18
**36** [1] 133/25
**360** [6] 31/7 31/25 32/1 32/10 45/15
131/17
**38** [2] 82/9 82/15
**3B1.1** [1] 82/7

**4**

**40** [3] 18/21 31/17 106/14
**400** [1] 1/23
**42** [3] 31/6 82/9 82/15
**44** [1] 46/3
**471** [14] 10/11 11/20 11/21 23/21 27/17
28/11 28/25 29/16 39/14 65/14 67/25
68/4 121/12 123/13
**472** [14] 10/11 11/19 11/21 23/21 27/17
28/11 28/24 29/16 38/24 39/14 65/15
67/16 67/20 121/12
**48** [1] 133/25
**49** [1] 134/1

**5**

**50** [2] 31/4 31/17
**50-some** [1] 18/21
**52** [1] 82/12
**523-5294** [1] 1/24
**524** [3] 59/19 67/1 71/24
**5294** [1] 1/24
**54** [1] 81/12
**56** [1] 82/14
**5th** [2] 50/19 53/10

**6**

**60** [4] 61/19 94/9 98/21 98/21
**643** [1] 119/7

**7**

**715** [7] 24/8 25/23 44/3 44/5 44/6
74/24 127/8

**8**

**81057** [1] 109/13
**8501** [1] 1/15

**851** [158]
**851s** [4] 12/22 116/17 121/24 125/11
**88** [1] 116/17
**8N09** [1] 1/23

**9**

**92** [1] 134/2
**95** [1] 38/24
**95-00471** [1] 38/10
**95-00472CF** [1] 38/10
**950471** [1] 28/23
**95472** [1] 67/7
**9:00** [2] 72/14 72/19
**9:41** [1] 1/5
**9th** [2] 4/25 55/12

**A**

**a.m** [5] 1/5 48/18 48/19 72/14 72/19
**ability** [1] 128/18
**able** [6] 75/10 82/25 89/24 91/13 91/14
91/19
**about** [53] 2/24 12/13 14/25 15/12
15/15 15/16 15/23 23/2 31/18 31/19
31/20 31/21 44/9 56/22 57/3 61/3
61/22 63/22 63/23 65/4 65/4 70/18
72/3 73/12 77/18 81/19 82/17 82/21
83/23 85/13 87/1 87/2 89/8 90/10
93/22 95/3 95/3 95/4 95/12 95/13
98/22 100/16 101/13 105/16 111/3
113/25 120/2 122/9 126/10 128/9
128/22 130/13 132/3
**above** [3] 67/23 69/25 134/11
**absolutely** [1] 113/11
**abundance** [4] 18/23 35/14 76/21
126/23
**abundantly** [1] 85/24
**access** [1] 44/21
**accessed** [1] 45/2
**accompanying** [2] 51/15 70/21
**accomplish** [2] 30/15 30/16
**according** [9] 7/12 7/18 7/25 9/12
11/18 27/11 34/1 80/8 120/21
**account** [1] 50/7
**ace** [1] 128/2
**ACL** [1] 20/12
**acquiring** [1] 59/2
**actions** [1] 126/11
**actual** [14] 9/2 34/7 37/19 71/16 73/22
73/22 81/18 117/23 120/8 120/25
121/23 125/1 125/1 125/4
**actually** [18] 9/16 16/4 17/15 23/9 29/5
30/5 30/16 39/20 40/20 44/1 58/23
59/16 64/2 76/3 79/19 116/19 118/17
118/18
**added** [2] 28/25 77/21
**adding** [2] 29/21 78/2
**addition** [11] 28/10 28/22 28/24 29/21
30/20 34/6 77/19 78/5 78/6 78/10
78/16
**additional** [11] 15/5 16/6 17/18 17/21
18/23 22/24 42/10 42/15 69/18 77/21
108/22
**additionally** [1] 29/14
**address** [3] 84/23 118/16 128/16
**addressed** [4] 84/19 84/24 108/6
128/19
**addresses** [3] 66/6 125/3 128/4
**addressing** [1] 121/8
**adequately** [1] 117/6
**adjourned** [1] 133/22
**adjusted** [1] 82/9
**administered** [1] 10/5
**admissible** [1] 22/25
**admit** [3] 22/18 22/22 23/1
**admitted** [3] 22/25 90/18 128/21

**A**
**adopted [2]** 83/4 83/13
**advance [1]** 85/23
**advice [2]** 78/24 79/21
**advise [1]** 68/13
**advised [2]** 91/8 102/4
**affidavit [10]** 54/24 70/1 71/3 71/9 71/19 71/22 101/17 101/23 102/1 132/4
**affirmed [2]** 46/15 46/16
**after [25]** 15/3 27/25 33/4 42/10 45/5 56/25 58/2 58/9 59/24 82/20 83/10 84/1 87/23 89/25 94/23 102/8 102/13 102/14 112/14 112/25 120/17 121/3 124/1 127/25 127/25
**afternoon [4]** 35/1 75/9 109/9 109/10
**afterwards [2]** 33/9 50/16
**again [23]** 4/3 20/19 32/8 39/24 53/11 56/22 64/7 68/9 68/12 69/1 70/17 71/22 77/23 81/9 81/19 82/14 89/25 100/6 122/11 122/12 124/24 131/3 133/11
**against [5]** 4/15 50/20 68/10 68/14 69/11
**agent [1]** 49/6
**ago [1]** 62/12
**agree [2]** 14/2 14/4
**agreement [2]** 15/6 95/2
**ahead [17]** 2/18 6/3 7/10 9/10 15/20 21/4 23/4 26/3 45/3 52/16 53/20 59/14 66/5 86/21 111/21 124/23 128/2
**ain't [1]** 100/16
**AKA [2]** 37/24 37/24
**al [1]** 25/11
**aliases [3]** 88/16 88/17 88/17
**all [124]** 2/11 3/4 3/12 7/25 8/8 11/14 15/5 17/10 19/21 19/25 20/6 20/6 21/5 22/18 22/20 22/22 24/6 25/1 26/19 29/8 30/3 30/12 31/13 34/15 37/8 37/8 37/11 37/19 38/9 38/13 38/14 38/21 40/1 40/13 40/16 41/5 41/8 41/16 41/19 42/2 43/4 43/24 47/16 47/18 53/3 54/14 54/20 55/6 56/17 57/24 58/2 60/15 63/1 63/2 65/3 72/1 72/3 72/22 73/15 74/5 75/2 76/2 77/3 78/11 81/4 85/5 88/14 88/23 89/22 90/18 91/7 92/25 93/8 94/7 94/14 94/16 97/2 99/3 100/24 101/14 101/17 102/11 103/1 104/1 104/5 106/14 106/15 106/19 106/21 107/5 107/5 107/7 107/18 107/25 108/3 108/6 108/17 109/20 114/25 115/4 116/2 116/2 119/16 119/17 119/19 125/10 125/11 126/1 126/2 126/14 126/15 127/1 127/13 130/9 130/21 131/13 131/19 131/21 131/22 131/24 132/3 132/10 132/15 133/19
**allegation [3]** 129/16 129/17 129/20
**alleged [1]** 130/21
**Allen [39]** 5/13 7/21 7/22 17/6 19/12 19/16 19/22 20/2 24/1 24/4 25/3 25/5 38/2 38/7 38/19 40/6 46/9 47/1 50/23 62/14 64/14 65/8 80/15 80/18 80/20 93/4 97/3 109/15 109/17 109/20 110/6 110/14 110/17 111/6 111/25 117/2 126/5 126/19 132/15
**Allen's [5]** 70/19 77/8 77/10 91/22 126/18
**allow [3]** 37/3 100/4 118/15
**allowed [5]** 95/13 95/15 97/24 98/4 126/25
**allowing [4]** 2/21 3/1 3/14 123/21
**Almendarez [2]** 82/16 84/18
**Almendarez-Torres [2]** 82/16 84/18

**Almendez [1]** 84/17
**alone [4]** 20/12 33/15 32/6 80/1
**along [4]** 42/2 81/2 87/8 110/1
**aloud [1]** 91/3
**already [9]** 18/20 21/23 22/4 26/22 32/22 34/6 36/22 54/12 111/23
**also [46]** 4/14 9/1 10/20 14/12 16/7 19/18 19/19 23/25 24/1 25/23 31/5 32/19 39/15 39/16 43/13 68/1 73/22 76/12 77/19 78/16 79/3 79/3 80/15 88/19 90/13 91/13 94/2 97/8 97/10 103/23 108/6 110/3 110/25 111/8 117/11 117/13 117/17 118/15 118/20 122/8 122/14 123/21 125/8 125/13 129/6 129/9
**alternative [22]** 10/22 11/19 11/24 29/2 29/23 29/25 30/20 66/14 66/22 67/23 67/25 68/4 68/6 68/15 70/15 77/17 78/13 78/15 78/18 79/14 121/12 123/12
**although [5]** 66/21 68/5 84/13 87/3 87/15
**always [4]** 70/17 115/22
**am [4]** 40/21 87/12 92/5 115/5
**amended [1]** 132/18
**amendment [2]** 36/3 126/24
**AMERICA [3]** 1/6 2/4 37/23
**amount [2]** 31/19 118/11
**amounts [2]** 31/4 46/8
**analysis [2]** 55/22 130/24
**another [7]** 12/19 23/13 24/16 40/25 41/19 122/14 126/6
**answer [4]** 54/6 64/22 74/2 76/14 79/11 83/17 113/12
**answered [4]** 35/10 66/16 69/3 77/16
**anticipatory [1]** 47/11
**any [67]** 8/15 8/17 17/7 22/6 22/20 22/24 31/8 33/22 33/23 34/17 36/14 43/1 44/16 45/19 47/8 47/20 48/5 49/1 50/5 52/20 52/23 53/8 54/4 54/20 54/21 54/21 56/5 56/12 56/12 58/15 59/21 60/8 61/1 65/10 66/5 70/7 70/14 79/14 80/12 81/6 81/6 82/23 83/3 84/15 85/10 85/16 87/1 87/10 89/8 89/15 90/3 96/9 97/13 98/13 99/12 100/6 100/14 110/8 112/10 112/21 112/24 113/9 117/21 118/23 121/1 128/22 132/18
**anybody [1]** 12/8
**anybody's [1]** 12/8
**anything [7]** 42/4 85/16 85/19 108/19 115/13 125/22 133/17
**anyway [2]** 104/1 120/2
**anywhere [1]** 122/5
**apologize [3]** 61/25 114/10 124/16
**appeal [24]** 45/23 45/25 46/1 46/2 46/14 46/15 46/16 46/21 47/5 90/16 90/23 91/6 107/18 107/23 108/1 108/3 128/16 128/19 129/23 130/7 130/20 130/24 131/1 131/20
**appealed [1]** 46/1
**appear [3]** 20/6 34/1 96/21
**appearance [2]** 40/6 50/12
**appearances [1]** 1/13 2/5 5/9
**appeared [1]** 53/4
**appears [2]** 28/18 83/13
**appellate [2]** 91/9 129/17
**applicable [2]** 63/2 68/10
**application [1]** 123/15
**applications [1]** 54/24
**applied [1]** 68/17
**applies [1]** 3/9
**apply [6]** 68/7 68/20 84/21 84/21 125/16 129/3
**appointed [14]** 5/10 5/17 8/1 8/9 8/10

9/17 14/19 49/18 49/20 50/8 50/18 56/9 84/20 94/22
**appointment [3]** 50/4 57/17 61/18
**appreciate [3]** 3/1 11/4 114/3
**approach [4]** 6/2 21/11 26/15 41/20
**appropriate [3]** 57/19 64/9 91/1
**approximately [2]** 34/25 63/24
**April [3]** 54/25 55/2 55/13
**are [48]** 10/8 14/13 22/14 26/6 26/13 28/8 28/10 30/7 30/8 30/11 38/9 38/10 38/13 38/14 38/16 39/17 43/5 43/19 47/16 47/18 56/18 59/11 64/24 65/4 65/20 66/22 66/23 67/4 68/8 73/25 77/14 78/1 79/7 86/9 88/19 92/4 92/8 97/10 103/7 116/25 118/11 118/17 117/19 119/18 121/12 127/19 128/11 131/22
**area [3]** 86/4 87/18 112/1
**areas [1]** 47/4
**aren't [2]** 29/11 121/1
**argue [1]** 126/6
**argued [1]** 82/8
**argument [6]** 13/21 115/14 115/21 120/16 120/21 120/22
**arguments [2]** 124/11 124/15
**around [6]** 3/17 4/25 15/12 32/23 41/15 42/22
**arraignment [1]** 56/10
**arrest [1]** 69/21
**arrested [1]** 5/8
**ascertain [1]** 9/2
**ask [15]** 8/6 15/22 20/25 51/20 56/25 59/1 64/11 69/4 77/23 90/10 90/13 91/3 91/9 111/3 112/4
**asked [25]** 17/21 17/22 35/10 40/24 42/1 42/15 42/17 43/12 44/21 56/8 66/16 69/3 74/7 81/15 81/19 83/5 87/1 87/9 87/15 107/18 107/20 107/20 110/14 111/24 130/25
**asking [10]** 65/8 65/18 66/24 66/25 75/4 82/2 110/9 110/11 110/13 133/1
**assertion [1]** 47/7
**assessment [2]** 78/22 82/7
**assigned [2]** 40/21 40/21
**assist [1]** 19/1
**assistance [7]** 129/14 129/16 130/5 130/9 130/12 133/13 133/14
**assistant [3]** 4/9 49/23 88/1
**assume [3]** 8/4 57/19 121/5
**assuming [1]** 57/18
**assurance [1]** 18/23
**Atkinson [44]** 2/20 3/4 3/13 3/18 4/1 4/5 6/5 8/7 14/23 21/14 26/16 30/24 36/13 36/20 44/8 48/1 48/25 56/22 56/25 57/20 59/17 75/17 80/1 85/15 87/2 87/4 87/7 87/8 87/11 87/22 88/24 110/5 110/15 111/10 112/7 112/11 114/12 114/18 114/19 117/13 118/1 132/10 132/11 133/25
**Atkinson's [1]** 124/25
**attached [6]** 37/20 39/21 39/23 67/10 91/23 132/15
**attachments [1]** 73/20
**attempt [1]** 37/3
**attention [2]** 100/22 102/12
**attorney [37]** 1/18 4/9 5/3 7/20 7/23 8/2 9/7 9/16 14/18 14/20 27/7 27/20 29/15 34/3 34/16 41/1 46/23 49/23 50/4 50/23 59/4 69/17 93/1 93/3 93/4 93/6 94/3 94/5 94/14 97/5 105/8 107/1 107/9 107/25 109/13 110/8 117/18
**Attorney's [1]** 4/8
**attorney-client [1]** 110/8
**attorneys [8]** 17/20 17/23 18/13 21/7 23/13 27/15 46/25 91/2

**A**

AUSA [4] 1/17 4/7 44/15 110/4
automatically [1] 121/19
availed [1] 54/12
Ave [1] 1/15
Avenue [1] 1/23
aware [5] 15/13 15/14 62/13 116/8
131/21

**B**

back [29] 3/4 12/23 14/22 14/23 17/23
17/23 17/24 17/25 18/2 19/6 21/6 31/3
32/13 42/7 42/18 42/22 42/25 50/16
50/18 56/7 60/7 72/25 75/21 86/7
106/13 112/1 112/2 118/7 133/6
bag [1] 53/15
ballpark [1] 64/10
bar [3] 111/13 128/17 129/25
based [24] 16/11 31/13 31/14 32/9 46/6
57/19 57/21 61/21 64/23 70/20 78/25
84/12 85/3 91/10 93/13 99/17 101/14
116/6 117/5 122/4 122/20 124/25
125/19 126/14
basic [1] 46/8
basically [3] 69/9 69/18 111/14
basis [4] 69/6 70/16 130/12 133/12
battling [1] 10/15
be [95] 6/7 7/8 7/9 7/17 8/5 10/4 12/12
13/21 15/8 17/8 18/25 20/24 21/10
21/25 23/16 31/9 32/2 33/16 34/17
39/7 39/8 40/4 41/19 42/24 51/12
57/22 59/12 60/5 64/10 68/10 68/14
68/18 69/11 74/13 74/14 75/10 76/19
78/19 80/21 81/1 82/9 82/15 82/25
84/5 84/19 89/24 91/19 95/13 95/15
97/22 97/24 98/4 98/5 98/9 98/16
101/12 105/20 105/21 105/22 105/24
106/1 106/2 106/7 106/10 110/11
110/12 113/4 114/19 116/10 119/1
120/9 120/10 120/11 121/16 121/18
122/2 122/5 122/21 122/24 123/1
123/22 124/15 124/24 125/4 125/5
125/15 127/5 129/4 129/17 129/20
129/20 129/22 132/4 132/18 133/10
Beach [13] 6/9 27/9 33/21 38/25 39/17
40/22 43/12 43/13 44/16 49/23 56/18
67/8 70/2
became [3] 15/14 61/13 62/13
because [59] 4/24 11/6 11/15 11/24
12/3 12/18 13/10 17/8 18/21 18/22
19/24 25/2 25/9 29/3 29/21 30/4 30/7
30/19 33/21 40/10 41/2 41/3 41/4 41/8
42/8 42/23 43/23 43/25 44/25 46/5
46/9 56/7 61/14 61/17 61/18 64/22
68/20 72/8 79/19 80/22 82/19 112/7
113/1 114/14 119/13 120/15 122/13
123/12 124/20 125/23 127/24 128/4
128/9 128/24 129/18 130/19 131/5
131/9 133/13
been [63] 3/7 3/19 4/7 4/9 5/7 5/7 5/8
5/25 7/24 7/24 8/4 9/7 9/17 9/20 11/5
11/18 14/16 14/20 15/17 19/4 21/23
22/4 27/2 31/10 32/22 33/3 33/8 34/20
35/16 48/23 49/22 51/12 53/5 56/18
58/19 60/18 63/10 63/23 72/18 72/20
72/21 75/7 80/22 88/7 90/18 92/12
93/12 109/7 112/23 114/25 115/25
116/1 116/2 118/9 122/4 124/1 128/9
128/22 129/7 129/25 131/12 133/8
133/15
before [58] 1/10 2/15 2/20 15/12 17/2
17/2 19/4 24/13 33/23 34/4 41/22
41/24 51/10 55/23 55/24 63/15 63/15
63/18 63/22 63/23 64/22 73/5 73/6

73/8 74/4 74/16 76/25 77/18 82/12
82/7 87/10 87/23 88/12 89/17 89/20
98/2 96/15 100/12 100/14 103/10
107/9 108/10 109/17 111/1 112/19
112/21 113/9 116/11 116/11 117/11
119/23 121/16 121/22 124/10 125/8
126/25 127/6 133/2
began [6] 49/24 54/19 72/20 73/5
82/11 111/1
begin [3] 2/15 80/23 87/10
beginning [1] 55/9
begins [1] 73/2
behalf [3] 2/7 2/9 40/21
behind [4] 53/15 86/3 111/13 112/1
being [30] 11/23 16/8 19/22 20/13
27/15 30/25 31/1 31/14 34/14 40/22
44/25 59/25 64/17 64/24 68/23 74/4
76/21 77/14 79/7 102/14 103/23 104/3
109/4 117/7 118/12 123/7 126/6
126/13 126/16 132/24
belief [2] 60/18 99/23
believe [32] 9/24 11/23 20/13 23/24
24/17 26/24 26/24 29/24 31/3 31/15
33/3 33/23 43/15 59/24 65/24 68/3
68/4 68/21 72/4 84/4 99/16 99/17
99/18 99/25 101/3 102/15 111/23
113/2 113/20 113/25 116/19 117/6
believed [7] 20/21 84/15 101/6 101/6
122/8 122/8 124/25
below [1] 75/1
belt [1] 41/20
belt-and-suspenders [1] 41/20
bench [5] 17/3 17/19 85/15 111/23
132/25
besides [3] 69/18 98/25 99/1
best [5] 13/25 70/23 74/1 79/11 87/19
better [3] 3/15 31/9 121/23
between [8] 32/10 39/5 40/18 41/8
85/14 85/14 86/8 121/24
beyond [5] 47/4 47/6 69/25 126/25
129/18
big [3] 37/24 122/23 123/3
bit [1] 40/16
blah [3] 39/1 39/1 39/1
blue [1] 59/7
body [27] 11/25 12/24 19/10 19/11
19/14 23/25 24/24 25/16 26/10 26/13
28/17 60/10 60/17 62/14 64/14 64/21
65/8 65/22 67/3 73/21 77/5 77/13
88/15 91/22 96/20 97/2 126/17
born [1] 56/17
both [31] 11/6 11/25 17/25 20/3 23/17
24/23 26/13 27/16 29/16 29/18 45/25
46/8 66/23 68/5 68/7 68/10 68/13
68/14 68/17 68/18 68/25 69/2 78/14
88/14 111/6 111/22 111/25 112/2
114/17 121/11 132/11
bottom [1] 96/22
bound [1] 125/23
boxes [1] 74/6
Boy [1] 37/24
break [5] 13/1 87/15 87/16 87/23 124/9
brief [6] 47/22 108/4 114/5 114/13
111/9 119/12
briefed [1] 130/1
briefing [1] 127/25
bring [3] 3/4 95/16 99/4
broke [1] 32/23
brother [8] 17/6 17/6 19/17 97/4 97/6
102/17 126/19 126/19
brother's [1] 102/10
brought [7] 18/6 47/5 82/3 99/5 100/21
102/11 107/10
building [3] 6/17 42/21 58/21
burden [1] 115/19

business [1] 59/4 61/10

**C**

C-O-H-E-N [1] 23/8
C-O-N-T-I-N-I [1] 47/1
calendar [2] 8/13 8/14
call [7] 2/19 26/8 43/6 56/8 92/9 109/2
128/10
called [7] 2/1 21/25 23/18 50/14 74/14
121/17 122/10
calling [1] 92/8
calls [2] 48/13 59/12
came [9] 5/8 8/21 16/14 18/2 42/14
42/25 86/7 91/2 94/8
can [21] 2/5 2/14 4/23 19/6 22/18
22/23 29/6 29/10 37/13 40/16 48/16
62/10 69/1 74/2 74/21 90/10 113/22
116/9 118/9 122/24 133/20
can't [4] 75/15 113/21 113/21 131/8
candid [1] 70/17
cannot [2] 75/2 129/17
caption [6] 20/6 37/22 62/15 88/15
96/21 96/23
car [2] 55/17 55/17
care [2] 12/4 12/7
career [3] 31/6 81/12 82/12
carried [6] 6/18 106/21 106/24
case [67] 1/2 1/2 4/12 4/14 5/10 8/23
9/3 15/11 15/12 15/14 17/3 19/19
28/23 32/9 38/9 38/24 40/22 41/13
43/1 44/6 45/7 49/1 49/14 50/7 51/1
51/3 51/7 58/3 59/8 65/14 65/17 66/7
66/21 67/7 69/25 73/21 73/22 74/3
74/24 77/17 79/25 82/16 84/18 92/25
93/18 94/8 98/20 103/20 107/22
109/13 109/14 109/14 118/23 119/2
119/3 119/24 119/25 120/13 122/14
122/14 122/15 123/15 124/5 126/7
127/25 128/15 131/4
cases [10] 20/4 38/11 43/25 69/22
88/21 119/17 119/20 127/19 128/10
128/11
cause [8] 70/1 128/4 129/21 130/3
130/4 130/24 131/2 131/5
caution [4] 18/23 35/14 76/21 126/23
CD [1] 55/14
CD's [1] 55/13
CDs [4] 55/14 99/6 99/7 99/9
cell [1] 87/17
central [4] 17/4 42/20 109/18 112/1
certain [5] 35/25 41/4 55/13 89/6
113/21
certificate [2] 72/7 118/2
certificates [1] 19/24
certified [10] 14/11 16/7 20/11 39/20
39/22 97/10 102/24 116/22 117/3
134/15
certify [1] 134/10
chains [2] 113/5 113/7
challenged [1] 11/2
challenging [1] 70/7
chance [11] 17/8 17/11 17/19 41/3 42/2
42/3 42/6 83/12 102/8 111/15 133/5
changed [2] 41/15 44/22
characteristics [1] 82/21
charged [2] 88/21 106/19
charges [6] 38/13 46/12 97/25 98/5
101/9 122/4
circuit [11] 13/5 13/24 38/25 49/7 67/8
73/1 128/5 128/7 128/12 128/13 131/4
circuits [1] 128/12
citation [2] 119/6 119/7
cited [3] 70/11 119/11 119/12
civil [1] 124/18
claim [1] 133/14

**C**

**claiming** [1] 130/11
**claims** [1] 130/13
**Clarence** [1] 52/8
**clarify** [10] 11/15 30/23 31/13 32/12
33/12 65/3 69/1 83/21 85/2 113/15
**classification** [2] 81/13 82/13
**cleaned** [1] 20/24
**clear** [7] 40/4 76/19 79/13 79/23 80/5
85/24 124/5
**clearer** [1] 79/7
**clearly** [6] 10/21 26/17 116/23 124/7
126/4 130/19
**clerical** [4] 40/14 132/16 132/17
132/20
**clerk** [17] 18/4 23/15 23/16 26/2 26/25
34/8 34/12 34/14 38/7 43/3 43/7 52/8
63/1 69/23 76/4 128/2 133/7
**clerk's** [8] 17/15 33/1 34/20 35/6 52/4
119/1 125/4 127/16
**client** [8] 68/9 86/9 110/5 110/7 110/8
110/18 112/8 112/9
**client's** [1] 44/9
**clients** [10] 17/21 42/7 59/3 111/22
112/3 112/19 113/3 133/2 133/4 133/5
**closed** [4] 40/23 43/22 43/25 72/15
**closer** [1] 4/23
**Closinb** [1] 134/6
**closing** [4] 115/21 124/10 124/14
134/7
**cocaine** [10] 39/17 55/13 67/17 68/13
103/12 104/7 104/8 104/9 104/10
104/11
**codefendant** [7] 19/17 50/3 55/16 60/9
60/16 90/15 126/5
**codefendants** [2] 55/20 81/2
**Cohen** [8] 23/8 27/9 40/20 43/12 44/7
44/13 44/15 75/13
**coke** [1] 31/5
**cold** [1] 10/15
**come** [7] 43/22 44/13 54/17 93/5 98/9
109/4 133/6
**comes** [2] 15/11 15/12
**coming** [1] 18/8
**commenced** [1] 112/24
**commencement** [1] 110/25
**commitments** [1] 69/24
**communicating** [1] 87/19
**compare** [2] 72/6 76/23
**completed** [1] 33/14
**completely** [5] 28/8 30/13 49/1 132/5
132/8
**compliance** [11] 12/25 13/6 13/13
116/6 116/16 116/25 117/1 117/12
120/7 120/24 125/12
**complied** [1] 116/7
**computer** [3] 44/21 45/1 45/1
**conclusion** [1] 127/3
**conduct** [1] 82/2
**conducted** [1] 89/23
**conflict** [1] 8/22
**confused** [2] 17/13 43/18
**confusing** [1] 105/15
**confusion** [3] 22/6 23/1 126/15
**conjunction** [1] 69/10
**considered** [1] 36/2 120/7
**considering** [3] 121/20 126/17 127/1
**consolidated** [1] 78/19
**conspiracy** [4] 46/11 103/22 104/10
126/7
**constraints** [1] 41/5
**contained** [2] 35/21 82/4
**containing** [1] 55/14
**contains** [1] 88/14

**content** [2] 18/14 26/11
**contents** [3], 28/5 29/13 96/5
**contested** [1] 45/22
**context** [1] 37/8
**Contini** [1] 47/1
**continually** [1] 70/23
**continue** [1] 111/20
**continued** [3] 48/19 61/18 86/8
**continuing** [1] 110/20
**contrary** [1] 125/12
**conversation** [17] 16/11 44/8 47/9
54/22 54/23 56/21 57/19 61/17 86/8
86/10 87/19 95/18 99/17 101/14 113/9
121/16 126/11
**conversations** [4] 58/15 59/3 66/5
99/10
**convey** [1] 69/4
**conveyed** [1] 69/8
**convict** [1] 104/3
**convicted** [21] 11/12 35/25 45/5 46/11
59/25 60/5 88/21 92/25 95/22 97/22
98/13 99/13 99/16 99/20 102/6 104/1
104/5 104/7 106/14 106/16 116/9
**conviction** [54] 10/11 10/11 10/18
10/23 10/24 11/1 11/2 11/19 11/20
11/23 19/15 20/25 21/1 30/19 30/25
31/11 31/14 32/5 32/6 35/18 37/19
38/25 39/22 45/25 46/1 67/6 67/9
67/10 67/13 67/20 67/24 67/25 68/3
68/4 73/18 78/3 78/16 78/17 78/19
84/14 90/25 95/13 95/14 102/22
114/15 117/23 118/8 121/15 121/18
122/17 123/7 123/13 123/13 123/22
**convictions** [81] 10/3 10/7 10/9 10/17
11/17 11/17 11/25 14/12 14/13 16/8
18/25 19/18 20/11 23/22 23/23 24/21
26/9 27/17 28/11 28/12 32/2 35/24
38/24 39/21 45/21 46/7 46/15 51/15
52/14 56/25 64/24 65/9 65/20 65/25
66/23 67/13 68/5 68/23 69/11 70/6
70/11 73/17 73/22 77/14 79/7 81/5
81/6 88/19 88/20 91/18 91/18 91/23
95/11 95/16 97/11 97/15 97/19 98/1
98/2 98/3 98/4 98/6 98/8 102/18
102/19 102/19 102/24 116/11 116/22
117/3 118/2 118/11 118/17 121/8
121/11 121/12 122/24 131/23 131/24
132/14 132/14
**copies** [7] 14/13 14/15 20/25 30/8
52/14 62/19 112/11
**copy** [44] 8/16 8/17 14/7 14/9 14/24
15/24 16/5 16/6 16/7 17/18 18/4 19/2
21/7 23/9 23/9 25/17 26/22 32/24
34/16 35/5 40/25 67/10 67/10 75/1
76/2 76/3 76/7 76/11 76/11 76/12
76/14 81/9 87/4 87/22 88/5 88/8 89/10
108/3 119/15 119/21 119/22 120/8
121/2 127/20
**corner** [1] 86/4
**CORPUS** [1] 1/10
**correct** [133] 4/18 4/19 5/23 5/24 6/11
6/12 7/8 7/13 7/14 8/5 9/13 9/14 9/21
10/25 11/9 11/20 13/7 14/2 14/17
14/18 15/19 16/5 16/15 16/16 16/20
17/17 19/8 19/9 19/13 19/19 19/20
20/4 20/7 21/2 21/3 21/8 21/9 22/12
22/23 24/11 25/15 26/19 27/8 27/9
27/15 27/16 27/20 27/21 27/24 32/5
32/11 32/17 33/24 33/25 35/15 35/22
36/23 37/9 37/10 37/17 38/3 38/8 40/8
41/21 44/11 44/12 45/7 45/10 46/18
46/24 46/25 47/10 47/13 48/3 48/4
49/20 57/17 57/17 57/25 58/24 58/25
59/5 60/6 60/19 62/8 62/17 62/20 68/2
70/8 70/9 70/9 70/12 71/13 73/3 75/25

77/7 77/10 78/9 78/13 78/22 78/23
79/8 82/18 83/19 83/22 84/16 85/4
85/8 85/17 88/20 89/6 90/5 93/25
94/12 94/14 96/12 96/25 98/6 98/12
100/20 103/8 103/13 103/24 104/2
104/6 104/24 105/17 107/19 108/1
118/10 122/1 123/6 134/10
**corrected** [3] 24/4 126/20 132/21
**correlating** [1] 7/9
**could** [31] 4/5 13/25 26/15 37/12 42/18
44/20 45/2 46/3 49/12 51/12 53/15
53/19 68/7 68/14 77/23 80/21 83/4
87/20 89/10 91/3 101/2 101/6 101/9
121/4 122/9 122/21 123/22 126/6
130/19 131/1 131/18
**couldn't** [4] 54/8 58/21 72/11 131/20
**counsel** [55] 4/2 5/10 5/17 5/20 8/2 8/7
9/21 11/3 14/7 14/14 15/1 15/3 15/20
19/15 21/4 33/2 34/23 39/7 39/10
40/17 41/23 41/24 42/18 46/20 47/21
52/7 52/18 75/24 75/25 86/24 90/14
90/16 90/23 94/23 107/18 107/20
117/7 116/21 117/9 117/10 117/14
118/3 120/12 120/13 124/2 126/3
126/9 129/13 129/17 130/5 130/9
130/9 130/12 130/25 133/1
**counsel's** [3] 91/7 118/4 131/11
**count** [6] 32/7 41/14 67/16 68/1 131/15
131/18
**counts** [30] 11/12 11/12 18/22 28/10
28/22 31/24 35/25 38/13 38/14 38/19
41/16 41/18 45/15 45/15 45/16 45/17
45/18 89/6 104/1 104/5 106/4 106/13
106/14 106/16 106/16 106/16 106/19
106/21 131/14 131/20
**County** [5] 38/25 39/18 49/23 56/18
67/8
**couple** [6] 14/23 43/23 64/8 94/18
94/19 102/18
**course** [8] 3/3 22/25 45/4 59/4 72/8
122/16 125/6 130/10
**court** [88] 1/1 1/22 2/1 3/1 8/12 8/13
9/4 14/14 18/9 22/20 23/11 23/12
23/15 23/16 24/12 24/18 25/13 25/23
25/25 26/2 26/25 27/19 27/25 28/1
29/10 30/5 30/10 34/4 34/16 34/21
37/13 37/16 37/18 40/17 40/20 40/25
41/3 42/9 43/14 44/2 48/18 50/15 52/8
53/5 63/1 69/24 70/18 76/2 76/3 76/13
82/3 82/17 85/17 87/3 87/5 87/22 88/6
88/9 88/25 91/9 91/18 94/22 100/25
101/6 101/8 101/18 108/6 115/23
116/8 116/13 116/15 118/2 118/9
120/6 122/15 124/7 124/16 124/18
125/2 125/8 127/5 127/6 128/10
128/19 129/10 129/11 133/10 134/15
**Court's** [4] 51/16 53/18 116/4 118/8
**courtesy** [1] 56/8
**courthouse** [6] 3/17 6/16 40/23 43/22
43/25 72/15
**courtroom** [22] 17/4 18/5 42/14 42/20
43/8 43/9 87/21 87/23 92/20 98/25
99/1 109/19 111/5 112/2 112/5 112/12
112/12 113/3 113/17 127/21 132/25
133/4
**cousins** [1] 19/20
**cover** [1] 13/16
**CR** [1] 1/2
**crack** [5] 31/4 103/12 103/19 104/7
104/10
**credibility** [3] 104/18 104/19 132/6
**credible** [1] 105/3
**Crime** [1] 55/22
**crimes** [2] 69/19 88/20
**criminal** [18] 24/7 44/6 46/6 56/19

## C

**criminal...** [14] 65/20 69/6 69/24 81/21
82/11 83/22 83/23 84/11 84/24 95/19
97/21 122/20 125/21 131/24
**criteria** [1] 13/17
**cross** [6] 36/18 86/22 100/4 103/3
103/4 114/6
**CROSS-EXAMINATION** [4] 36/18 86/22
103/4 114/6
**cross-examine** [1] 100/4
**CRR** [1] 1/22
**crucial** [6] 117/11 123/14 123/23
125/15 125/25 127/1
**current** [1] 131/24
**CV** [1] 1/2

## D

**database** [1] 55/22
**date** [25] 5/16 6/8 6/10 6/10 7/9 7/9
7/12 32/17 33/24 35/4 48/2 53/5 53/7
53/15 53/16 53/17 72/13 76/6 76/13
80/10 100/24 101/1 109/25 120/8
134/13
**dates** [1] 55/8
**Davis** [1] 55/20
**day** [17] 17/16 18/13 53/4 54/9 54/14
72/8 72/20 77/4 85/6 88/6 88/9 88/25
94/20 99/11 100/6 115/16 120/20
**days** [10] 9/18 14/19 15/11 51/10 51/13
61/19 94/9 98/21 98/22 129/9
**deal** [2] 55/13 87/10
**dealing** [4] 67/19 103/12 103/16
103/18
**dealings** [1] 91/13
**deals** [1] 122/16
**December** [2] 39/1 67/9
**decide** [1] 133/5
**decided** [4] 41/7 105/3 125/19 127/25
**decision** [2] 44/9 128/6
**deemed** [2] 133/8 133/10
**defective** [3] 13/22 14/1 14/1
**defendant** [54] 1/7 1/17 8/11 8/18 8/20
10/19 10/22 12/13 17/24 19/12 20/3
20/18 20/21 24/9 25/2 25/9 25/12 39/1
39/25 45/5 53/24 55/16 56/17 56/24
57/1 61/10 62/19 64/14 66/3 66/4
67/23 69/5 70/5 77/10 79/13 81/12
85/22 86/3 86/8 89/5 89/17 91/6 91/8
110/2 110/7 111/8 112/20 118/16
120/11 121/10 121/10 122/16 123/19
123/21
**defendant knowing** [1] 122/16
**defendant's** [5] 77/5 81/21 82/6 82/11
131/21
**defendants** [10] 5/18 17/22 23/17
25/11 38/10 42/5 42/18 67/4 80/19
80/22
**defense** [13] 14/14 17/20 18/13 21/7
23/13 34/3 34/16 41/1 41/22 41/24
66/4 67/10 133/1
**deficient** [1] 91/10
**definitely** [2] 20/5 112/25
**deliver** [1] 9/22
**delivered** [8] 9/23 18/12 23/14 24/18
24/20 26/8 41/2 48/1
**Delray** [1] 70/2
**demeanor** [1] 133/10
**denial** [2] 86/11 128/24
**denied** [6] 103/12 103/14 103/15
103/16 103/16 103/23
**denying** [1] 103/14
**Department** [1] 70/2
**depends** [1] 124/14
**deputy** [4] 87/23 112/12 113/17 127/21

**despite** [1] 35/8
**detailed** [1] 59/2
**determine** [4] 13/2 64/23 97/14 98/2
**determining** [1] 60/16
**detrimental** [2] 116/25 123/14
**dice** [2] 42/12 133/5
**Dictaphone** [1] 59/7
**dictate** [1] 59/7
**did** [110] 7/15 14/9 14/24 15/23 16/6
16/10 25/7 25/10 26/1 36/25 37/2 37/3
37/6 40/16 40/24 41/23 41/25 42/22
43/2 45/8 45/12 45/23 45/24 45/25
46/1 46/5 46/5 46/8 46/13 46/19 46/20
46/22 50/5 52/19 52/23 52/24 53/8
53/11 54/4 54/9 54/12 56/5 58/2 59/16
59/21 59/24 60/8 60/21 63/4 69/4
71/15 71/20 72/4 72/12 73/12 73/15
73/17 73/17 74/3 76/8 76/23 80/12
80/15 81/4 81/5 81/7 81/11 82/23 85/6
86/20 89/2 89/8 89/15 89/19 89/22
90/13 93/5 93/8 93/16 94/7 95/6 95/6
95/21 97/15 97/19 97/19 97/21 98/1
99/3 99/16 99/17 100/14 102/8 102/23
102/25 104/3 106/23 108/3 109/16
109/20 110/1 112/14 114/1 117/3
118/1 118/3 125/7 130/20 131/24
132/5
**didn't** [38] 12/11 12/14 15/25 20/22
20/22 38/7 38/8 44/25 45/1 46/1 46/10
46/13 47/8 47/8 55/7 56/1 57/17 57/18
60/11 70/18 70/18 72/2 84/25 98/3
100/22 101/3 102/11 102/21 103/18
105/19 106/10 106/21 113/24 114/2
119/23 125/6 128/24 131/5
**differ** [4] 26/13 28/5 30/4 30/14
**difference** [4] 3/10 39/5 39/14 40/18
**differences** [1] 121/24
**different** [32] 18/7 18/14 21/7 23/12
26/7 26/14 26/14 27/14 28/8 28/11
28/25 29/19 30/13 31/4 44/14 44/20
45/17 46/12 46/20 46/23 49/2 68/17
68/19 72/7 78/1 106/15 106/15 107/23
110/10 121/24 124/20 131/12
**differing** [1] 79/18
**differs** [3] 30/3 77/7 77/9
**direct** [8] 3/24 49/10 92/13 128/19
129/23 130/20 130/23 131/1
**discharged** [1] 8/8
**discovery** [5] 15/5 15/16 25/10 55/12
55/21
**discretion** [1] 31/23
**discuss** [13] 47/6 53/8 60/21 89/19
93/8 93/16 95/6 97/15 97/19 97/19
97/21 107/2 133/2
**discussed** [20] 14/9 15/4 15/6 19/25
36/22 39/13 51/1 54/8 57/9 58/16
60/23 61/13 70/13 71/12 71/23 80/8
85/14 108/15 108/16 132/8
**discussing** [8] 52/1 52/7 57/16 61/10
62/19 94/21 95/1 96/5
**discussion** [10] 37/9 57/21 93/22 93/23
99/12 107/6 110/14 114/11 114/13
117/20
**discussions** [5] 20/1 42/2 56/6 86/18
98/13
**disputed** [2] 70/5 133/7
**disregarded** [1] 132/5
**disrespectfully** [1] 12/5
**distribute** [1] 104/10
**distributing** [1] 104/7
**distribution** [1] 45/18
**DISTRICT** [2] 1/1 1/1
**do** [137]
**docket** [18] 7/25 8/3 8/5 9/5 23/7 24/8
24/8 25/23 26/1 33/22 34/1 44/4 50/11

71/24 74/25 102/20 127/7 127/8
**docketed** [3] 24/14 44/2
**document** [56] 6/5 12/9 13/10 20/11
21/14 22/3 22/13 22/14 23/25 25/17
26/5 26/6 26/17 27/19 34/18 34/19
34/22 35/5 39/8 59/19 64/1 64/24 65/4
66/25 66/25 74/24 76/8 76/10 78/8
79/15 88/11 88/14 88/15 88/23 91/23
95/9 95/10 95/21 96/2 96/6 96/8 96/9
96/11 96/18 96/19 96/24 96/20 96/21 97/2
97/9 100/12 100/14 100/16 100/21
102/14 118/10 120/14
**documentation** [1] 117/22
**documentations** [1] 100/7
**documents** [22] 21/1 29/11 29/13
30/13 30/14 44/14 50/5 50/7 51/21
54/20 54/21 63/13 69/9 69/10 69/19
69/21 91/17 99/4 109/23 113/16
116/20 118/8
**does** [37] 7/18 10/16 10/17 12/10
23/25 25/24 27/1 27/1 38/4 39/22 40/3
57/2 58/14 58/18 64/5 74/17 74/23
75/21 76/3 77/4 77/6 77/13 77/13
77/19 78/3 89/12 90/22 96/20 96/20
108/24 115/9 115/23 119/2 121/9
127/15 127/16 128/21
**doesn't** [18] 8/9 17/15 49/5 57/2 57/3
64/8 73/25 84/23 112/10 115/22
115/22 117/6 126/10 128/25 129/2
129/3 130/23 131/5
**doing** [5] 6/15 38/7 44/20 84/11 103/7
**domestic** [1] 131/23
**don't** [89] 3/9 3/10 6/15 6/17 6/18 8/8
8/12 9/6 12/5 13/4 13/8 17/20 17/23
22/6 23/1 24/14 24/25 28/4 31/3 33/19
33/19 33/20 34/15 36/14 42/19 44/18
45/16 48/25 49/6 52/3 53/3 53/9 53/16
53/20 54/7 56/3 59/11 61/15 63/25
64/1 64/1 73/19 73/24 74/8 74/21 75/8
75/15 76/22 77/20 78/10 81/17 83/4
85/13 89/17 89/23 90/1 90/3 90/17
93/21 95/8 95/8 99/14 100/9 100/9
100/19 101/1 101/8 103/14 103/14
106/25 107/5 107/6 107/13 107/14
107/17 109/14 109/24 110/3 111/12
113/6 113/6 113/15 113/18 115/15
118/17 118/18 130/1 130/17 131/4
**done** [7] 17/9 41/5 61/22 76/21 92/4
125/5 126/22
**door** [3] 3/21 42/20 86/4
**dope** [1] 35/24
**double** [5] 111/15 111/19 114/12
121/17 121/17
**doubt** [1] 118/21
**down** [4] 13/2 40/23 44/16 84/22
**dozen** [1] 56/19
**drafted** [1] 71/19
**Dred** [1] 37/24
**Driver** [1] 55/21
**dropped** [3] 41/12 41/14 41/17
**drug** [13] 5/4 9/21 24/8 37/14 40/5
55/19 67/6 97/25 98/4 101/9 102/9
117/23 129/3
**drugs** [1] 103/16
**duly** [4] 3/19 48/23 92/12 109/7
**duplicate** [5] 18/9 23/19 35/20 72/4
72/11
**duplicates** [1] 72/7
**during** [5] 36/25 46/17 57/1 100/15
117/11
**duty** [1] 8/14

## E

**each** [2] 61/23 77/1
**earlier** [6] 14/5 64/13 102/23 114/11

## E

**earlier...** [2] 114/1 114/18
**easier** [2] 41/17 53/21
**easy** [1] 43/18
**ECF** [8] 6/14 6/19 6/21 9/19 12/18 12/18 21/19 117/25
**ECF's** [1] 6/15
**ECMF** [1] 7/6
**effect** [1] 123/17
**Eileen** [2] 119/24 120/1
**either** [14] 8/16 8/21 12/3 12/11 12/22 50/19 68/7 78/18 87/23 89/15 105/11 108/10 118/1 125/9
**Eleven** [1] 55/14
**Eleventh** [6] 13/24 49/7 73/1 128/5 128/12 131/4
**eligible** [1] 122/19
**Ellen** [4] 23/8 44/7 44/13 75/12
**else** [5] 11/6 108/19 115/13 130/16 133/17
**employed** [1] 4/7
**employee** [1] 7/17
**encouraged** [1] 86/14
**end** [3] 11/6 105/25 115/21
**ended** [2] 80/20 86/24
**Ends** [1] 67/12
**enforcement** [2] 55/18 117/23
**engage** [1] 36/25
**English** [1] 91/14
**enhance** [22] 10/2 19/13 25/8 29/6 30/25 31/1 68/18 69/6 69/12 70/16 71/13 79/8 93/9 95/7 95/11 95/22 97/16 99/13 100/7 102/5 123/11 123/23
**enhanced** [14] 10/10 19/18 23/17 25/7 32/7 38/18 42/5 43/5 64/17 67/7 102/14 117/7 118/12 128/22
**enhancement** [75] 6/8 12/19 12/25 16/9 19/8 20/12 20/14 29/22 29/23 31/2 34/3 37/9 37/14 38/17 41/6 46/5 50/20 51/8 51/14 52/14 53/8 56/12 57/12 57/16 58/15 58/15 59/22 60/17 64/6 66/1 66/6 67/19 75/23 79/21 80/13 82/24 83/18 84/24 85/3 89/12 91/22 93/11 93/17 100/22 102/10 102/11 102/15 105/8 108/10 110/5 110/16 110/24 111/14 111/16 111/17 111/19 114/12 114/16 114/20 114/21 120/23 121/17 125/19 125/20 126/7 126/18 126/18 128/6 129/14 131/16 132/12 132/21 132/22 133/3 133/3
**enhancements** [13] 17/7 19/23 30/4 31/8 37/11 40/5 54/5 56/25 78/25 83/3 112/12 117/14 117/22
**enough** [1] 75/6
**enter** [1] 121/22
**entered** [5] 38/25 67/9 73/8 74/25 118/9
**entering** [1] 132/24
**entire** [1] 132/13
**entitled** [1] 128/25
**entry** [10] 24/8 25/23 34/1 44/4 50/11 59/19 67/1 71/24 116/12 127/8
**error** [13] 38/5 38/6 40/4 40/14 65/8 117/6 117/12 124/2 125/14 125/15 126/1 132/16 132/20
**errors** [5] 116/24 116/25 125/11 127/1 131/11
**escorted** [2] 87/17 113/4
**especially** [1] 113/3
**Esq** [1] 1/14
**establish** [4] 12/21 12/21 104/16 118/10

**establishes** [3] 10/19 10/23 67/23
**establishing** [1] 35/9
**estimates** [1] 56/19
**et** [1] 25/11
**even** [10] 11/25 12/16 33/19 57/3 73/8 80/1 91/21 117/21 126/11 132/24
**event** [4] 10/19 10/22 13/19 113/9
**events** [2] 110/10 112/8
**eventually** [2] 12/19 29/3
**ever** [9] 76/8 76/9 93/8 93/16 96/2 96/8 96/15 97/15 103/14
**every** [7] 59/10 61/14 61/16 61/17 61/23 131/15 131/18
**everything** [1] 74/6
**evidence** [5] 22/18 26/22 55/14 118/9 126/1
**exact** [8] 53/15 53/16 53/17 72/7 72/11 72/11 76/15 109/25
**exactly** [4] 32/1 50/14 53/6 53/16 63/25 111/12
**EXAMINATION** [8] 3/24 36/18 47/24 49/10 86/22 92/13 103/4 114/6
**examine** [1] 100/4
**example** [1] 91/17
**except** [1] 24/19
**excuse** [3] 53/17 80/6 132/17
**excused** [2] 48/10 108/21
**exhibit** [130] 6/1 19/2 21/15 21/20 21/21 22/1 22/7 22/9 22/10 22/15 22/19 22/24 23/2 23/6 23/12 25/18 25/19 25/20 25/24 26/16 26/20 27/4 27/13 27/14 27/14 27/18 27/23 28/9 28/15 28/16 28/19 28/21 28/25 29/1 29/14 29/18 30/1 30/2 30/3 30/4 30/6 30/6 30/7 30/11 30/12 30/19 32/12 32/25 34/23 34/24 37/12 37/13 38/21 38/23 39/5 39/6 39/7 40/9 40/10 40/18 40/18 40/19 40/19 40/19 43/2 43/7 43/10 44/1 44/4 44/10 44/16 46/3 51/17 59/20 59/21 62/15 64/11 64/12 65/5 65/7 65/23 66/11 66/25 67/1 67/22 69/8 69/9 71/9 74/10 76/9 77/6 77/7 77/9 77/12 77/13 77/20 77/24 77/25 78/1 78/2 78/4 78/15 79/1 79/3 79/6 88/6 88/7 88/8 89/1 89/12 90/19 90/20 96/1 97/9 97/10 100/11 101/19 101/20 101/22 102/9 116/18 116/19 116/20 116/22 117/16 117/17 118/9 123/4 128/21 129/7
**exhibits** [9] 22/19 22/22 22/24 29/12 69/13 69/14 73/23 83/11 117/15
**exist** [1] 129/23
**existed** [1] 117/25
**explain** [2] 40/16 40/17
**exposure** [6] 60/1 60/2 61/21 84/1 84/3 84/4
**express** [3] 89/8 89/15 128/22
**expressed** [1] 90/24
**expressing** [1] 90/3
**extension** [1] 11/16
**extensive** [1] 115/25
**extra** [1] 42/10

## F

**F.3rd** [1] 119/9
**face** [10] 11/13 12/24 20/20 70/2 99/14 99/21 106/5 106/5 121/4 123/6
**faced** [1] 85/24
**faces** [1] 10/12
**facing** [17] 15/8 31/2 31/10 32/7 78/25 89/5 90/3 105/20 105/21 105/23 106/1 106/3 106/7 106/10 106/11 106/12 107/3
**fact** [64] 7/19 7/23 8/1 9/4 10/9 11/23 13/3 14/6 20/3 20/13 26/22 27/7 29/6

**29/11 29/14 30/14 30/16 30/24 30/25**
**31/19 31/15 32/22 34/12 35/8 60/21**
**60/23 64/9 68/5 68/22 71/15 72/17**
**74/18 76/6 76/8 78/24 79/22 85/5**
**85/17 93/17 95/6 97/22 98/2 98/9**
**102/23 116/7 116/21 117/7 117/10**
**117/18 117/25 118/3 118/12 120/18**
**121/3 121/25 122/3 122/10 123/3**
**123/6 126/9 126/13 126/20 126/22**
**127/9**
**factors** [2] 125/11 125/21
**facts** [4] 10/4 61/21 82/3 130/21
**factual** [1] 124/20
**failing** [1] 129/14
**failure** [2] 123/23 131/2
**fair** [9] 9/2 56/11 57/23 75/6 81/1 85/23 86/11 113/8 113/11
**far** [7] 7/19 55/8 56/15 77/14 83/17 113/2 121/10
**fashion** [1] 123/1
**Fat** [1] 37/24
**FDC** [12] 53/14 53/25 54/11 57/1 57/8 58/5 58/12 94/24 94/25 95/4 99/2 99/3
**February** [1] 130/11
**federal** [2] 119/7 129/11
**felon** [1] 46/11
**felonies** [1] 56/19
**felony** [1] 70/10
**few** [4] 62/12 69/9 83/20 86/2
**fight** [2] 57/4 57/6
**figure** [1] 31/21
**file** [41] 6/19 7/15 9/25 14/14 17/15 18/24 23/9 23/11 23/13 24/16 24/17 25/23 25/25 28/1 28/2 40/20 41/7 41/19 44/2 45/23 50/7 50/23 51/2 51/3 51/7 51/10 51/14 51/24 52/9 52/10 52/19 54/13 57/25 58/3 58/9 59/8 62/5 62/20 91/24 119/1 132/13
**filed** [102] 4/17 4/21 5/5 5/6 5/23 6/8 6/11 6/13 6/14 7/1 7/7 7/9 7/16 8/17 12/19 14/11 14/14 15/7 17/9 17/13 18/10 19/10 21/2 21/19 23/7 23/10 23/16 23/20 24/9 25/3 25/24 29/5 30/5 32/25 33/15 33/16 33/19 33/20 33/20 33/23 34/6 34/12 34/18 34/25 35/3 35/13 37/12 37/14 37/16 37/18 44/15 44/25 45/19 50/16 50/20 57/22 58/19 59/17 65/1 72/5 74/18 74/21 77/3 79/19 79/21 80/13 81/25 89/13 90/25 93/12 93/17 100/19 104/17 110/5 110/15 110/24 110/25 116/5 116/17 116/20 116/21 117/24 118/1 118/22 120/11 120/17 120/17 121/3 121/5 121/14 121/25 123/4 123/11 123/24 124/1 124/4 126/24 127/5 127/5 127/8 133/3 133/6
**files** [1] 116/12
**filing** [41] 5/9 7/12 9/12 10/1 10/13 12/18 13/14 33/12 33/13 34/7 34/9 35/5 35/8 36/2 36/3 36/5 43/5 43/13 51/3 51/12 64/12 65/7 89/20 118/15 118/21 118/25 120/8 120/20 120/25 121/7 121/14 122/13 123/1 123/5 124/5 124/6 125/1 125/4 127/9 127/16 127/16
**filings** [1] 20/7
**finally** [1] 82/8
**financial** [1] 8/22
**find** [2] 46/13 127/21
**finding** [1] 133/13
**findings** [2] 82/17 84/23
**fine** [8] 13/23 20/23 32/1 36/14 42/17 43/6 76/19 124/12
**fingerprints** [2] 40/1 69/23
**finished** [1] 104/13

## F

**first** [68] 2/11 2/18 2/20 3/8 3/19 3/22 1/1
8/8 10/19 11/1 18/9 18/15 19/10 22/13
30/1 35/17 35/20 36/3 36/4 37/14 38/2
40/6 41/8 48/16 48/23 51/21 53/4 53/4
53/7 53/14 53/23 54/22 56/4 64/22
65/3 66/11 69/17 72/4 72/20 76/23
78/4 78/16 79/12 82/2 87/14 91/21
92/12 93/3 93/4 105/15 105/15 105/22
108/12 109/7 111/17 115/18 115/20
118/21 118/21 120/10 120/15 121/15
123/4 123/18 123/20 127/15 132/3
132/15 132/16
**five** [1] 31/5
**FL** [1] 1/23
**Flagler** [1] 1/18
**floor** [1] 110/15
**FLORIDA** [5] 1/1 1/6 1/15 1/19 35/24
**FLSD** [1] 74/25
**flsd.uscourts.gov** [1] 1/24
**fold** [1] 120/10
**follow** [2] 16/4 117/3
**follow-up** [1] 16/4
**following** [3] 56/16 67/5 67/6
**follows** [5] 3/19 48/19 48/23 92/12
109/7
**footnote** [2] 128/8 131/6
**foreclose** [1] 115/16
**foregoing** [1] 134/10
**foreseeing** [1] 13/19
**forfeiture** [2] 89/23 89/25
**forget** [1] 124/18
**forgotten** [1] 2/24
**form** [3] 20/23 50/14 108/13
**Formal** [1] 67/9
**formally** [1] 61/13
**Fort** [5] 53/24 56/10 61/4 94/11 94/22
**forum** [1] 6/17
**found** [4] 15/3 24/16 42/12 82/19
**four** [3] 44/20 48/16 82/6
**four-level** [1] 82/6
**frame** [3] 35/9 74/19 91/1
**frame-wise** [1] 74/19
**free** [1] 115/5
**frivolous** [2] 133/14 133/15
**front** [6] 10/8 67/2 67/21 87/25 88/24
111/13
**full** [1] 54/22
**furnished** [1] 21/7
**further** [9] 36/8 48/8 85/21 92/2 99/12
103/2 108/17 112/16 115/1
**future** [1] 84/20

## G

**G-E-E-S-E-Y** [1] 5/13
**G-E-R-S-H-M-A-N** [1] 49/13
**Garcia** [2] 17/24 110/3
**Gary** [5] 17/5 109/2 109/6 109/12
134/3
**gave** [12] 17/18 22/10 34/15 34/16 42/9
65/10 70/23 86/2 127/24 131/14
131/17 131/18
**Geesey** [44] 5/6 5/8 5/12 5/13 7/21
7/22 8/4 8/9 8/17 8/20 9/3 9/13 14/6
14/12 14/16 15/6 27/12 29/14 30/9
37/15 39/13 50/23 50/25 50/25 51/11
52/3 54/14 57/25 58/3 58/9 69/17
69/20 69/25 75/24 79/13 80/1 93/4
93/5 93/8 93/16 93/25 117/15 117/18
132/12
**Geesey's** [5] 27/6 50/24 51/24 51/24
52/11
**general** [4] 47/3 54/6 54/7 87/9
**generally** [2] 86/17 86/19

**generated** [1] 50/15
**gentleman** [1] 80/20
**gentlemen** [1] 60/19
**Gershman** [77] 5/21 8/1 9/3 9/7 9/8 9/8
9/15 12/11 12/12 14/8 14/19 14/25
15/7 15/11 15/12 15/14 15/23 16/12
17/4 17/25 20/1 24/13 24/17 25/13
26/24 27/3 27/4 27/18 39/11 39/13
41/2 42/8 44/8 46/17 47/9 48/14 48/21
48/22 49/2 49/13 51/17 86/24 92/3
92/6 93/2 94/2 94/8 94/16 94/17 96/6
97/15 98/19 99/18 101/15 102/5
105/16 107/20 108/14 108/16 111/7
111/9 111/12 111/22 112/2 112/7
112/20 117/14 122/17 123/10 125/6
129/13 129/22 132/7 132/10 132/11
132/12 134/1
**Gershman's** [1] 120/21
**get** [25] 2/20 8/23 12/11 12/18 17/15
21/2 25/24 29/2 32/12 42/12 44/14
47/8 72/2 73/12 80/3 86/12 101/2
101/3 101/9 102/8 107/21 114/16
122/9 122/12 130/11
**gets** [2] 44/6 44/15
**getting** [4] 3/15 8/16 8/19 44/25
**give** [14] 15/4 15/23 19/2 25/13 31/23
31/24 32/3 53/20 56/14 61/22 119/6
122/24 125/24 131/20
**given** [13] 7/20 17/1 19/21 21/24 30/9
69/17 93/14 104/17 113/23 117/18
123/2 128/11 132/2
**gives** [2] 26/9 44/10
**giving** [5] 64/17 102/1 119/19 119/21
119/22
**go** [49] 2/14 2/18 6/3 7/10 8/14 9/10
15/20 17/21 18/13 19/9 21/6 21/4 23/4
24/13 26/3 28/5 31/3 37/11 42/7 42/22
45/3 52/16 53/20 54/4 56/7 59/7 59/14
60/7 63/8 66/5 71/15 77/1 79/1 86/3
86/21 92/10 98/1 98/3 99/22 107/8
111/21 112/9 115/18 115/20 124/23
125/12 125/21 128/2 133/3
**goes** [7] 28/9 56/15 66/3 104/15
104/18 106/13 128/15
**going** [47] 2/11 3/5 3/17 5/25 8/18
12/12 17/8 18/23 21/6 21/25 22/25
26/11 29/14 31/18 42/5 42/11 43/12
47/4 47/7 55/8 64/11 65/11 66/4 72/22
74/10 78/16 80/3 85/3 86/12 92/15
95/10 96/15 97/8 97/13 98/4 99/14
100/6 100/10 100/10 106/2 110/18
111/3 111/17 111/18 112/9 113/4
115/15
**gone** [5] 14/15 42/20 42/21 42/22
44/19
**good** [8] 2/8 2/10 4/1 4/2 36/21 41/7
109/9 109/10
**got** [14] 5/10 9/9 12/11 17/2 17/19
34/20 44/1 44/9 44/23 50/23 73/5
79/12 79/25 129/9
**gotten** [1] 41/9
**government** [60] 2/11 13/3 21/24 22/10
22/10 22/22 28/21 28/22 35/24 37/12
38/21 38/23 39/5 39/6 39/7 43/2 43/7
43/10 46/3 47/21 49/6 50/3 64/12
64/25 65/5 65/7 65/24 65/25 66/1
69/15 71/3 74/10 85/5 86/21 88/6 88/7
88/8 89/11 89/12 90/8 90/19 90/19
93/17 95/7 96/1 100/11 102/5 103/17
109/1 115/9 117/7 117/15 117/17
119/19 120/4 121/21 121/22 123/9
126/21 127/13
**government's** [23] 6/1 21/20 21/21
21/25 22/7 22/15 22/19 23/6 25/24
29/1 32/25 34/23 34/24 37/13 71/13

83/11 93/9 95/21 97/16 99/12 100/7
101/21 117/16
**governmental** [1] 117/8
**grams** [3] 31/4 31/17 31/19
**grant** [1] 91/9
**great** [1] 116/1
**grounds** [3] 82/1 91/7 106/15
**group** [1] 25/10
**guess** [4] 9/1 29/10 31/9 43/19
**guidelines** [5] 31/7 31/19 31/25 97/23
131/16
**guilty** [3] 42/13 64/9 116/12

## H

**HABEAS** [1] 1/10
**had** [121] 2/23 2/24 5/7 5/7 5/18 6/20
8/22 9/2 11/2 15/13 15/24 15/25 16/7
17/9 18/8 18/11 18/11 18/18 18/18
18/19 18/20 18/22 19/3 19/17 20/1
31/3 32/22 34/6 40/25 41/9 41/11
41/11 41/12 41/13 41/16 42/2 42/23
43/12 43/15 43/21 43/21 44/18 44/19
44/24 48/1 50/25 52/3 54/14 54/24
55/3 55/6 55/7 55/12 55/19 55/20
55/24 56/21 58/18 58/19 58/20 58/21
60/17 61/17 62/14 62/19 62/25 63/2
66/5 69/16 69/17 69/20 69/21 69/23
70/6 70/10 70/20 71/23 72/17 74/5
74/5 74/6 75/7 77/18 83/12 85/5 85/12
85/12 86/18 87/11 93/21 93/23 96/15
97/13 97/25 98/6 98/18 101/8 106/13
107/11 107/23 110/4 110/14 110/15
112/24 113/25 114/14 114/17 116/20
116/22 117/10 118/1 118/18 122/17
123/10 124/1 125/9 126/18 126/18
128/1 128/18 130/16
**hadn't** [2] 41/4 112/23
**half** [3] 17/6 19/17 56/19
**half-brother** [2] 17/6 19/17
**hand** [13] 6/14 6/18 9/22 9/23 18/12
23/14 24/13 24/18 24/20 26/8 41/2
48/1 87/11
**hand-carried** [1] 6/18
**hand-deliver** [1] 9/22
**hand-delivered** [8] 9/23 18/12 23/14
24/18 24/20 26/8 41/2 48/1
**hand-filed** [1] 6/14
**handed** [32] 18/4 18/13 23/13 23/15
26/2 26/24 26/25 27/2 27/18 27/25
34/3 34/12 34/21 40/25 41/2 41/22
41/24 42/10 43/3 43/7 52/1 59/20
76/12 85/7 85/8 87/24 88/2 113/16
120/11 120/14 124/6 125/6
**handing** [9] 34/8 35/7 87/2 87/22 87/24
88/24 112/11 125/2 127/20
**hands** [3] 76/15 120/4 120/6
**happen** [4] 98/14 99/18 99/19 122/8
**happened** [11] 9/4 17/17 18/18 28/1
34/15 42/15 44/17 87/7 107/16 111/5
112/4
**happening** [4] 43/16 43/17 43/20 112/6
**happens** [2] 8/11 58/7
**harmless** [1] 125/14
**Harris** [1] 131/3
**has** [31] 3/7 18/24 24/17 24/17 27/6
39/14 39/14 39/20 40/1 56/18 65/14
65/17 74/25 77/9 77/17 77/20 77/25
78/2 78/5 81/21 91/8 102/18 110/8
118/25 128/5 129/7 129/22 129/25
131/2 132/6 133/8
**hasn't** [2] 104/13 130/2
**have** [152]
**haven't** [5] 80/24 81/17 82/25 85/16
85/19
**having** [7] 3/19 44/8 48/23 92/12 109/7

**H**

**having...** [2] 121/7 128/22

**he** [214]

**he'd** [1] 15/5

**he's** [8] 25/2 39/25 44/10 56/18 65/6 117/7 128/24 128/25

**head** [4] 25/11 103/23 104/3 104/23

**heading** [4] 19/14 19/25 25/1 96/23

**hear** [1] 115/14

**hearing** [13] 2/22 3/14 29/4 50/1 50/6 52/19 60/9 61/4 69/12 81/18 83/7 90/2 90/7

**help** [4] 52/20 61/1 74/17 74/17

**helps** [1] 30/23

**Henry** [3] 1/14 1/14 2/8

**her** [9] 13/9 22/15 22/17 40/24 44/24 49/1 87/11 112/9 125/5

**here** [36] 2/10 3/20 11/15 13/16 14/22 19/21 37/25 38/9 42/9 44/7 44/15 45/2 47/6 48/25 67/3 68/2 68/6 70/15 83/7 92/15 92/17 92/19 102/4 102/18 104/16 106/25 108/9 108/14 109/4 110/7 115/4 115/16 116/5 120/8 120/24 133/10

**hereby** [2] 19/11 67/4

**higher** [1] 129/22

**highlighting** [1] 123/17

**him** [101] 10/12 11/6 14/9 14/10 14/25 15/2 15/4 15/14 15/14 15/23 16/6 24/13 25/4 25/8 30/9 31/24 32/3 32/8 36/1 37/1 37/3 44/10 46/23 51/1 53/3 53/11 53/21 53/21 56/21 57/9 61/3 61/14 61/14 61/15 61/17 61/20 61/22 61/22 61/23 62/2 63/4 63/6 63/10 64/4 65/8 68/9 68/10 68/14 68/18 68/18 68/20 69/6 69/8 69/11 69/13 70/23 70/24 71/13 80/5 80/8 80/16 82/18 83/7 84/21 85/24 86/14 86/18 87/18 90/3 90/7 91/10 91/19 91/25 94/19 94/22 94/23 94/23 94/25 95/1 95/12 98/23 101/1 118/5 118/17 119/21 119/22 122/18 122/19 122/24 123/2 123/11 123/23 125/24 126/8 126/13 131/14 131/17 131/18 131/20 132/2 132/8

**himself** [1] 89/24

**hired** [3] 8/21 90/15 90/16

**his** [64] 2/13 9/21 17/5 19/15 20/6 24/17 31/6 31/7 38/17 40/1 41/3 45/25 45/25 46/1 47/7 51/1 52/9 52/12 56/17 60/1 64/9 66/4 67/11 68/20 69/6 69/12 69/17 81/12 82/12 84/4 84/11 84/24 86/17 88/14 90/6 91/6 104/16 104/19 110/8 110/18 112/8 116/6 117/14 117/22 117/22 118/5 120/11 120/22 121/20 123/14 123/15 126/3 126/6 126/11 129/6 129/13 130/19 131/2 131/16 131/23 131/24 131/24 132/5 133/9

**history** [16] 46/6 56/15 56/19 68/20 69/24 81/21 82/11 83/22 83/24 84/11 84/24 95/19 97/21 122/20 125/21 131/25

**hits** [1] 35/6

**Hold** [6] 6/20 28/14 38/22 51/7 104/13 124/8

**holding** [4] 86/4 87/17 87/17 112/1

**Honestly** [1] 59/10

**Honor** [83] 2/6 2/8 2/16 2/19 6/2 7/3 7/5 12/17 13/12 16/23 17/17 19/1 21/3 21/11 21/16 21/19 21/24 22/8 22/12 22/16 23/3 25/18 27/21 28/4 28/15 28/20 29/17 30/22 34/14 34/24 36/7 36/8 36/12 44/12 47/3 47/4 47/19 47/22 48/8 48/11 48/13 48/21 48/24

**I**

**I'd** [6] 22/23 31/3 31/12 33/16 60/4 105/21

**I'll** [10] 32/12 36/13 56/22 68/24 76/23 92/9 100/4 105/6 110/7 133/19

**I'm** [74] 2/3 2/23 3/23 4/24 5/25 9/1 10/14 10/14 12/7 12/15 13/8 13/11 13/19 13/22 13/23 17/18 22/8 22/16 22/25 24/7 26/18 27/4 33/5 33/6 38/23 43/5 43/18 45/3 47/17 49/5 50/13 52/22 54/10 54/17 54/18 55/7 56/7 57/18 59/23 61/6 61/21 61/24 64/11 65/8 65/11 66/24 66/25 68/11 68/12 72/6 73/19 74/10 76/22 76/25 77/24 81/9 81/18 84/2 87/12 87/25 92/15 96/15 97/8 97/20 100/10 100/10 101/17 110/18 111/3 115/15 119/21 124/12 124/16 124/17

**I've** [5] 4/9 44/1 109/22 115/25 128/11

**idea** [3] 7/17 44/16 132/7

**identical** [13] 24/3 24/19 26/6 29/11 29/12 30/7 30/8 30/11 35/22 35/23 40/11 43/20 76/7

**identification** [1] 22/4

**immediately** [1] 90/24

**impeachment** [1] 47/11

**important** [8] 11/16 12/2 12/12 26/12 29/20 116/14 118/20 128/23

**imprisonment** [6] 10/2 11/7 15/8 36/1 131/18 131/19

**improperly** [1] 124/3

**inappropriately** [1] 41/13

**incident** [1] 131/23

**include** [3] 73/17 76/4 80/15

**included** [6] 29/13 60/10 73/20 73/23 73/24 89/18

**includes** [2] 78/15 102/10

**including** [4] 55/12 70/11 82/16 91/7

**incorporate** [1] 77/4

**incorporated** [4] 59/22 78/8 97/10 117/2

**incorporating** [1] 68/5

**increase** [1] 82/7

**increased** [2] 82/18 116/10

**incredible** [3] 132/8 133/8 133/10

**independent** [5] 8/15 61/9 61/12 83/2 125/7

**INDEX** [2] 133/23 134/5

**indicate** [17] 6/10 7/19 9/15 12/1 19/22 27/1 52/23 63/25 64/5 75/22 77/13 77/14 117/16 123/7 124/3 127/7 127/7

**indicated** [19] 5/22 14/5 21/6 23/25 35/13 48/1 50/8 57/24 60/17 64/13 67/3 71/12 71/22 83/21 94/2 102/4 116/24 126/9 126/22

**indicates** [13] 7/25 10/21 27/5 27/11 66/14 66/22 67/22 77/16 117/16 121/2 124/7 125/13 126/5

**indicating** [7] 34/11 50/11 56/5 95/10 117/17 122/18 122/23

**indication** [4] 33/22 34/18 121/23 124/24

**indicator** [2] 35/3 35/9

**indicted** [1] 41/13

**indictment** [9] 18/19 18/20 18/21 41/11 46/7 55/3 55/3 55/4 55/5

**ineffective** [7] 129/13 129/16 129/24 130/5 130/9 130/12 133/13

**ineffectiveness** [2] 91/8 130/22

**inevitably** [1] 122/12

**inform** [1] 19/7

**information** [32] 5/4 10/13 18/16 18/17 18/24 24/9 24/18 26/14 28/7 28/7 35/17 35/21 40/2 54/15 55/19 55/21 59/3 60/10 65/10 73/25 74/7 74/15 117/5 117/23 118/8 121/1 132/18

**informations** [1] 40/5

**initial** [18] 4/21 5/4 5/22 9/25 12/24 14/11 19/6 19/10 64/12 71/23 80/13 93/1 102/9 114/14 121/14 126/4 126/18 127/3

**initially** [4] 11/19 23/19 50/18 60/15

**inmates** [1] 86/5

**inside** [1] 112/4

**instance** [1] 123/18 123/20

**instead** [1] 103/18

**intended** [5] 13/23 26/18 93/17 95/7 102/5

**intends** [1] 28/23 67/5

**intent** [3] 26/15 29/5 57/21

**intention** [13] 10/1 11/9 13/9 19/7 19/12 71/13 93/9 95/22 97/16 99/13 100/7 123/8 123/9

**intentions** [3] 13/2 13/25 121/21

**intently** [1] 116/2

**interested** [1] 15/9

**interesting** [1] 130/10

**internal** [1] 51/24

**interpret** [1] 14/22

**interpretation** [1] 13/9

**interpretations** [1] 13/24

**interrupt** [1] 61/24

**introduced** [2] 22/13 98/5

**intrusion** [1] 43/23

**invalid** [2] 10/23 67/24

**invalidated** [1] 12/22

**invalidates** [1] 127/9

**inventories** [1] 55/15

**investigation** [3] 45/9 45/12 83/14

**invoke** [1] 2/15

**invoked** [2] 2/17 3/7

**involved** [3] 19/19 31/5 129/8

**involvement** [3] 4/11 49/14 49/17

**irrelevant** [1] 132/20

**is** [313]

**isn't** [2] 20/7 33/22

**issue** [21] 46/14 62/19 70/22 79/19 79/20 80/25 84/19 85/14 104/19 105/12 120/23 120/24 128/4 128/15

**I**

issue... [7] 128/17 128/18 129/12
129/25 130/3 131/6 133/19
**issued** [1] 126/13
**issues** [9] 2/23 5/10 15/16 51/1 59/13
68/17 68/19 87/10 103/20
**it** [418]
**it's** [82] 2/13 2/14 3/21 3/23 11/7 11/16
11/22 11/24 12/3 12/4 13/1 14/1 17/6
18/16 19/4 19/11 19/25 20/19 21/20
21/23 21/25 22/3 22/3 22/7 23/8 24/3
24/21 25/4 25/4 26/5 26/7 26/12 26/22
29/4 32/24 33/15 33/16 33/16 33/21
35/7 42/24 43/18 47/11 57/18 57/19
61/7 61/8 65/19 65/19 66/13 73/1
73/24 74/6 74/7 75/17 76/6 81/1 83/11
93/12 101/22 106/25 108/14 113/8
113/11 115/16 115/19 115/19 116/14
119/25 120/3 123/6 123/20 124/6
125/14 125/14 125/14 128/7 128/13
129/24 130/4 130/10 133/13
**items** [4] 55/14 55/15 56/1 56/3
**its** [5] 20/20 33/14 82/3 121/4 124/5
**itself** [6] 9/13 12/9 13/10 27/19 32/9
124/6

**J**

**JA** [1] 56/9
**James** [1] 119/4
**January** [4] 54/25 55/1 56/17 134/13
**Jerito** [1] 55/17
**JOHNSON** [2] 1/2 1/10
**Jovan** [1] 119/4
**Jr** [6] 19/12 20/2 38/3 40/6 64/14 80/18
**judge** [63] 1/11 2/13 2/14 2/20 17/2
17/3 17/19 17/22 18/6 23/16 26/12
29/20 30/4 31/23 34/14 42/14 42/24
49/18 51/22 56/8 61/8 61/25 72/15
83/5 83/20 85/14 85/15 86/1 87/9
87/12 87/15 87/16 87/25 88/2 88/3
88/25 89/25 104/11 104/20 104/22
107/8 109/17 111/23 113/1 113/2
115/20 118/24 119/2 119/5 119/25
120/3 124/12 124/22 125/18 125/25
128/20 130/2 131/14 131/17 131/21
132/1 132/25 133/9
**judgment** [8] 39/20 39/22 51/14 62/23
67/10 69/14 91/18 91/23
**judgments** [7] 39/25 62/20 62/22 63/1
69/18 69/23 70/21
**judicial** [3] 29/10 38/25 67/8
**Judith** [2] 1/22 134/15
**judy** [1] 1/24
**jump** [1] 123/3
**June** [1] 5/8
**jurat** [1] 75/21
**jurisdictional** [3] 128/7 128/8 128/13
**jurors** [1] 113/9
**jury** [57] 17/2 18/6 18/6 23/18 24/13
32/22 33/8 34/2 34/4 34/14 41/17
42/13 42/24 43/6 46/7 46/13 48/2
63/15 72/17 72/21 73/1 73/2 73/5 73/6
73/7 74/16 75/6 82/17 82/19 85/23
87/6 95/12 95/15 95/17 97/24 98/3
103/10 104/1 104/3 107/9 107/12
111/1 111/4 111/5 112/21 112/25
113/10 115/23 120/17 121/3 121/23
124/1 127/6 127/9 132/5 132/24 133/8
**just** [64] 2/15 3/13 11/15 12/15 13/22
18/22 22/6 22/10 22/23 23/1 24/18
26/12 28/7 31/13 32/12 33/12 36/3
36/5 36/13 38/7 41/6 41/15 41/15
44/22 45/18 51/25 52/4 52/7 52/24
56/7 56/14 56/16 56/22 57/3 60/7

**K**

**K-O-L-L-I-N** [1] 109/12
**KAREN** [7] 3/18 4/23 75/17 110/4
110/15 111/10 133/25
**keep** [3] 59/1 100/18 115/4
**kill** [1] 128/25
**kilos** [2] 31/5 103/22
**kind** [3] 3/17 17/7 26/9 41/20 46/9
**knew** [3] 70/10 106/7 106/23
**know** [99] 3/9 3/10 6/13 6/15 6/17 6/22
7/15 7/16 8/7 8/9 8/12 9/8 13/3 14/7
15/1 15/8 16/7 17/25 19/3 26/11 27/25
28/4 28/6 29/3 32/5 33/19 33/19 33/20
34/15 34/15 42/3 43/10 44/9 44/13
45/16 46/11 48/25 48/25 53/13 54/17
55/7 58/20 60/8 60/16 60/23 61/16
63/5 63/6 65/20 69/1 72/13 73/19
74/21 76/22 79/20 80/18 83/5 92/15
92/17 92/19 93/11 93/12 95/13 97/3
97/5 98/18 100/16 100/22 102/19
102/21 106/21 106/24 107/22 109/14
109/22 110/15 110/24 112/7 112/9
113/22 115/22 116/1 117/25 118/17
118/18 120/13 122/4 122/5 122/17
125/2 125/18 125/21 125/22 126/23
128/5 130/13 130/17 130/22 133/20
**knowing** [1] 122/16
**knowledge** [2] 50/19 54/8
**known** [4] 9/6 39/15 39/16 61/13
**knows** [1] 20/18
**Kollin** [15] 17/5 17/25 20/2 20/3 50/3
80/21 109/6 109/12 112/17 113/15
114/9 114/10 125/7 132/10 134/3
**Kollins** [8] 97/7 97/7 97/8 109/2 109/4
109/9 114/8 121/15

**L**

**lab** [1] 55/22
**labeled** [2] 21/23 22/4
**labels** [1] 21/24
**Ladson** [5] 119/5 119/22 119/23
119/23 124/7 124/20 125/3 127/15
127/24 128/1 128/3 128/8 131/6
**language** [12] 70/15 77/17 77/19 78/5
78/8 78/12 78/14 78/15 79/6 79/15
91/15 126/17
**last** [18] 17/8 17/11 17/19 38/14 41/3
42/2 42/3 42/6 60/7 61/25 62/1 77/16
77/21 83/20 111/15 111/15 114/16
133/1
**late** [2] 15/18 107/21
**late-September** [1] 15/18
**later** [5] 17/16 50/21 51/13 105/25
130/14
**law** [10] 13/4 20/19 49/22 55/17 72/25
82/16 118/23 124/5 128/2 131/4
**lawyer** [5] 5/11 8/12 107/23 130/11
**lead** [10] 11/22 12/23 20/3 20/5 25/2
33/23 36/23 46/12 68/2 114/21
**leader** [1] 125/22
**leadership** [1] 31/6
**leading** [4] 67/14 79/9 100/1 100/3
**leads** [3] 29/23 30/19 127/2
**leap** [1] 122/23
**learned** [1] 50/21
**least** [2] 70/24 127/6
**leave** [4] 44/19 68/24 113/3 115/5

**left** [4] 42/17 49/24 53/15 132/9
**leg** [1] 113/2
**legal** [1] 72/3
**legible** [1] 32/24
**Leonard** [14] 19/12 24/1 38/2 40/6
64/14 80/15 80/18 97/3 109/15 109/17
110/5 110/17 117/2 117/2
**less** [6] 5/16 37/4 42/4 45/17 50/8
132/2
**let** [20] 8/6 14/22 15/22 20/25 28/14
38/22 51/20 56/14 59/1 64/3 69/4
72/14 72/25 86/24 88/6 90/18 113/1
113/3 119/14 127/15
**let's** [9] 3/4 22/7 30/6 37/11 52/24 72/3
79/1 92/10 132/3
**letter** [2] 8/12 8/17
**letting** [1] 107/8
**level** [5] 31/7 82/6 82/9 82/15 128/19
**life** [109] 10/2 10/4 10/10 10/13 11/5
11/7 11/13 15/8 19/18 23/17 24/22
29/6 29/22 31/1 31/2 31/8 31/10 31/16
31/24 31/25 32/1 32/3 32/8 32/10 36/1
37/4 37/7 42/4 42/6 42/12 43/5 43/19
44/10 45/14 45/20 46/2 46/13 57/1
57/13 60/1 60/2 60/3 60/4 60/19 64/8
68/19 69/12 78/25 79/4 79/8 79/22
80/2 80/3 84/6 84/8 84/12 84/16 84/21
85/3 85/25 86/12 86/15 89/6 90/4
93/14 98/17 99/24 101/2 101/3 101/7
101/9 105/20 105/23 105/24 106/6
106/7 106/10 106/11 106/12 106/22
107/3 111/18 114/24 114/25 118/13
121/19 122/3 122/6 122/6 122/11
122/11 122/19 122/19 122/25 123/1
123/22 125/16 125/24 126/13 128/23
128/25 129/2 129/4 131/12 131/12
131/17 131/17 131/20 132/2
**light** [1] 126/1
**like** [24] 2/15 2/19 3/16 4/3 8/12 18/2
22/23 46/10 48/16 52/6 74/1 75/1 75/2
75/3 75/3 81/7 94/18 99/5 99/22 106/4
106/5 125/23 129/9 129/9
**limitations** [1] 129/19
**line** [4] 12/15 75/3 78/5 104/15
**lines** [1] 99/5
**LINNEA** [1] 1/10
**list** [10] 22/7 22/9 22/19 24/1 25/12
27/5 27/16 30/17 56/1 67/7
**listed** [13] 21/22 35/23 38/13 56/3
59/19 60/16 65/20 66/22 68/2 77/15
102/18 118/11 123/11
**listening** [1] 116/2
**listing** [2] 68/22 121/14
**lists** [4] 24/2 27/14 30/20 55/15
**literally** [4] 59/11 61/14 73/20 74/7
**literate** [1] 45/1
**litigate** [1] 49/7
**little** [8] 17/13 19/4 40/16 43/18 76/19
79/7 105/14 133/21
**live** [1] 63/11
**lock** [2] 17/22 18/1
**lock-up** [2] 17/22 18/1
**long** [3] 4/7 56/19 124/14
**longer** [4] 14/6 14/18 29/15 93/5
**longest** [1] 53/14
**look** [27] 19/6 28/13 28/17 29/12 29/18
30/4 30/5 30/6 30/6 31/3 38/22 46/3
50/16 51/21 53/15 56/14 64/3 64/23
65/9 66/25 72/14 73/25 90/7 116/17
125/10 126/16 131/13
**looked** [7] 19/3 50/13 60/9 80/24 81/17
109/23 125/19
**looking** [40] 10/7 10/14 10/16 11/14
12/24 27/4 28/9 30/12 32/10 38/23
44/10 56/7 61/6 64/21 65/19 66/11

61/18 64/7 68/24 74/6 79/23 79/25
84/9 83/21 85/2 85/12 91/3 96/1 97/24
38/3 98/12 98/14 99/21 103/15 103/16
113/15 113/15 113/21 125/9 125/10
127/15 128/24 129/10 130/4 132/5
**Justice** [1] 4/10
**Justs** [1] 57/5

Case 9:08-cv-81057-DMM - Document ... Docket ... 151

**L**

looking... **[24]** 68/8 75/21 77/3 77/12 79/3 79/6 79/22 81/9 84/16 87/12 96/8 99/23 102/13 102/20 116/23 118/6 122/2 122/5 122/10 123/5 123/5 125/17 125/18 126/4
looks **[6]** 52/6 75/1 75/2 75/3 75/3 81/7
LORENZO **[5]** 1/4 4/12 4/12 39/14 39/17
lost **[1]** 24/7
lot **[2]** 3/10 80/23
loud **[1]** 87/12
lunch **[1]** 32/23

**M**

ma'am **[21]** 59/6 62/21 80/6 88/13 88/22 89/9 89/21 92/1 103/9 103/11 103/25 105/10 105/18 106/8 106/21 107/4 107/13 107/24 108/2 108/5 108/8
machine **[3]** 75/1 76/4 124/19
machine-type **[1]** 75/1
Maddox **[1]** 52/8
made **[8]** 14/23 14/24 27/23 80/5 85/24 113/24 114/19 120/2
MAGISTRATE **[1]** 1/11
mail **[5]** 9/20 9/22 14/9 14/24 39/12
mailed **[13]** 9/24 14/6 14/7 14/16 15/3 15/13 15/24 16/5 24/20 25/21 25/22 26/7 37/15
mailing **[1]** 9/12
main **[1]** 41/15
make **[9]** 3/10 41/6 41/6 41/17 43/13 44/9 53/21 82/23 114/2
making **[1]** 100/25
man **[6]** 31/21 32/8 46/8 122/3 122/5 123/12
mandate **[1]** 123/1
mandatory **[28]** 10/10 31/2 32/3 36/1 37/4 37/7 42/4 42/5 44/10 45/14 45/20 57/13 60/4 84/7 84/21 84/23 85/24 86/15 89/5 90/4 107/3 111/18 114/22 118/13 118/13 123/12 128/22 131/12
many **[7]** 10/3 31/3 49/22 56/1 64/24 65/25 98/18
March **[2]** 54/25 55/1
Marie **[2]** 1/17 2/6
marijuana **[1]** 103/18
Marines **[5]** 1/14 1/14 2/9 108/10 134/6
marked **[5]** 6/1 88/7 89/10 129/7 130/19
marshals **[5]** 17/22 42/17 86/5 87/17 113/4
matching **[1]** 80/22
materials **[1]** 55/24
matter **[8]** 8/10 8/14 12/3 13/25 20/19 48/24 110/8 134/11
max **[3]** 122/10 122/10 122/11
maximum **[11]** 10/12 31/16 98/15 98/16 99/15 99/21 101/12 105/21 106/24 131/14 131/19
may **[17]** 5/8 6/2 13/21 21/11 32/14 48/25 49/2 49/8 51/17 71/6 84/20 91/22 95/25 110/20 122/15 128/9 132/18
maybe **[8]** 15/11 42/23 50/15 77/20 83/4 84/21 87/15 130/16
McClanch **[1]** 87/8
me **[69]** 3/16 8/6 8/20 14/22 15/22 20/25 22/10 28/14 36/14 38/22 40/24 44/25 45/1 51/1 51/20 52/1 52/7 53/17 56/8 56/9 56/14 56/14 57/18 58/22 59/1 59/20 61/13 62/25 64/3 66/24 67/2 69/4 69/17 69/25 72/14 72/25

74/6 74/7 75/4 77/23 79/14 79/15 80/6 80/21 80/24 81/15 81/19 86/24 88/7 89/18 90/24 97/21 99/21 104/3 104/7 105/21 107/21 108/16 110/9 110/11 111/20 119/6 119/14 119/19 124/8 124/10 127/15 128/16 132/17
mean **[17]** 4/12 12/5 12/9 13/11 20/20 26/7 26/17 39/10 58/20 69/14 74/21 83/7 84/25 104/25 114/23 130/3 130/8
meaning **[4]** 32/25 84/13 121/17 122/11
means **[1]** 118/25
meant **[3]** 12/8 12/9 85/1
meantime **[1]** 44/7
meet **[5]** 52/24 53/11 107/2 133/1 133/4
meeting **[14]** 53/10 53/14 53/23 54/11 56/4 57/1 57/7 57/8 58/3 58/5 58/9 58/10 94/16 94/17
meetings **[1]** 98/18
member **[2]** 126/6 126/7
memo **[1]** 59/8
memory **[7]** 60/25 72/21 82/3 85/13 86/1 109/24 114/1
mentioned **[6]** 55/23 70/1 88/5 91/22 116/18 131/22
mentions **[1]** 38/2
merely **[1]** 35/7
merits **[2]** 132/3 133/12
met **[14]** 13/3 13/17 50/25 52/24 53/1 53/2 53/3 53/7 94/19 94/22 94/23 94/25 98/23 105/15
meted **[1]** 84/15
method **[1]** 9/20
Miami **[21]** 1/6 1/15 1/19 1/23 1/23 17/4 27/10 33/20 40/23 43/11 43/17 44/8 53/14 53/25 72/15 94/24 94/25 95/4 99/2 99/3 109/18
microphone **[1]** 4/24
mid **[2]** 15/17 15/18
mid-September **[1]** 15/17
MIDDLEBROOKS **[25]** 1/2 1/2 17/3 17/19 42/14 42/24 49/18 72/15 86/2 87/9 90/1 104/11 104/22 109/18 111/23 113/1 113/2 119/25 125/19 131/14 131/17 131/21 132/1 132/25 133/9
Middlebrooks' **[1]** 23/16
might **[6]** 19/1 41/14 42/19 42/21 51/12 53/5
min **[6]** 31/21 32/8 46/8 122/3 122/5 123/12
min/man **[6]** 31/21 32/8 46/8 122/3 122/5 123/12
mind **[2]** 113/20 130/16
minimum **[8]** 10/10 32/3 60/3 60/18 118/13 118/13 121/19 122/2
minutes **[10]** 18/2 42/23 48/5 48/16 62/12 85/16 87/2 87/3 121/1 124/10
misdemeanors **[1]** 56/20
misfilings **[1]** 126/15
mishappens **[1]** 126/2
misled **[1]** 70/14
mispronouncing **[1]** 84/17
mistake **[1]** 60/8
mistakes **[2]** 59/21 132/17
misunderstood **[1]** 65/18
mix **[1]** 84/25
mixing **[1]** 80/22
moment **[2]** 18/5 94/20
moments **[1]** 86/2
Monday **[1]** 63/22 63/23
month **[2]** 63/22 63/23
more **[11]** 5/16 42/23 45/15 50/8 69/9

morning **[24]** 2/6 2/8 2/10 4/4 4/2 16/18 17/14 18/9 21/8 24/12 34/2 36/20
36/21 41/22 48/2 85/18 85/23 87/6 103/6 107/1 109/5 111/4 115/4 132/23
most **[1]** 118/20
motion **[5]** 2/13 2/14 8/16 115/19 116/6
motions **[1]** 117/9
move **[1]** 105/6
Mr **[6]** 5/17 30/25 49/2 93/25 94/7 134/6
Mr. **[264]**
Mr. Allen **[16]** 17/6 19/16 19/22 20/2 25/3 38/7 38/19 46/9 47/1 65/8 80/20 109/20 111/6 111/25 126/5 132/15
Mr. Allen's **[4]** 70/19 77/8 91/22 126/18
Mr. Contini **[1]** 47/1
Mr. Garcia **[1]** 17/24
Mr. Geesey **[33]** 5/6 5/8 8/4 8/20 9/13 14/6 14/12 14/16 15/6 27/12 29/14 30/9 37/15 39/13 50/25 50/25 51/11 52/3 54/14 57/25 58/3 58/9 59/17 69/25 75/24 79/13 80/1 93/5 93/8 93/16 117/15 117/18 132/12
Mr. Geesey's **[3]** 27/6 50/24 52/1
Mr. Gershman **[56]** 8/1 9/7 9/8 9/8 9/15 14/8 14/19 15/7 16/12 17/14 17/25 20/1 24/17 26/24 27/3 27/4 39/13 41/2 42/8 46/17 48/14 48/21 51/17 86/24 92/3 92/6 94/2 94/8 94/16 94/17 96/6 97/15 98/19 99/18 101/15 102/5 105/16 107/20 108/14 108/16 111/7 111/9 111/12 111/22 112/2 112/7 112/20 117/14 122/17 123/10 125/6 129/22 132/7 132/10 132/11 132/12
Mr. Gershman's **[1]** 120/21
Mr. Hunt **[114]** 2/9 2/10 3/5 4/15 4/17 5/7 5/19 5/20 7/23 8/2 8/21 10/2 15/6 15/7 17/5 19/7 19/14 19/15 19/24 19/25 20/1 20/17 24/2 29/6 31/1 31/16 35/25 36/23 36/25 38/12 40/17 41/1 42/9 45/23 46/17 46/20 47/1 50/20 52/24 52/25 53/1 53/2 53/8 53/11 54/5 54/23 55/25 56/2 56/6 56/13 58/2 58/4 58/16 58/24 59/25 60/21 60/24 62/5 63/3 63/13 64/2 64/17 65/10 71/12 71/16 71/23 72/23 73/12 73/15 78/24 79/21 80/12 81/2 83/13 84/1 86/25 87/14 88/11 89/3 89/15 89/20 89/22 90/10 90/13 90/23 91/2 91/13 91/24 92/9 92/15 103/6 103/8 109/15 110/1 111/6 111/9 111/25 114/17 116/5 117/6 117/10 117/21 118/12 122/2 125/9 125/10 125/15 126/2 126/10 126/10 126/20 128/18 132/14 133/7
Mr. Hunt's **[14]** 24/4 25/1 54/13 60/10 62/21 74/24 77/5 84/3 101/23 122/7 126/19 132/4 132/4 134/5
Mr. Kollin **[9]** 17/25 20/2 20/3 50/3 80/21 112/17 113/15 125/7 132/10
Mr. Kollins **[4]** 109/4 109/9 114/8 121/15
Mr. Leonard **[3]** 24/1 80/18 117/2
Mr. Lorenzo **[1]** 4/12
Mr. Marines **[1]** 108/10
Mr. Potts **[1]** 25/7
Mr. Trocino **[1]** 47/2
Mr. Winfred **[1]** 49/17
Ms **[2]** 4/5 134/7
Ms. **[41]** 2/20 3/4 3/13 4/1 6/5 8/7 14/23 21/14 26/16 27/9 30/24 36/13 36/20 40/20 43/12 48/1 48/25 56/22 56/25 57/20 59/17 80/1 85/15 87/2 87/4 87/7 87/8 87/8 87/11 87/22 88/24 112/7 112/11 114/12 114/18 114/19 117/13

## M

**Ms...** [4] 1/8/1 124/25 132/10 132/16
**Ms. Atkinson [36]** 2/20 3/4 3/13 4/1 6/5
8/7 14/23 21/14 26/16 30/24 36/13
36/20 48/1 48/25 56/22 56/25 57/20
59/17 80/1 85/15 87/2 87/4 87/7 87/8
87/11 87/22 88/24 112/7 112/11
114/12 114/18 114/19 117/13 118/1
132/10 132/11
**Ms. Atkinson's [1]** 124/25
**Ms. Cohen [3]** 27/9 40/20 43/12
**Ms. McClanch [1]** 87/8
**much [8]** 48/10 91/12 92/3 92/6 114/3
115/3 115/22 130/14
**must [5]** 7/24 80/17 120/9 129/20
129/20
**my [97]** 8/12 8/15 14/25 16/4 24/16
32/24 33/7 34/17 35/2 40/21 43/1
43/19 44/21 45/1 47/16 47/18 50/7
50/7 51/10 53/14 53/23 53/25 54/8
56/15 56/16 56/23 57/14 57/19 58/5
58/8 58/9 58/17 58/20 59/8 59/8 61/7
61/8 61/16 61/18 61/20 61/22 64/6
64/18 68/9 68/21 70/23 71/9 72/21
73/4 73/24 74/6 76/15 76/17 79/11
79/25 80/2 81/9 81/9 81/19 82/10 85/1
86/1 87/6 87/14 91/20 93/4 93/12
94/23 95/13 95/13 95/16 96/10 96/14
97/4 97/24 98/20 98/20 100/17 100/21
100/23 100/23 102/12 102/17 102/21
107/22 108/12 109/12 109/23 110/7
110/9 111/25 112/9 113/20 113/23
115/14 119/12 128/1

## N

**name [24]** 4/6 5/11 20/6 24/1 24/4 24/4
24/23 25/1 27/6 49/12 62/14 70/19
77/5 77/10 80/15 88/14 91/22 96/20
102/10 109/11 109/12 110/3 117/1
133/24
**named [5]** 38/15 38/19 38/20 39/25
55/16
**names [2]** 39/24 90/17
**narcotics [1]** 46/12
**nature [4]** 4/11 95/18 99/9 118/15
**necessarily [1]** 7/6
**necessary [4]** 29/22 32/2 41/5 114/15
**need [8]** 15/25 48/25 51/21 69/1 87/10
125/20 131/4 131/5
**needed [8]** 15/4 31/22 31/22 42/25
84/19 111/24 125/1 125/5
**needs [1]** 20/23
**negotiations [2]** 37/1 41/25
**nephews [1]** 19/20
**never [21]** 8/21 16/4 27/23 27/23 66/5
70/5 96/19 100/21 102/4 103/16 105/7
105/12 107/16 108/9 108/14 108/16
113/1 129/24 132/7 132/7 133/13
**nevertheless [1]** 115/24
**new [12]** 5/10 5/17 5/20 90/13 90/23
91/10 107/18 107/20 107/25 127/25
130/25 133/2
**next [12]** 14/3 53/25 54/14 58/3 58/5
58/9 58/10 77/1 80/21 82/6 82/10
115/8
**no [96]** 1/2 1/2 3/3 7/17 9/2 14/6 14/18
18/3 19/24 20/8 20/10 22/21 24/2 24/4
25/3 29/15 31/23 34/11 35/2 35/6 35/8
37/19 39/12 44/18 45/21 48/7 51/22
54/14 55/7 59/23 60/25 61/7 62/6
63/10 63/10 65/19 65/19 66/3 70/17
83/17 85/16 87/3 89/9 89/17 90/9 92/2
93/5 93/10 93/19 93/21 93/21 93/21
93/23 95/24 96/4 96/7 96/17 97/14

## N (cont.)

97/18 98/3 99/14 100/9 100/13 101/5
101/8 101/9 102/25 104/5 104/20
105/5 105/22 107/4 107/8 107/10
107/13 108/20 112/13 112/16 112/22
112/22 114/9 115/25 116/9 118/21
121/1 122/20 124/12 125/9 125/20
125/20 129/16 130/8 132/1 132/6
133/12 133/18
**none [1]** 102/11
**nope [1]** 42/25
**not [170]**
**notation [3]** 52/23 54/21 74/22
**notations [1]** 61/1
**note [1]** 89/12
**notebook [1]** 55/21
**noted [1]** 89/5
**notes [25]** 52/18 52/20 56/5 56/7 56/15
56/16 56/23 57/14 58/14 58/17 58/18
58/20 58/23 59/2 61/5 61/7 61/8 61/16
62/4 63/25 64/6 64/8 80/8 85/13
115/25
**nothing [7]** 36/8 48/8 85/21 100/16
103/2 108/17 115/1
**notice [68]** 7/1 7/20 8/18 8/19 9/3 9/12
9/20 12/3 13/6 13/13 14/1 15/13 15/15
15/24 17/1 17/14 17/14 18/8 18/10
18/15 19/21 19/22 20/14 20/20 21/2
22/11 24/8 26/9 26/12 27/11 27/13
27/15 28/6 28/25 29/3 29/11 33/13
33/13 33/14 34/3 38/8 47/4 47/8 50/11
51/8 52/13 58/19 62/13 64/17 65/5
68/22 69/14 70/12 70/21 73/5 85/11
104/17 104/17 111/14 117/9 117/17
120/10 126/3 126/4 126/17 127/4
129/7 132/16
**noticed [4]** 64/13 72/8 96/11 121/10
**notices [3]** 29/14 121/9 130/13
**notification [1]** 120/25
**notified [2]** 64/14 67/4
**notify [3]** 10/12 117/6 118/12
**notifying [2]** 19/12 38/17
**notwithstanding [3]** 68/14 79/14
131/16
**November [23]** 16/19 16/20 21/19 24/9
27/8 32/21 33/1 34/2 34/25 45/19
61/18 72/9 75/3 77/4 88/12 98/21
99/11 109/19 109/21 109/22 109/24
111/4 121/5
**now [108]** 4/17 5/16 5/22 7/12 7/18
9/19 9/25 10/14 11/14 11/14 14/5
14/15 14/21 16/14 17/1 17/12 18/7
19/10 19/16 20/11 21/6 21/10 22/15
23/19 25/17 26/11 28/3 28/24 30/24
31/14 32/12 35/13 38/2 43/10 44/9
45/5 46/17 49/14 50/18 52/18 52/23
53/7 54/4 54/10 54/12 54/18 57/16
57/24 59/16 60/15 64/11 64/16 64/21
65/24 67/19 67/22 68/2 68/8 68/9
68/12 68/21 71/12 71/15 73/15 74/17
75/6 75/21 76/20 77/3 77/12 78/11
78/24 81/4 82/23 83/21 84/3 88/5
93/12 93/20 94/2 94/7 94/16 94/25
97/5 97/8 98/18 99/3 99/11 100/18
100/24 101/10 102/4 102/8 102/18
105/7 110/4 114/11 114/14 116/17
116/23 117/25 118/21 119/22 126/9
126/25 130/22 131/3 132/3
**number [61]** 6/1 22/17 26/5 26/6 26/20
27/4 28/9 28/16 28/20 28/23 29/1 29/9
29/12 29/14 30/5 30/6 30/7 30/20
32/12 38/23 38/24 48/12 51/17 59/20
59/21 64/11 65/22 65/23 67/7 70/10
71/25 74/24 74/24 76/9 77/7 77/9
77/12 77/13 77/25 78/2 78/3 78/15
79/1 79/3 79/6 86/15 91/5 96/1 97/9

## N (cont.)

97/10 100/11 101/22 102/9 109/13
109/14 116/19 116/19 116/20 116/21
117/17 123/5
**numbers [11]** 22/24 38/9 65/14 65/17
66/7 66/21 70/1 73/21 74/3 77/18
102/20
**numerous [2]** 19/18 91/6

## O

**O'Connor [2]** 119/24 120/1
**oath [1]** 83/4
**object [7]** 46/8 81/4 81/6 81/11 110/7
123/23 129/14
**objected [5]** 46/9 81/16 81/24 83/22
124/2
**objecting [2]** 83/2 123/18
**objection [26]** 22/20 22/21 35/10 36/15
45/19 46/10 47/3 65/2 65/12 66/2
66/16 67/14 69/3 79/9 81/22 81/25
82/1 82/6 89/15 100/1 100/2 104/22
110/19 110/21 113/24 114/2
**objections [8]** 82/10 82/23 83/14 83/17
83/23 84/14 85/1 89/19
**objects [1]** 81/12
**obligations [1]** 116/16
**obviously [4]** 4/5 28/6 70/18 125/17
**occur [2]** 113/24 114/1
**occurred [4]** 37/9 53/24 113/12 113/20
**October [8]** 1/5 6/23 6/24 61/3 61/10
63/19 64/3 80/9
**off [10]** 5/7 5/10 8/23 44/7 44/22 51/12
102/21 102/21 107/9 124/17
**offender [4]** 31/7 81/13 82/13 82/20
**offense [4]** 67/6 82/2 82/15 116/9
**offer [2]** 56/24 57/2
**offers [1]** 43/1
**offhand [1]** 53/16
**office [17]** 1/18 4/8 7/17 17/16 27/9
33/1 34/20 35/6 40/21 40/22 44/14
50/24 52/4 52/12 119/1 125/5 127/16
**official [3]** 1/22 35/5 120/9
**Oh [8]** 2/23 25/6 40/12 42/1 46/5 60/13
81/15 113/18
**okay [227]**
**old [2]** 42/21 44/22
**onboard [1]** 91/2
**once [5]** 4/3 12/18 15/3 17/9 61/13
**one [124]** 3/11 3/21 4/16 6/21 10/8
10/18 10/20 10/20 11/2 11/2 11/12
11/23 12/22 12/22 13/21 15/25 16/1
17/20 18/11 18/12 23/7 23/12 23/13
23/15 24/2 24/16 24/19 24/20 24/25
25/8 25/13 25/20 25/22 26/7 26/7
28/19 29/1 29/21 29/25 30/1 30/9
30/10 30/10 30/24 31/2 31/10 31/14
32/5 32/5 32/20 32/21 33/8 34/6 36/3
36/4 36/7 37/16 37/20 38/7 39/15
39/16 40/19 41/7 41/8 41/9 41/12
41/19 42/21 44/14 44/22 45/17 47/22
48/24 49/7 56/1 56/3 56/14 61/6 63/2
65/14 67/13 67/16 68/1 68/3 68/24
70/24 72/2 72/3 74/14 74/25 75/12
77/9 78/19 80/11 80/23 81/1 83/20
95/8 101/18 106/5 106/6 108/22
110/25 113/18 114/14 114/20 114/21
116/11 117/5 118/7 120/1 120/10
120/16 120/16 121/13 123/7 123/22
126/5 126/14 126/15 126/21 129/8
129/18 130/18
**one's [3]** 24/14 24/15 29/21
**one-something [2]** 32/20 32/21
**one-year [1]** 129/18
**ones [2]** 70/11 74/4
**only [31]** 9/20 11/2 11/23 29/1 30/24
31/10 31/24 39/25 40/4 62/13 67/20

**O**

only... [20] 85/5 94/9 98/9 98/20 98/21
103/15 106/2 114/14 117/15 120/25
121/14 123/7 123/11 123/21 123/22
127/2 128/7 128/13 129/12 133/7
oops [1] 128/8
open [5] 23/16 26/2 34/21 40/25 41/2
operating [2] 6/21 7/7
opinion [5] 61/20 61/22 64/18 70/23
76/7
opportunity [4] 42/9 73/12 118/19
133/1
opposed [2] 62/15 86/15
option [1] 125/20
options [1] 82/22
order [12] 2/1 10/4 10/9 52/20 79/8
88/2 95/11 99/4 118/2 118/11 122/24
123/23
orders [1] 55/1
ordinary [1] 59/4
ore [1] 46/10
organization [3] 103/23 104/4 104/24
original [1] 17/12
originally [1] 5/6
other [41] 3/11 8/22 9/4 15/16 29/13
29/23 30/10 34/17 34/18 35/2 35/3
35/8 39/16 44/18 45/15 50/5 69/20
69/21 69/24 72/2 73/20 76/6 77/1
77/20 86/9 88/2 88/20 97/20 105/14
111/8 113/18 121/1 121/2 121/13
125/20 125/21 128/12 131/8 131/13
131/20 131/23
others [2] 11/13 31/25
our [13] 2/14 6/16 7/17 19/2 27/9 29/4
40/21 40/23 57/1 111/22 112/3 113/3
120/16
out [27] 3/21 6/16 8/18 9/3 15/3 15/24
18/2 18/19 18/20 31/22 40/25 41/12
42/14 42/25 44/19 56/16 64/7 74/1
76/21 78/1 82/3 84/15 87/12 98/9
126/23 128/6 133/4
outside [1] 111/10
overrule [2] 65/11 110/18
overruled [6] 47/14 66/18 67/15 79/10
104/19 104/22
overturned [1] 84/20
own [1] 51/24

**P**

p.m [5] 33/4 75/3 75/4 121/6 133/22
PA [1] 1/14
PACER [5] 50/2 50/7 54/15 54/17
54/19
packet [4] 73/24 101/21 119/20 127/20
page [24] 10/14 10/16 10/16 10/21
27/1 28/19 28/20 28/21 38/10 46/3
65/23 66/11 67/21 67/22 74/25 78/4
81/7 81/10 81/12 81/21 82/11 82/14
83/23 134/5
pages [4] 1/7 64/8 73/25 82/5
Palm [18] 6/9 6/17 27/9 33/21 33/21
38/24 39/17 40/22 43/12 43/13 43/16
43/17 43/22 43/25 44/16 49/23 56/18
67/8
panel [2] 73/6 75/7
paper [1] 59/7
papers [2] 63/10 80/3
paperwork [16] 42/10 42/11 42/11 50/2
51/14 52/12 63/1 64/3 64/4 64/5 64/6
69/18 79/12 87/11 87/15 130/7
paragraph [16] 38/2 38/14 56/16 65/22
65/23 67/4 71/25 77/21 77/21 81/12
82/12 82/14 82/15 89/11 89/16 91/4
paragraphs [1] 82/5

**P**

paren [1] 64/10
part [12] 27/23 59/3 61/16 68/20 81/21
87/22 82/2 82/2 82/10 82/21 82/22
116/10
particular [8] 25/9 25/9 25/11 25/12
31/23 41/1 42/8 103/20
parties [1] 3/10
pass [1] 88/2
passionate [1] 86/19
past [1] 133/9
PC [1] 63/2
pen [1] 87/17
penalty [8] 10/12 67/7 98/15 98/16
99/15 99/21 101/12 111/18
people [5] 18/20 41/11 41/16 86/9
132/23
performance [1] 91/11
perhaps [1] 3/8
period [2] 94/21 111/10
permission [3] 51/17 53/19 116/4
permit [1] 5/9
person [8] 41/12 61/15 63/9 63/11
87/25 88/24 110/16 116/9
personal [3] 27/19 82/20 110/9
personally [1] 7/15
personnel [1] 27/25
persuade [2] 62/1 62/1
pertaining [1] 30/13
pertinent [1] 29/4
PETITION [1] 1/10
petitioner [10] 2/12 37/25 38/15 39/24
47/8 48/13 92/8 108/24 115/11 133/17
Petitioner's [2] 21/15 48/12
phone [2] 63/8 99/10
phonetic [1] 97/7
photos [1] 55/13
physically [4] 58/21 58/24 87/16 98/1
pick [2] 50/25 52/12
picked [8] 15/5 17/2 18/6 34/15 42/24
51/10 51/13 57/25
picking [3] 4/24 34/4 107/12
pictures [2] 55/16 55/22
Pierce [5] 53/24 56/10 61/4 94/11
94/22
place [6] 9/19 16/17 43/24 54/18 113/9
125/1
placed [6] 31/16 85/10 126/3 126/3
126/16 127/2
plaintiff [1] 37/23
Plaintiff's [1] 22/8
play [1] 121/18
plea [21] 15/6 37/1 41/25 57/2 57/2
61/14 61/21 70/24 86/14 86/20 95/1
95/4 95/4 105/16 105/19 111/15
112/10 114/20 116/12 121/21 133/2
plead [6] 17/7 37/4 37/6 42/4 46/10
106/2
pleading [4] 15/9 57/3 67/11 107/2
please [7] 3/20 4/5 4/24 49/12 61/6
77/23 109/11
pled [5] 18/20 41/11 41/16 46/7 46/8
podium [3] 85/15 87/9 87/13
point [28] 6/21 8/6 9/19 18/22 40/24
42/16 43/19 53/8 54/15 54/24 58/19
63/12 66/17 67/19 75/7 75/25 78/1
80/12 83/3 83/25 84/4 96/9 97/13
100/14 101/7 101/10 101/11 112/19
police [2] 55/17 70/2
position [1] 83/13
position [1] 13/12
possibilities [2] 99/19 122/21
possibility [4] 57/16 57/22 95/1 107/2
possible [2] 101/3 133/2
post [1] 90/13
post-sentencing [1] 90/13

**P**

Potts [3] 25/7 25/9 55/20
powder [3] 104/8 104/9 104/10
power [1] 115/21
practice [1] 49/24
practicing [1] 49/22
pre [2] 21/23 22/4
pre-labeled [2] 21/23 22/4
prejudice [7] 128/5 129/21 130/4
130/24 131/5 131/9 131/10
prejudicially [1] 91/10
preparation [6] 49/25 50/6 60/13 71/2
90/2 102/2
prepared [4] 18/8 18/12 44/14 45/9
preparing [4] 52/18 52/19 60/8 90/19
present [4] 109/24 112/21 113/25
125/8
presentation [1] 96/14
presented [14] 62/4 63/13 64/2 76/9
81/5 81/6 96/12 101/18 103/17 111/11
116/3 116/21 122/14 122/15
presentence [4] 45/9 45/12 81/20
83/14
preserve [1] 128/15
preserving [1] 131/6
preventing [1] 82/17
previously [2] 6/1 111/11
prior [48] 4/10 8/7 8/18 9/18 14/19
18/8 31/10 35/24 46/7 46/11 50/23
51/15 69/6 69/11 73/17 73/18 75/24
89/2 93/16 95/11 95/13 95/14 95/16
96/14 97/13 97/21 97/25 98/4 98/6
107/18 107/25 110/4 110/24 111/4
116/11 117/4 117/9 117/14 118/3
118/3 120/23 122/17 126/3 129/14
132/13 132/14 132/18 132/24
priors [2] 56/17 97/25
prison [2] 42/12 56/18
private [5] 49/24 86/3 87/18 90/16 91/2
privilege [2] 110/8 110/12
probability [1] 131/10
probable [1] 70/1
probably [6] 5/19 15/2 44/21 103/15
106/13 124/9
problem [2] 3/3 104/20
procedural [2] 128/17 129/25
proceed [4] 109/20 110/1 112/8 112/14
proceeded [8] 45/7 79/16 80/3 80/24
100/12 109/22 111/22 112/18
proceeding [2] 110/4 111/11
proceedings [4] 48/19 131/11 133/22
134/11
process [1] 4/17
product [1] 110/12
progress [1] 59/2
prong [1] 123/16
pronouncement [1] 132/19
proper [2] 127/2 127/3
properly [6] 104/17 118/11 118/11
118/16 120/17 126/3
property [1] 70/2
prosecute [1] 91/6
prosecution [1] 36/25
prosecutor [4] 4/13 4/14 36/23 87/8
prosecutors [2] 4/16 43/24
prove [1] 43/1
provided [9] 19/15 21/7 51/1 69/25
71/2 74/7 87/14 96/1 117/5
providing [1] 87/4
PSI [17] 81/4 81/6 81/15 81/24 82/4
83/5 83/5 83/6 83/21 89/3 89/5 89/10
89/19 104/22 124/3 129/6 131/22
PSR [1] 85/1
pulled [1] 44/22
punishment [3] 64/9 82/18 116/10
purposes [10] 22/4 34/9 43/21 49/6

**P**

purposes... [6] 70/6 70/7 90/16 113/10 114/20 118/25
pursuant [1] 82/16
put [7] 19/22 20/14 20/21 24/5 33/1 72/6 77/1
puts [1] 8/13

**Q**

qualified [2] 79/14 80/2
qualifies [1] 79/20
qualify [3] 49/5 79/20 122/19
qualifying [1] 79/18
quantity [1] 103/15
question [27] 3/21 6/21 8/6 8/15 12/2 14/3 14/25 16/4 20/18 20/23 31/9 34/17 35/2 47/22 51/20 58/8 59/1 60/7 62/10 65/19 68/21 73/4 76/17 104/14 110/14 122/20 128/10
questioned [2] 112/23 113/10
questioning [2] 12/15 104/15
questions [6] 14/23 47/16 47/18 83/20 92/2 112/16
quite [1] 4/4

**R**

race [1] 3/23
raise [3] 46/13 128/18 130/23
raised [6] 105/12 129/12 129/17 130/6 130/19 131/1
range [1] 99/19
rather [2] 36/12 37/6
RC [1] 133/24
RD [1] 133/24
read [26] 20/22 20/22 20/22 20/22 55/8 74/21 75/2 75/4 76/4 80/12 80/16 82/12 82/25 91/3 91/14 91/19 91/24 100/21 100/23 105/12 119/23 119/23 128/1 128/20 129/6 130/8
reading [11] 20/11 20/12 65/22 65/24 68/12 68/21 77/12 81/19 96/10 102/17 108/12
reads [1] 37/22
ready [1] 18/5
realize [3] 59/21 60/11 98/6
really [2] 3/11 8/9
realm [1] 122/9
REALTIME [1] 134/15
reason [6] 8/13 13/22 59/11 116/10 128/4 131/9
reasonable [1] 131/10
reasonably [1] 126/6
reasons [2] 70/24 130/18
rebuttal [1] 49/1
recall [47] 4/20 5/3 5/16 5/20 8/19 9/23 16/17 17/1 17/15 24/25 32/21 36/12 41/13 49/1 53/2 53/3 54/21 72/13 72/17 72/22 73/4 75/6 76/9 85/7 85/7 85/10 87/21 88/23 90/19 94/7 95/8 95/8 96/2 96/5 96/8 98/23 99/11 99/14 100/6 100/24 100/25 107/1 112/6 112/11 113/16 113/18 130/1
recalled [1] 114/19
receive [8] 46/20 72/12 85/3 98/15 101/12 108/3 118/3 120/22
received [14] 52/4 55/8 74/15 74/16 76/2 76/3 76/7 88/5 88/8 105/7 118/4 131/13 132/13 132/13
receiving [3] 20/13 58/2 58/9
recently [2] 62/13 64/13
recess [2] 107/11 107/11
recessed [1] 48/18
recognize [11] 6/5 6/7 21/14 23/6 26/20 74/3 74/11 74/13 74/14 75/15

97/9
recollect [1] 74/17
recollection [20] 8/16 15/10 52/2 61/2 61/9 61/12 83/2 85/6 87/4 87/6 90/22 109/23 110/9 111/25 113/23 121/20 125/5 125/7 125/9 126/11
recollections [1] 110/10
recommendation [1] 133/20
record [34] 2/5 4/3 5/3 7/20 8/3 9/7 9/15 9/16 9/17 14/6 14/18 14/20 21/1 22/7 22/23 23/1 27/7 27/24 29/15 32/25 34/11 43/21 48/6 49/12 69/7 85/11 98/12 109/11 109/13 111/24 117/19 120/9 127/7 134/11
recorder [1] 124/17
recordings [1] 55/16
records [3] 20/25 22/20 55/17
redact [1] 41/14
redirect [2] 47/20 47/24
reduce [1] 111/17
refer [2] 29/16 89/11
referred [3] 38/24 88/18 91/25
referring [2] 34/23 81/23
refers [1] 88/19
reflect [11] 45/12 56/15 57/14 58/14 58/18 58/20 58/23 62/4 62/7 64/7 126/12
reflected [2] 45/14 58/17
reflecting [3] 42/11 48/5 85/17
reflection [2] 87/1 87/3
reflects [1] 27/19
refresh [4] 52/20 61/2 90/22 109/23
regard [1] 97/22
regarding [16] 37/9 45/19 54/24 55/13 55/21 58/15 69/5 82/12 85/11 87/4 99/12 100/7 104/23 114/12 116/5 125/11
regardless [6] 26/15 84/11 122/13 123/8 123/9 125/10
regards [6] 92/25 95/18 102/1 120/15
reinforced [1] 133/3
reiterated [1] 82/14
relations [1] 97/16
relatives [1] 110/16
relevance [2] 65/2 66/2
relevant [6] 12/16 12/17 13/9 20/15 26/18 130/21
relied [13] 11/23 16/8 18/25 26/14 28/7 30/25 31/11 31/14 52/20 54/22 64/24 68/23 79/7
relies [3] 23/21 26/8 118/7
rely [12] 10/20 10/24 11/1 11/6 28/18 28/23 67/5 67/24 78/16 78/18 82/3 95/10
relying [19] 10/3 10/9 10/17 10/18 11/17 11/18 11/21 11/24 28/10 35/16 35/25 66/1 66/23 68/3 68/24 114/15 121/11 123/18 123/21
remarks [1] 90/6
remember [44] 9/6 15/22 17/20 17/23 42/19 51/11 53/9 53/16 54/7 73/24 74/8 75/8 76/8 83/5 86/2 87/24 89/23 89/23 90/1 90/3 90/17 93/1 93/21 94/16 95/1 95/9 100/9 100/9 100/11 100/18 100/19 102/1 103/14 107/5 107/6 107/8 107/10 107/14 107/17 110/3 111/6 111/12 113/6 113/6
remotely [1] 12/16
rendered [1] 129/13
rental [1] 55/17
repeating [1] 100/18
replica [1] 76/16
report [7] 49/9 45/12 55/22 70/3 81/20 83/15 133/20
Reported [1] 1/22

reporter [5] 1/22 124/16 124/18 134/15 134/15
reports [2] 58/18 69/21
represent [2] 107/23 109/16
represented [7] 17/5 46/17 80/21 109/17 110/2 111/8 111/9
representing [3] 46/23 46/25 107/21
request [1] 46/20
requested [1] 90/23
require [2] 13/5 115/15
requirement [11] 13/14 13/14 28/6 29/3 29/22 33/14 47/5 84/12 117/1 118/20 120/10
requirements [3] 125/13 125/23 126/2
requires [6] 34/7 120/7 120/25 121/9 127/16 131/10
requiring [2] 55/1 117/22
requisite [1] 131/9
reschedule [3] 2/21 3/2 3/14
research [2] 33/16 41/5
researched [1] 80/25
resolved [1] 112/25
respect [6] 37/3 41/9 41/25 43/10 45/13 129/21
respective [2] 112/3 112/19
response [6] 25/10 81/20 81/22 86/17 89/18 105/5
rest [3] 108/24 115/9 115/11
restapled [1] 74/1
rests [1] 92/8
result [3] 10/13 84/15 131/24
results [1] 131/11
retained [1] 8/9
retiring [1] 3/16
retroactive [1] 84/20
returned [2] 87/21 112/5
review [16] 31/12 50/5 56/14 56/22 59/16 60/4 64/22 64/23 65/9 80/2 83/6 83/8 83/12 89/3 102/9 118/10
reviewed [4] 92/2 50/2 85/16 102/8
reviewing [6] 59/24 60/15 64/16 65/6 102/14 123/4
rid [1] 130/11
right [98] 2/11 3/4 3/12 7/25 10/24 11/14 12/20 13/15 13/18 19/21 21/5 22/16 24/6 25/2 26/19 27/12 27/20 29/8 31/13 33/10 35/9 35/14 37/8 37/11 37/19 38/9 38/13 38/21 40/13 40/16 41/8 41/19 42/20 43/4 44/11 54/20 57/24 58/2 60/6 60/15 62/16 67/20 72/1 72/3 72/22 73/15 76/2 77/3 78/11 81/4 81/16 84/25 85/5 87/13 87/14 88/14 88/23 89/22 90/18 91/17 92/25 93/8 94/7 94/14 94/16 97/2 99/3 100/24 101/14 101/17 101/24 102/21 102/21 102/24 103/1 103/10 107/5 107/7 107/18 107/25 108/3 108/6 108/7 108/17 109/20 113/5 114/25 117/10 119/19 120/1 120/5 120/19 127/13 127/18 129/2 129/5 130/15 130/25
road [1] 84/22
Robert [6] 5/21 48/22 49/13 93/2 129/13 134/1
role [2] 31/6 82/7
roll [1] 133/5
rolled [1] 42/12
room [9] 1/23 73/7 73/8 86/3 86/10 87/20 107/9 112/20 113/1
rooms [1] 112/5
roughly [2] 61/19 63/23
Ruben [1] 110/2
rule [5] 2/15 2/17 3/7 49/6 132/16
Rule 851 [1] 132/16
run [1] 36/13

**R**

**running** [1] 43/24

**S**

**safe** [1] 41/19
**safely** [1] 121/4
**said** [34] 2/24 9/17 12/13 15/23 15/25 18/3 18/11 18/12 23/17 42/2 42/17 42/25 43/5 54/10 56/24 62/12 62/23 72/12 74/15 76/12 76/25 77/11 80/10 85/7 87/11 95/12 98/3 99/14 105/7 105/15 105/25 107/21 111/14 121/7
**sale** [3] 39/17 67/16 68/1
**sales** [2] 68/13 68/15
**same** [26] 6/20 18/16 18/17 18/24 18/25 19/19 24/17 24/21 26/9 26/9 27/16 35/16 35/18 35/21 39/8 41/16 42/11 51/25 52/7 65/23 67/22 73/21 74/4 77/16 88/6 103/21
**Sandy** [1] 6/20
**saw** [9] 55/24 60/9 62/14 108/10 108/12 114/17 114/18 132/7 133/9
**say** [40] 12/14 20/21 24/21 39/10 49/2 51/23 52/24 54/18 56/11 57/23 60/2 63/8 66/5 69/10 69/14 69/20 74/23 75/4 76/25 78/5 83/4 84/7 85/23 94/19 103/18 112/18 113/8 113/11 113/21 115/16 127/15 127/15 127/17 127/20 128/8 128/12 130/14 132/10 132/11 132/23
**saying** [7] 8/12 12/7 12/15 13/8 13/22 13/23 34/22
**says** [45] 8/3 9/24 10/19 10/21 11/10 11/15 11/24 12/13 19/11 20/15 23/14 24/18 24/20 24/20 24/25 25/14 25/20 25/22 26/7 26/18 27/13 28/9 28/22 29/2 32/20 41/2 62/15 64/9 66/10 67/3 67/21 68/6 68/15 70/15 71/25 74/22 78/20 97/2 118/23 128/6 128/7 128/13 131/3 131/4 132/17
**scenario** [1] 124/20
**searches** [1] 55/15
**seat** [2] 2/2 87/14
**seated** [1] 87/13
**second** [55] 6/20 10/20 10/24 11/1 12/18 12/23 17/14 18/24 21/6 22/3 30/14 35/13 35/17 35/19 36/2 36/7 38/22 41/7 41/9 48/2 51/7 55/4 56/14 61/6 67/3 68/4 73/5 73/15 73/18 74/15 75/3 76/20 76/24 77/3 78/2 78/4 78/17 83/20 85/8 91/3 91/4 101/18 120/11 120/15 120/16 121/7 121/18 123/13 123/20 123/24 124/8 126/20 127/4 132/21 132/22
**secondary** [2] 21/18 72/3
**secondly** [2] 117/8 123/24
**secretaries** [1] 44/20
**secretary** [1] 44/18
**section** [5] 59/8 81/20 82/8 82/10 82/21
**secure** [2] 10/4 10/9
**see** [26] 13/1 26/1 31/12 65/9 70/19 72/6 74/10 74/22 78/10 90/6 95/13 97/9 97/11 97/24 98/4 99/3 99/4 100/14 100/16 101/1 101/8 102/11 102/23 102/25 119/14 130/9
**seeing** [5] 76/10 96/2 96/8 100/11 100/19
**seek** [2] 67/6 111/18
**seem** [1] 126/14
**seems** [4] 8/20 11/25 125/12 126/14
**seen** [9] 74/4 85/19 91/25 96/15 96/19 97/13 105/12 114/17 119/20
**seized** [1] 55/14

**selected** [1] 127/6
**selection** [13] 24/13 48/2 63/16 73/2 73/5 73/7 85/23 87/7 111/7 111/4 111/5 113/10 121/23
**send** [2] 16/6 127/22
**sense** [1] 43/20
**sent** [6] 8/17 9/8 9/13 39/7 39/12 75/23
**sentence** [44] 10/4 29/6 31/1 31/10 40/7 45/20 45/25 60/5 60/19 61/25 62/1 64/7 66/12 68/19 69/12 79/8 91/4 92/23 93/14 95/7 95/11 95/22 97/17 101/2 101/7 101/9 102/6 105/24 106/6 106/10 106/11 106/12 106/22 116/6 122/3 122/25 123/22 125/16 125/16 125/24 126/13 129/1 129/15 132/19
**sentenced** [4] 116/10 122/22 129/4 131/12
**sentences** [6] 38/18 45/13 46/15 91/4 129/11 129/11
**sentencing** [46] 5/4 24/9 28/23 40/5 45/7 45/19 46/18 55/19 67/5 69/12 70/7 81/5 81/8 81/14 81/18 82/18 82/18 82/21 82/23 83/7 83/12 84/4 84/18 89/2 89/2 89/22 90/2 90/7 90/10 90/13 97/23 100/24 101/1 101/4 104/25 106/9 108/7 113/25 118/16 126/12 126/15 126/12 126/20 128/20 129/3
**separate** [1] 20/1
**September** [68] 4/22 4/25 5/19 5/23 6/9 6/21 7/3 7/5 7/13 7/23 8/1 9/16 10/8 15/17 15/18 18/10 19/11 22/11 23/20 37/15 39/8 49/19 50/9 50/12 50/15 50/17 50/18 50/24 51/11 51/12 52/1 52/8 52/10 52/12 53/5 53/7 53/10 53/23 53/25 54/2 54/4 54/10 54/11 54/23 55/6 55/9 55/11 55/12 55/25 56/8 56/9 56/9 56/11 57/7 57/8 57/24 58/5 58/10 62/5 63/18 65/7 80/13 94/10 94/10 94/10 98/20 117/24 118/7
**serious** [1] 46/12
**served** [9] 7/19 7/24 27/12 27/15 30/9 30/10 33/14 85/17 132/12
**service** [6] 27/1 27/1 27/5 27/11 27/19 75/21
**set** [1] 86/15
**seven** [3] 9/17 14/19 45/16
**several** [1] 129/8
**shall** [1] 116/10
**she** [17] 12/8 13/23 13/25 14/23 20/15 26/18 40/24 44/10 44/19 49/5 87/24 104/13 110/24 111/14 111/17 111/18 124/25
**she's** [4] 3/15 3/15 110/13 110/14
**sheet** [6] 8/5 9/5 23/7 24/8 26/1 70/2
**shocked** [1] 129/4
**shooting** [1] 129/8
**shootings** [2] 129/8 131/22
**should** [13] 3/8 60/5 61/20 64/10 82/9 82/15 106/10 124/9 127/5 129/3 129/4 132/4 133/10
**show** [17] 5/25 5/25 26/16 51/17 63/4 73/15 74/10 88/7 89/10 90/18 95/21 97/8 100/10 100/10 101/17 131/5 131/8
**showed** [8] 22/17 52/7 58/24 69/13 91/19 95/9 105/8 108/11
**showing** [3] 22/14 63/10 132/1
**shown** [4] 117/21 118/18 131/2 132/6
**sic** [3] 2/4 44/16 54/23
**sick** [1] 44/19
**side** [4] 72/6 72/6 107/9 112/20
**sign** [2] 45/10 45/14
**signature** [2] 75/15 134/15
**signed** [7] 23/8 40/20 44/7 75/12 75/14

**signs** [1] 122/6
**similar** [3] 76/25 119/11 120/3
**simply** [2] 35/2 73/25
**simultaneously** [1] 68/23
**since** [11] 3/7 3/15 4/9 9/19 19/4 40/23 90/9 93/12 113/4 118/17 118/18
**single** [1] 131/15
**singular** [1] 67/6
**sir** [57] 49/9 49/12 52/16 60/20 60/22 64/15 71/4 71/14 71/25 74/12 76/1 77/8 77/23 78/23 79/2 79/5 80/6 81/25 85/9 92/7 92/16 92/18 92/22 92/24 93/7 93/10 93/15 93/19 94/1 94/4 94/6 94/13 94/15 95/20 95/24 96/4 96/7 96/13 96/17 96/24 97/1 97/12 97/14 97/18 98/7 98/11 100/13 101/5 101/8 101/16 102/3 102/7 110/22 112/15 114/4 115/3 115/6
**sit** [1] 87/25
**sitting** [4] 80/21 88/24 111/7 133/21
**situation** [2] 120/3 125/14
**six** [1] 45/16
**slightly** [2] 29/19 41/15
**small** [1] 45/18
**some** [28] 5/9 5/18 8/22 11/13 18/21 40/24 41/11 45/14 50/2 55/12 55/17 55/20 63/12 69/16 69/17 69/24 82/16 82/20 99/5 99/5 106/15 106/23 109/23 111/10 111/24 117/4 128/11 129/20
**somebody** [3] 75/15 88/2 129/4
**someone** [7] 18/19 19/22 20/12 20/16 40/24 43/13 106/4
**someone's** [1] 13/9
**something** [18] 2/25 9/4 11/5 18/2 32/20 32/21 37/4 47/5 50/16 77/22 99/22 106/13 113/20 115/17 128/16 129/9 129/9 130/16
**something's** [1] 49/1
**sometimes** [3] 63/18 94/10 127/8
**sometimes** [2] 8/8 8/11
**somewhere** [3] 5/1 32/10 32/23
**soon** [2] 83/10 133/20
**sooner** [2] 2/25 124/9
**sorry** [22] 2/3 2/23 10/14 22/8 22/16 33/5 33/6 45/3 47/17 49/16 54/10 55/7 61/24 65/18 68/11 76/18 76/22 77/24 84/2 96/15 97/20 115/4
**sort** [11] 3/16 52/3 54/6 59/8 77/16 85/14 86/4 86/9 87/9 87/12 132/20
**SOUTHERN** [1] 1/1
**speak** [3] 58/2 73/12 89/22
**speaking** [3] 79/25 80/1 86/2
**speaks** [2] 12/9 13/10
**specific** [5] 5/16 54/7 78/2 83/1 116/24
**specifically** [7] 5/3 81/11 82/19 91/8 117/1 117/22 121/8
**specify** [1] 64/1
**spell** [1] 109/11
**spoke** [12] 12/13 14/25 15/2 15/14 15/23 50/2 50/3 61/3 61/15 61/23 85/22 110/11
**staff** [1] 112/12
**stamp** [21] 6/8 6/10 7/9 32/17 32/19 33/1 33/21 33/24 34/19 35/3 35/4 35/4 39/8 51/24 51/25 52/4 52/4 52/7 76/5 76/13 120/8
**stamped** [10] 10/8 17/15 51/10 51/23 52/9 75/2 76/6 119/1 121/2 124/6
**stand** [1] 116/9
**standard** [1] 116/8
**standpoint** [1] 80/4
**staple** [1] 74/1
**stapled** [1] 73/25
**start** [6] 31/18 37/5 37/12 86/24 88/12

**S**

**start...** [1] 111/5
**started** [4] 2/20 6/23 34/4 98/21
**starting** [1] 122/6
**state** [10] 4/5 23/23 26/12 35/24 49/12 49/23 91/18 95/6 109/11 129/10
**stated** [2] 4/6 84/18
**statement** [10] 9/2 14/24 58/25 70/9 85/4 86/12 100/25 108/9 114/19 120/2
**STATES** [15] 1/1 1/6 1/11 1/22 2/3 2/4 2/7 25/4 25/4 25/8 37/23 67/5 109/15 116/12 119/4
**stating** [1] 71/15
**statute** [3] 117/1 129/18 132/17
**statutorily** [2] 84/15 122/3
**statutory** [16] 11/13 31/10 31/16 31/20 31/21 60/2 60/18 79/22 84/12 84/23 118/14 121/19 122/2 125/23 131/14 131/19
**stay** [1] 4/23
**stays** [1] 34/14
**step** [2] 3/20 17/6
**step-brother** [1] 17/6
**steps** [1] 49/25
**still** [4] 5/7 48/25 84/11 133/14
**stood** [1] 87/8
**straight** [2] 44/1 85/12
**Street** [1] 1/18
**strength** [1] 115/22
**stress** [1] 116/14
**stressed** [1] 116/16
**Strickland** [1] 123/15
**strict** [12] 12/25 13/6 13/13 116/5 116/16 116/25 116/25 117/12 120/7 120/24 125/12 125/13
**strictly** [1] 116/7
**strike** [2] 76/23 97/20
**stuff** [2] 69/21 99/5
**subject** [1] 36/1
**subjected** [1] 59/25
**submission** [1] 48/6
**submitted** [9] 14/12 14/13 16/14 26/23 46/6 118/6 118/7 123/25 126/21
**subsequent** [9] 14/7 14/9 14/24 16/15 51/6 53/10 59/16 74/15 128/10
**successfully** [2] 10/22 67/23
**successive** [3] 36/3 36/5 121/7
**such** [1] 123/17
**sudden** [1] 129/10
**sufficient** [11] 12/4 20/20 34/9 35/8 64/17 69/6 70/16 122/25 125/3 125/4 127/21
**Suite** [1] 1/15
**summation** [1] 125/25
**superseded** [3] 18/19 18/22 41/11
**superseding** [1] 55/3 55/4 55/4
**supplemental** [4] 55/20 119/16 119/17 119/20
**support** [1] 85/19
**supporting** [3] 69/9 69/10 69/19
**Supreme** [1] 128/10
**sure** [25] 3/23 6/3 21/12 26/17 26/18 32/15 33/17 39/9 41/6 41/6 49/5 50/14 52/22 53/20 54/9 54/17 54/18 61/21 66/24 72/6 73/19 77/1 88/1 90/24 124/13
**surprise** [3] 89/8 90/3 128/22
**surprised** [3] 106/9 106/11 126/12
**suspenders** [1] 41/20
**Sustained** [1] 35/11
**SW** [1] 1/15
**sway** [1] 115/22
**swear** [4] 54/8 75/10 83/1 89/24
**sworn** [17] 3/19 32/22 33/8 34/2 48/23

72/18 72/21 73/1 75/7 92/12 101/23 102/1 109/7 120/18 121/3 124/1 127/9

**T**

**T-R-O-C-I-N-O** [1] 47/2
**table** [1] 111/7
**tables** [1] 111/13
**take** [18] 12/25 13/1 17/22 29/10 42/17 46/3 48/16 86/14 86/20 105/19 112/10 118/4 123/6 124/8 124/10 124/10 125/1 133/5
**taken** [6] 18/19 18/20 49/25 64/7 112/1 124/9
**taking** [5] 43/1 107/1 115/25 121/4 122/7
**talk** [6] 17/21 42/7 42/18 72/3 112/2 132/3
**talked** [7] 15/7 42/1 77/18 105/16 107/25 122/9 126/10
**talking** [14] 23/2 31/18 31/19 31/20 31/21 65/4 65/4 62/17 84/7 95/3 95/3 95/4 95/12 120/14
**tandem** [1] 121/9
**tape** [1] 124/17
**taps** [1] 55/1
**telephone** [2] 59/12 61/15
**tell** [7] 10/17 10/18 37/13 58/21 68/9 72/11 110/9
**telling** [1] 56/9
**tells** [1] 128/16
**ten** [6] 15/11 32/7 42/22 45/17 56/20 64/10
**ten-year** [1] 32/7
**tenus** [1] 46/10
**term** [6] 15/9 17/7 37/6 122/10 122/11 122/11
**terms** [2] 8/22 69/6
**testified** [16] 3/19 36/22 43/11 48/23 89/25 92/12 102/23 103/8 105/22 109/7 111/11 114/11 117/13 117/13 121/15 125/8
**testify** [3] 3/5 3/8 98/10
**testifying** [1] 41/17
**testimony** [22] 26/5 31/14 34/8 63/12 71/2 104/16 105/25 106/25 108/14 116/2 117/8 118/4 120/22 122/7 124/25 125/10 132/4 132/6 132/9 132/23 133/7 133/8
**than** [21] 9/4 18/14 28/25 29/13 34/18 35/3 36/12 37/4 37/6 42/4 42/23 44/18 45/16 45/17 73/20 76/6 88/2 97/20 121/2 129/22 132/2
**thank** [35] 2/2 2/21 3/13 4/3 36/9 36/10 47/15 48/9 48/10 48/11 48/17 48/20 49/4 51/19 59/15 65/13 71/8 86/23 88/4 91/12 91/21 92/3 92/6 109/4 110/23 113/13 114/3 115/3 115/3 115/7 127/12 127/14 133/16 133/19 133/21
**Thanks** [1] 128/1
**that** [757]
**that's** [68] 7/14 7/24 8/3 11/10 13/16 13/23 20/23 22/15 23/9 25/19 25/23 27/13 28/11 28/24 29/2 34/19 35/6 36/14 39/1 40/9 42/8 44/1 52/15 57/14 57/23 58/25 59/19 59/20 61/5 66/10 67/21 70/22 71/25 74/1 75/12 76/19 78/20 78/23 79/15 79/16 81/22 84/13 88/18 90/25 94/12 96/10 97/4 101/23 114/1 115/1 116/1 116/15 117/5 117/5 117/11 120/6 120/23 122/1 122/11 122/14 122/23 122/23 123/3 123/14 124/15 125/3 133/19 133/21
**their** [9] 17/8 17/11 17/21 42/3 42/7 90/17 133/2 133/4 133/4

**them** [30] 17/7 17/18 17/18 23/1 39/15 61/13 62/11 62/1 62/9 62/19 62/18 62/21 64/21 62/2 93/6 68/13 90//51
72/6 77/1 80/11 102/25 105/11 106/5 106/5 106/23 108/10 108/15 111/15 119/20 132/10
**themselves** [1] 21/1
**then** [38] 6/15 7/6 8/3 10/12 10/23 11/1 11/5 12/12 12/23 12/25 23/17 29/25 39/13 40/16 43/2 44/24 53/25 54/18 56/9 65/22 67/7 82/8 82/15 82/20 82/21 84/21 86/7 87/18 87/18 91/1 94/23 105/14 105/25 111/3 122/1 130/24 132/9 132/22
**there** [95] 5/9 5/22 6/16 7/8 7/19 8/22 12/18 12/19 16/14 17/5 18/21 23/11 30/24 31/4 32/17 32/18 32/19 33/22 34/17 35/2 41/7 41/12 42/4 44/19 45/19 45/21 46/25 50/21 51/3 51/4 51/8 51/9 51/9 52/13 53/21 56/11 59/11 60/9 60/16 61/3 63/1 63/2 65/8 65/18 65/20 67/12 69/5 69/24 70/16 70/19 71/12 77/15 80/19 80/23 83/17 87/1 87/10 87/16 91/1 93/5 94/9 98/12 98/13 99/12 110/2 110/25 111/7 111/8 112/2 112/22 114/11 116/18 116/24 117/20 118/23 118/24 121/1 121/2 121/16 124/1 124/2 124/21 125/20 125/20 127/19 128/5 128/6 128/9 129/20 129/20 129/21 131/9 132/1 132/25 133/12
**there's** [20] 24/7 32/19 34/11 35/8 37/19 46/23 50/11 77/21 81/20 85/16 87/3 97/8 113/20 118/21 120/1 120/20 121/1 122/20 129/16 130/3
**therefore** [1] 122/1
**thereto** [1] 91/24
**these** [10] 12/22 19/3 22/19 38/23 40/4 63/13 66/5 69/11 119/17 130/13
**they** [93] 6/15 8/21 13/5 14/15 17/7 18/2 18/3 18/5 19/20 20/13 22/10 24/23 25/1 26/13 27/16 28/5 29/16 29/17 29/17 30/16 33/1 38/16 42/1 42/6 42/11 42/12 42/15 42/19 42/19 42/21 42/22 42/22 42/25 42/25 43/1 43/5 44/20 44/21 44/24 45/1 46/16 51/23 62/7 62/23 63/6 63/2 63/25 64/1 66/22 67/7 67/24 68/19 68/24 68/25 69/1 72/7 73/8 73/19 73/19 73/22 78/14 78/18 78/24 78/25 91/25 95/10 95/16 98/5 104/5 104/7 105/12 106/24 111/7 112/23 113/4 113/7 113/7 113/22 113/23 114/15 115/18 119/18 121/11 122/25 123/12 126/22 126/24 128/8 128/12 130/4 133/3 133/4 133/6
**they're** [21] 22/20 22/25 24/19 29/12 29/19 30/7 30/12 30/15 30/15 40/10 68/3 68/13 68/14 68/15 68/17 68/18 68/19 68/20 126/24 127/20 128/14
**thing** [5] 77/16 103/15 103/21 105/14 131/8
**things** [2] 41/15 55/7
**think** [93] 5/6 5/8 6/18 13/4 13/8 16/20 17/6 18/19 18/21 20/19 20/24 21/20 25/8 26/8 29/4 31/5 31/7 31/18 31/22 31/22 32/23 41/14 42/19 45/18 49/18 49/19 50/10 50/13 50/13 50/15 50/24 51/9 51/10 51/13 52/3 52/11 53/3 53/24 54/7 54/17 57/3 60/12 61/3 64/8 64/16 65/25 68/1 70/18 72/14 72/19 74/14 77/20 79/11 79/18 80/19 80/20 83/4 83/9 84/18 87/24 89/18 90/9 91/1 94/9 95/5 97/7 101/22 102/13 102/14 103/14 103/22 106/10 109/19 110/11

**T**

think... [15] 714/18 114/22 116/24
119/23 121/17 123/3 123/14 125/3
125/25 126/1 126/14 126/16 127/2
128/13 128/25 129/2 129/3 129/8
133/9
thinking [2] 68/8 70/15
third [5] 17/24 55/4 91/4 110/2 126/21
this [123] 2/3 2/21 6/8 7/1 7/7 8/6 8/18
9/9 9/19 10/13 12/2 12/15 13/5 13/13
13/22 15/3 15/15 15/17 17/8 17/11
17/18 18/7 18/7 18/9 18/22 20/13
21/15 23/7 23/11 24/2 24/14 26/24
28/6 28/19 28/25 29/3 32/13 33/19
37/8 37/14 37/16 38/22 39/1 40/24
41/1 41/3 41/13 41/22 42/3 42/3 42/6
43/19 44/1 44/21 47/7 47/8 49/7 51/25
52/18 52/19 56/16 56/23 57/7 60/8
61/10 62/15 62/19 64/7 64/24 64/25
65/4 65/14 66/1 66/16 68/12 69/4
70/14 71/9 72/14 74/14 75/14 77/25
81/20 84/3 90/25 96/11 96/14 96/19
100/16 102/14 106/5 106/6 109/4
111/11 111/14 112/19 112/20 112/21
112/25 113/8 113/9 113/22 115/4
116/9 119/16 119/24 120/13 125/15
126/7 126/25 127/7 127/20 127/25
128/15 128/18 129/12 129/17 129/22
129/25 130/19 131/6 133/14 133/20
those [47] 2/23 13/17 14/15 22/23
23/15 29/18 30/7 30/8 30/14 31/23
38/11 38/14 39/17 39/25 47/16 47/18
51/21 55/7 55/24 56/7 56/14 62/21
62/25 63/4 66/6 69/19 70/6 71/16 74/3
74/5 84/25 86/18 91/19 97/15 98/1
98/2 98/8 98/23 99/9 102/19 112/4
116/24 118/16 122/21 122/24 123/5
125/21
though [2] 11/25 91/21
thought [27] 5/6 12/4 12/8 58/8 60/4
61/20 67/16 68/7 68/25 70/23 74/6
80/3 80/23 81/19 84/13 84/17 84/25
85/12 85/13 87/24 88/1 90/15 102/17
105/24 106/1 130/6 130/6
three [12] 21/16 30/3 30/13 30/14 42/4
44/19 48/16 65/23 74/25 80/19 81/22
132/23
three-part [1] 81/22
through [13] 1/7 28/22 36/13 37/11
43/22 54/22 82/5 82/5 83/23 86/4
106/18 122/18 130/8
Thursday [1] 1/5
time [74] 5/4 6/21 9/20 14/20 15/24
16/14 17/21 32/19 33/2 33/23 34/19
35/3 35/9 40/23 41/4 41/5 41/8 41/9
42/6 42/15 50/20 53/4 57/10 58/14
58/22 59/6 59/10 60/7 61/15 61/16
61/23 62/18 64/25 64/25 68/8 72/2
72/13 72/19 72/17 72/19 74/19 75/6
77/17 80/16 81/10 83/25 87/15 88/1
89/2 91/1 93/5 96/9 101/4 106/24
107/1 111/10 111/15 111/24 112/19
113/25 114/1 115/8 117/4 117/10
117/25 121/22 123/8 123/10 123/25
123/25 126/12 129/15 129/18 132/18
time of [1] 123/25
timely [1] 118/22
times [10] 5/3 59/11 80/11 94/18
94/18 94/19 94/23 98/22 98/24 99/2
today [12] 60/11 71/2 92/21 105/15
106/25 108/9 108/13 108/14 114/18
116/3 116/18 133/10
today's [3] 49/25 50/6 60/13
together [2] 90/15 90/16

told [15] 11/6 17/6 17/18 57/1 66/3
95/12 97/24 99/21 101/1 101/8 105/19
105/21 106/22 112/7 112/9
too [1] 107/21
took [7] 16/17 74/1 79/15 87/15 87/16
91/2 113/9
top [5] 10/16 28/20 28/21 66/11 74/22
Torres [2] 82/16 84/18
totality [1] 70/20
totally [1] 123/2
towards [2] 95/16 126/8
transaction [1] 32/9
transcript [12] 1/10 81/17 81/18 82/25
83/13 84/19 90/10 125/17 125/18
128/21 134/5 134/10
transition [1] 129/10
trial [80] 4/22 16/18 17/14 18/3 21/8
37/5 42/5 43/11 45/5 46/17 49/19
61/17 63/15 72/2 72/8 72/12 72/20
72/20 77/4 80/20 80/24 82/4 84/1 85/6
87/6 88/9 88/12 89/24 89/25 91/7
91/10 94/5 94/14 94/20 95/23 96/3
96/16 97/13 98/21 99/11 99/13 99/22
100/6 100/12 100/15 102/6 103/8
103/17 104/16 104/25 105/4 106/1
107/1 109/18 109/20 109/22 110/1
110/4 110/25 112/8 112/9 112/14
112/18 112/24 116/11 116/15 117/11
117/11 120/20 120/23 121/16 123/25
124/18 125/17 128/18 129/13 130/9
132/6 132/24 133/5
tried [3] 4/14 40/22 62/1
trier [1] 130/11
trigger [1] 121/19
Trocino [1] 47/2
true [1] 37/21
try [2] 59/10 59/12
trying [13] 4/17 9/1 13/16 17/3 30/15
30/16 31/21 43/25 61/14 76/4 92/23
101/17 104/16
twice [2] 56/18 70/18
two [67] 10/6 10/7 10/9 10/17 10/21
11/12 11/12 11/17 11/17 23/11 23/15
23/23 24/14 24/21 26/9 27/14 27/16
28/11 28/19 28/20 29/13 31/23 32/2
35/23 41/14 42/5 44/14 46/12 46/25
48/12 51/10 51/13 58/12 65/14 65/17
65/20 65/22 66/6 66/21 67/13 68/15
68/17 68/19 68/22 69/9 69/25 70/11
79/7 84/25 88/19 91/1 91/18 94/18
94/23 98/22 98/23 99/2 114/15 114/23
116/18 116/18 120/10 121/8 121/11
121/24 123/8 123/16
two-fold [1] 120/10
two-prong [1] 123/16
type [5] 38/6 52/4 75/1 79/15 86/10
type-over [1] 38/6
typing [2] 26/7 28/7
typographical [1] 38/6

**U**

U.S [4] 1/18 4/7 4/9 6/17
ultimate [1] 122/12
under [9] 10/5 13/24 82/7 83/4 116/9
123/15 125/13 131/3 131/3
underlying [3] 21/1 52/14 70/6
underscoring [1] 126/9
undersign's [1] 91/10
undersigned [2] 91/7 91/9
understand [10] 12/6 13/5 13/12 24/14
43/20 65/17 66/4 66/9 72/25 93/13
understanding [23] 7/22 11/16 14/5
14/21 33/7 33/13 35/4 35/7 35/19 65/1
66/21 76/20 79/25 81/1 83/25 84/3
85/2 91/20 98/8 101/10 101/11 102/6

123/10
Understood [5] 23/3
unfortunately [1] 129/19
UNITED [15] 1/1 1/6 1/11 1/22 2/3 2/4
2/7 25/4 25/4 25/8 37/23 67/4 109/14
116/12 119/4
unless [4] 51/20 115/14 116/11 124/17
Unsure [1] 53/5
until [21] 17/16 34/12 37/4 60/11 61/18
72/2 100/16 100/19 100/21 100/22
102/11 105/8 105/12 112/18 112/25
115/8 117/4 125/4 125/21 127/8 130/13
untimely [2] 121/11 127/4
up [27] 3/20 4/24 14/22 15/5 16/4
17/22 18/1 20/24 24/13 37/4 44/7
44/15 45/2 45/15 47/5 50/25 51/10
51/13 52/12 53/21 57/25 72/25 80/20
83/10 109/4 112/18 128/15
upheld [1] 120/9
uploaded [2] 81/9 81/10
upon [24] 10/4 11/24 16/8 18/25 26/14
28/8 28/10 28/23 30/9 30/25 31/11
31/15 52/20 54/22 60/15 64/16 64/24
67/5 68/23 79/8 82/3 90/24 91/10
110/25
us [12] 2/21 3/2 3/14 3/21 11/22 12/23
29/23 33/23 86/2 87/17 111/14 113/3
USA [1] 25/14
use [7] 21/24 22/7 22/23 68/25 69/1
78/14 123/12
used [5] 59/6 68/14 69/11 83/1 124/17
uses [1] 78/12
utilized [6] 68/18 97/22 122/24 122/25
123/7 123/22

**V**

vacate [1] 92/23 116/6
valid [1] 30/16
value [2] 121/4 123/6
Variety [1] 106/4
various [2] 55/15 80/10
vehicle [1] 55/21
verbatim [2] 56/23 80/12
verify [1] 118/2
versions [2] 23/12 24/14
versus [11] 2/4 25/4 25/5 25/8 31/16
37/23 109/15 114/15 119/4 121/13
125/16
very [16] 11/16 17/11 18/24 18/24 37/4
44/25 48/10 91/12 92/3 92/6 105/3
114/3 114/13 115/3 123/14
vicinity [1] 5/1
videos [1] 55/15
view [2] 12/8 64/11
Villafana [3] 1/17 2/7 134/7
violence [1] 131/23
violent [1] 131/24

**W**

waiting [1] 42/24
waived [1] 110/8
walked [2] 73/7 74/16
want [34] 2/21 3/13 5/25 11/15 20/21
21/24 22/5 22/6 22/25 23/1 28/4 29/2
31/13 33/12 49/6 57/2 57/2 57/3 64/18
64/22 64/23 78/1 83/6 83/7 86/20 90/6
90/7 111/20 112/10 115/14 115/18
124/8 124/10 128/16
wanted [8] 15/8 17/7 18/3 41/6 41/19
42/6 85/2 112/8
wants [4] 57/3 57/5 115/16 130/11
was [510]
wasn't [18] 9/5 35/22 41/4 46/6 46/9
56/12 70/22 106/14 111/17 111/18
118/18 119/12 119/13 120/17 121/5

**W**

**wasn't [3]** 127/4 127/5 127/8
**water [1]** 43/23
**way [17]** 3/11 11/22 70/7 70/14 79/15 79/16 101/9 112/24 113/12 113/18 113/23 114/18 118/1 123/10 123/11 126/25 130/13
**we [86]** 2/14 2/15 5/6 5/6 5/18 6/15 6/16 6/23 8/14 10/12 10/20 11/1 11/6 11/6 11/21 12/18 12/21 12/21 12/25 12/25 15/6 17/3 18/6 18/18 18/19 18/22 19/6 22/23 25/17 28/10 31/18 31/22 31/22 32/23 34/4 37/12 38/6 41/11 41/12 41/13 41/14 41/15 41/17 42/2 42/23 43/21 43/21 46/7 46/10 48/25 70/13 77/10 77/18 79/20 86/7 87/10 87/10 87/19 87/20 90/9 93/23 108/22 109/2 109/22 111/22 111/24 111/24 115/12 116/2 116/17 117/25 118/3 118/17 118/18 119/3 119/23 120/8 120/25 121/4 123/6 128/1 128/9 128/13 130/22 131/4 132/22
**We'd [1]** 2/15
**we'll [2]** 115/20 118/4
**we're [21]** 12/23 13/16 23/2 26/11 31/18 31/19 31/19 31/21 47/4 47/6 79/19 79/23 83/9 104/16 116/4 120/13 120/14 126/4 129/18 131/6 132/9
**we've [2]** 36/22 80/22
**wearing [1]** 113/7
**Weaver [1]** 122/16
**Wednesday [1]** 134/13
**week [3]** 15/2 15/11 15/12
**welcome [2]** 4/4 36/11
**well [38]** 3/14 4/5 8/8 12/17 20/17 22/3 22/6 29/20 30/3 30/3 30/6 31/18 33/22 34/7 38/7 45/14 63/18 68/17 70/10 79/11 84/4 84/17 84/23 88/15 90/24 104/15 106/16 111/6 113/22 120/3 120/14 122/15 123/20 124/24 128/19 129/18 131/22 132/11
**went [23]** 17/4 17/23 17/24 17/25 42/19 50/24 56/21 63/6 64/3 79/12 79/13 80/10 87/18 88/11 89/17 94/25 96/2 99/3 112/2 112/20 117/9 117/14 122/18
**were [130]** 4/14 6/15 6/15 6/16 10/3 11/17 11/21 12/22 13/3 13/17 14/11 16/8 17/3 18/5 18/21 19/15 19/20 19/24 20/13 23/11 23/17 24/12 31/7 31/25 36/23 37/12 38/7 41/16 41/16 42/1 42/4 42/5 42/11 42/12 42/22 43/1 43/11 43/24 44/19 45/21 46/15 46/16 46/25 46/25 49/20 49/25 50/8 50/18 51/23 55/8 55/24 56/5 57/16 58/15 59/22 62/18 62/21 62/25 63/1 63/2 65/18 68/23 68/24 70/1 70/11 70/14 72/7 73/19 73/22 75/25 78/24 79/1 80/23 82/4 85/7 85/8 87/1 87/19 91/13 91/23 91/24 92/25 93/14 95/10 95/22 97/22 98/2 98/9 98/12 98/13 99/16 99/19 99/23 102/4 102/13 102/19 103/12 103/18 104/23 106/2 106/10 106/11 106/16 109/19 109/13 111/6 111/7 112/1 113/4 113/7 113/9 113/16 113/22 114/15 116/17 116/18 116/19 116/21 116/21 116/24 121/11 121/24 122/21 122/25 125/11 127/1 131/17 132/14 132/15 133/22
**weren't [6]** 15/13 105/3 106/9 106/11 111/24 113/23
**West [12]** 6/9 27/9 33/21 33/21 40/22 43/12 43/13 43/16 43/17 43/22 43/25 44/16

**what [144]**
**what's [111]** 5/11 5/25 12/12 22/11 28/5 39/5 43/20 88/7 90/15 100/2 116/15
**whatever [6]** 8/13 12/14 20/23 50/25 59/11 84/20
**when [104]** 4/20 4/20 5/4 5/6 5/16 5/17 7/2 7/4 7/7 9/25 10/16 11/14 14/11 15/1 15/13 16/14 16/17 20/15 20/21 24/12 25/3 28/13 28/17 29/18 31/18 33/14 33/14 33/16 34/18 34/20 34/21 34/22 35/3 35/4 35/6 39/10 42/25 44/21 50/13 50/16 50/18 50/22 50/23 51/23 52/23 53/2 53/7 54/18 58/8 59/11 60/2 60/8 60/23 61/22 62/13 63/8 64/25 65/3 66/22 69/13 69/20 72/12 72/19 73/1 73/2 74/17 74/21 79/12 79/25 84/7 85/22 86/7 86/18 87/9 87/19 87/21 93/5 94/7 94/10 94/22 94/25 94/25 96/10 96/10 96/10 96/12 99/3 105/15 107/20 108/12 108/12 112/5 112/18 116/17 121/2 122/7 123/22 124/6 124/6 125/1 126/23 130/12 130/23 132/13
**where [22]** 25/16 31/22 33/19 38/19 43/11 46/6 53/13 75/22 78/3 86/5 86/24 87/12 98/23 101/1 111/12 113/7 120/1 120/4 121/24 125/14 128/12 131/20
**whether [43]** 6/18 13/2 13/17 20/19 29/5 32/22 47/5 58/18 58/23 59/12 62/4 64/1 68/17 68/18 69/5 79/19 79/20 87/1 89/24 90/22 91/14 95/9 104/17 104/23 113/7 113/16 117/20 117/20 117/21 118/10 118/16 120/21 121/16 122/17 122/18 122/19 123/16 123/16 124/25 125/2 125/2 125/22 129/12
**which [60]** 3/21 10/8 17/20 18/24 22/11 22/17 23/2 23/12 23/13 23/14 24/8 24/17 25/7 28/11 29/21 29/23 29/25 30/13 34/12 34/25 38/14 39/14 45/18 46/12 53/5 53/24 64/12 67/8 71/9 71/23 77/24 82/4 82/11 82/12 89/10 102/9 102/10 110/16 116/18 116/20 116/20 116/22 117/9 117/9 121/3 121/12 121/18 122/21 123/4 123/6 123/13 126/5 126/5 126/24 127/9 128/21 129/6 131/19 131/22 132/14
**while [8]** 19/4 34/14 43/17 44/15 52/18 52/19 86/9 133/21
**whisper [1]** 86/9
**white [1]** 99/5
**who [29]** 4/14 5/3 5/20 7/16 7/19 7/20 14/6 17/5 18/20 19/16 20/16 26/23 27/2 38/10 39/24 71/19 75/22 75/23 80/18 88/1 93/1 97/3 97/5 102/15 109/16 111/11 117/18 129/4 132/23
**who's [6]** 2/11 42/8 46/23 110/3 111/10 125/7
**whoever [1]** 115/16
**whole [1]** 25/10
**why [21]** 7/24 8/7 12/2 12/2 12/4 12/7 12/15 13/23 20/15 29/2 43/19 53/20 70/22 90/25 92/15 92/17 92/19 106/1 114/1 121/24 130/18
**Wilfred [2]** 39/15 39/16
**Wilfredo [1]** 2/3
**will [10]** 10/23 47/12 56/25 67/24 99/21 124/15 127/21 127/21 128/16 129/7
**willing [2]** 121/21 121/22
**window [1]** 99/23
**WINFRED [11]** 1/4 4/12 37/23 38/15 38/17 39/24 49/15 49/17 92/11 96/25 134/2
**wire [1]** 55/1

**wiretaps [2]** 54/25 99/6
**wise [1]** 74/19
**wish [1]** 2/24
**wishes [2]** 91/6 91/9
**withdraw [2]** 8/16 17/10
**withdrawn [1]** 8/4
**within [10]** 29/13 52/18 52/19 59/22 77/5 90/25 97/10 117/2 122/9 125/11
**without [8]** 20/11 31/8 32/6 60/15 76/13 80/1 107/2 111/15
**witness [10]** 2/20 14/24 47/21 48/10 48/12 92/4 92/8 108/21 108/23 110/12
**WITNESSES [1]** 133/23
**wolff [3]** 1/22 1/24 134/15
**won't [1]** 112/4
**word [3]** 77/1 77/2 118/5
**worded [2]** 29/19 35/23
**wording [1]** 29/20
**words [6]** 40/6 75/2 78/5 78/10 83/1 88/20
**work [1]** 110/12
**work-product [1]** 110/12
**working [3]** 6/16 44/15 124/17
**world [1]** 14/1
**worth [1]** 13/1
**would [147]**
**wouldn't [9]** 13/24 13/25 20/9 34/17 58/20 75/10 82/25 89/24 125/4
**wrapping [1]** 83/10
**WRIT [1]** 1/10
**writes [1]** 8/11
**written [4]** 11/22 61/16 68/22 83/14
**wrong [7]** 13/11 80/22 120/13 123/19 123/21 128/9 128/14
**wrote [1]** 85/1

**Y**

**yeah [4]** 32/15 76/14 119/23 128/1
**year [8]** 4/22 16/21 32/7 32/8 118/13 122/5 125/16 129/18
**years [24]** 15/9 17/8 37/6 43/23 45/15 45/16 45/17 49/22 56/24 64/10 95/5 99/22 99/24 101/13 105/16 105/20 106/1 106/2 106/3 106/5 114/22 122/6 122/8 131/19
**yes [154]**
**yesterday [1]** 60/12
**yet [1]** 72/18
**you [570]**
**you'd [2]** 74/4 106/1
**you're [26]** 4/4 10/17 10/18 11/18 22/16 34/22 34/23 36/11 44/15 59/2 65/4 66/24 71/15 75/4 84/7 86/4 87/13 92/15 92/17 92/19 92/23 94/21 99/13 110/9 119/22 124/13
**you've [2]** 28/25 36/22
**your [215]**
**yours [1]** 21/22
**yourself [2]** 54/12 56/12